**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: SOCLEAN, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br><br>**This document relates to: All Consumer Cases** | **Master Docket No. 22-mc-152**<br><br>**MDL No. 3021**<br><br><br>**FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

# TABLE OF CONTENTS

Introduction ....................................................................................................................... 1

Parties ................................................................................................................................ 5

    I.   Plaintiffs ................................................................................................................... 5

    II.  Defendant .............................................................................................................. 50

Jurisdiction & Venue ....................................................................................................... 50

Factual Allegations .......................................................................................................... 51

    I.   Sleep Apnea and Its Treatment .............................................................................. 51

    II.  SoClean's Sleep Equipment Sanitizing Devices .................................................... 53

    III. Ozone Gas .............................................................................................................. 54

    IV. FDA Regulation of Ozone ..................................................................................... 57

    V.  SoClean Avoided Proper FDA Classification and Regulations ............................. 59

    VI. SoClean's CPAP Sanitizing Process ..................................................................... 63

    VII. The SoClean Devices Generate and Release Problematic Levels of Ozone ......................... 66

        A.    FDA Review and Testing ........................................................................... 67

        B.    Independent Testing Shows the Generation and Release of Ozone through the Device and into the Environment ........................................................................... 69

        C.    Competitor Testing Confirms Plaintiffs' Testing Results ............................ 71

    VIII.   SoClean's False and Misleading Material Misrepresentations, Concealment, Half-Truths, and Omissions ......................................................................................... 72

i

D.    SoClean's Failure to Disclose Its Ozone Generation and Use of the Term "Activated Oxygen"................................................................................................................ 72

E.    SoClean Fails to Notify Consumers of Ozone Usage and Risks ................................. 77

F.    SoClean Failed to Meet FDA Standards, Omitted Mandatory Notifications and Misleadingly Suggested FDA Approval .................................................................. 88

G.    Representations that the SoClean Devices use "No Chemicals" and/or "No Harsh Chemicals" .................................................................................................... 90

H.    Representations that the SoClean Devices Are "Safe" and "Healthy" for Use ............. 92

I.    Representations that the SoClean Devices Use the Same Sanitizing Process Used in Hospitals.................................................................................................... 95

J.    Representations that SoClean Is a Sealed or "Closed-Loop" System ............................... 97

K.    The Charcoal Filter Cartridges.................................................................................. 100

IX. The Effect of SoClean's Material Misrepresentations, Omissions, Concealment, and Half-Truths................................................................................................................ 102

Tolling and Estoppel ..................................................................................................... 103

I.    DISCOVERY RULE TOLLING ................................................................................. 103

II.    FRAUDULENT CONCEALMENT TOLLING.............................................................. 103

Class Action Allegations................................................................................................ 104

Claims for Relief .......................................................................................................... 113

COUNT I: BREACH OF EXPRESS WARRANTY .................................................................. 113

COUNT II: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ...................... 118

COUNT III: FRAUDULENT MISREPRESENTATION ............................................................ 120

COUNT IV: FRAUD BY OMISSION ...................................................................................... 123

COUNT V: NEGLIGENT MISREPRESENTATION................................................................. 126

COUNT VI: UNJUST ENRICHMENT.................................................................................... 129

COUNT VII: VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT............ 130

COUNT VIII: VIOLATION OF ARIZONA CONSUMER FRAUD ACT................................... 134

COUNT IX: VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT ............ 137

COUNT X: VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT........... 141

COUNT XI: VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW .................... 146

COUNT XII: VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW....................... 149

COUNT XIII: VIOLATION OF COLORADO CONSUMER PROTECTION ACT.................... 153

COUNT XIV: VIOLATIONS OF CONNECTICUT UNFAIR TRADE PRACTICES ACT....... 156

COUNT XV: VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ............................................................................................................................................ 159

COUNT XVI: VIOLATIONS OF FLORIDA FRAUDULENT PRACTICES Statute ................. 163

COUNT XVII: VIOLATIONS OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT ............................................................................................................................................ 166

COUNT XVIII: VIOLATIONS OF GEORGIA FAIR BUSINESS PRACTICES ACT .............. 168

COUNT XIX: VIOLATION OF ILLINOIS CONSUMER FRAUD & DECEPTIVE BUSINESS PRACTICES ACT ................................................................................................................ 171

COUNT XX: VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT.............. 173

COUNT XXI: VIOLATIONS OF INDIANA DECEPTIVE CONSUMER SALES ACT ........... 175

COUNT XXII: VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT ..................... 179

COUNT XXIII: VIOLATIONS OF KENTUCKY CONSUMER PROTECTION ACT.............. 183

COUNT XXIV: VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION ACT.............................................................................................. 186

COUNT XXV: WARRANTY AGAINST REDHIBITORY DEFECTS ...................................... 189

COUNT XXVI: VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT.... 193

COUNT XXVII: VIOLATIONS OF DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW ........................................................................................................ 196

COUNT XXVIII: VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT............. 199

COUNT XXIX: VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT 202

COUNT XXX: MISSISSIPPI CONSUMER PROTECTION ACT ............................................. 204

COUNT XXXI: VIOLATIONS OF NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT ................................................................................................................................................ 207

COUNT XXXII: VIOLATIONS OF NEBRASKA CONSUMER PROTECTION ACT............. 210

COUNT XXXIII: VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT ........... 213

COUNT XXXIV: VIOLATIONS OF FALSE ADVERTISING UNDER NEW YORK LAW ... 216

COUNT XXXV: VIOLATIONS OF UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER NEW YORK LAW ...................................................................................................................... 218

COUNT XXXVI: VIOLATIONS OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT ........................................................................................................................ 220

COUNT XXXVII: VIOLATIONS OF OHIO CONSUMER SALES PRACTICES ACT............ 223

COUNT XXXVIII: VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT....... 227

COUNT XXXIX: VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW ............................................................................................. 231

COUNT XL: VIOLATIONS OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT.. 233

COUNT XLI: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 . 235

COUNT XLII: VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT (TDTPA).................................................................................................... 239

COUNT XLIII: VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT ......... 244

COUNT XLIV: VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT ......... 246

COUNT XLV: VIOLATIONS OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT..... 248

COUNT XLVI: VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT ....... 250

Plaintiffs Donna Renn, Dorian Lange, Steve Landers Sr., Donna Barbera-Diaz, Rick Young, Diane Monaghan, John Perun, Ralph Gemelli, John Huff, Jessie Brooks, Herbert Ciesla, Christine Benson, Barry Harris, April Phillips, Larry Hunter-Blank, Teresa Humphress, George Mayes Jr., Thomas Hebert, Robert Morris, Chinedu Ekweozoh, Elyse Cohen, Edda Williams-Redding, Matthew Pomianek, Jackie Turner, Chris Odom, Anthony Sakalarios, Leonard Bradley, Saundra Thompson, Jacqueline Wazny, Randolph Screen, Marguerite Smith, Sharen Schaefer, Dale Vernon Sr., Sabrina Harrell, Mark Meles, Susan Clark, Heather Lattimore, Amin Simms, William Wheeler, Loreen Hughes, Robert E. Parker, and Timothy Lakin (collectively, "Plaintiffs"), on behalf of themselves and the class of all others similarly situated as defined below, for their Consolidated Class Action Complaint against Defendant SoClean, Inc. ("SoClean") for economic damages, allege as follows:

## INTRODUCTION

1.      Since approximately 2012, Defendant SoClean has manufactured and marketed devices used to clean sleep equipment machines including all major brands of Continuous Positive Airway Pressure ("CPAP") and Bi-Level Positive Airway Pressure ("BiPAP") devices. The SoClean devices work by generating ozone to purportedly sanitize and clean the sleep equipment machines. Ozone ($O_3$) is an unstable toxic gas with a pungent characteristic odor that can kill bacteria, viruses, and other germs. Medical devices intended for human use that generate ozone are regulated by the United States Food and Drug Administration ("FDA"), which sets limits on the sale of ozone devices, labeling requirements, limits on where these devices can be used, maximum acceptable levels of ozone which can circulate through such a device, and maximum acceptable levels of accumulation of ozone in enclosed spaces. To be effective as a germicide, ozone must be present in a concentration far greater than can be safely tolerated by humans or

animals. That is why devices which generate ozone in excess of those limits are closely regulated and must meet federal standards for safety and efficacy. In its advertisements, website, packaging, and user manuals and information, SoClean uniformly misrepresented, concealed, and omitted material information on the presence and risk of ozone exposure from the SoClean 2 CPAP Sanitizing Machine, the SoClean 2 Go CPAP Sanitizing machine, and their predecessor devices (collectively "the SoClean devices").

2.      Over the last decade, SoClean advanced a uniform campaign representing that its products are legally sold and marketed medical devices. This uniform campaign represented that the SoClean devices use activated oxygen in a closed system to provide a safe and healthy method for cleaning and sanitizing sleep equipment, without chemicals, using the same process as hospitals. SoClean touted its line of products to a group of consumers and users with preexisting health conditions, such as sleep apnea, COPD, and other respiratory issues.

3.      This uniform campaign was built on material misrepresentations, omissions, concealment, and half-truths. Most egregiously, SoClean has never legally marketed its products because they have neither been cleared nor approved by the FDA. But consumers were never informed that these were adulterated and misbranded medical devices that were being illegally sold. Additionally, SoClean engaged in a repeated, uniform, and material scheme to defraud consumers and users:

- SoClean's marketing and user materials fail to disclose that its devices emit ozone, which is a longstanding requirement of federal law for devices designed for human use (i.e., medical devices). Instead, SoClean falsely represents that its devices use "activated oxygen" to clean CPAP machines.

2

- SoClean markets the devices as "safe" and "healthy," which is false given that they generate toxic ozone gas at levels that substantially exceed federal regulations.

- SoClean falsely represents that its devices use "no water or chemicals" or "no harsh chemicals" to clean CPAP machines, despite using ozone gas—a harsh chemical that causes respiratory problems in humans.

- SoClean represents that its devices use the same sanitizing process found in "hospital sanitizing," but hospitals cannot and do not use ozone sanitizers in spaces occupied by patients.

- SoClean also claims that separately sold filters convert "activated oxygen" into "regular oxygen," which is false because SoClean's filters have no measurable effect on the device's ozone output.

- Finally, SoClean falsely claims that its devices are "sealed" such that "activated oxygen" (*i.e.*, ozone) does not escape the devices, when in fact it does so in levels that can be detected and measured.

4.     SoClean's violation of federal regulations as well as its material misrepresentations, concealment, half-truths, and omissions have allowed it to reap annual revenues between $150 million and $300 million.

5.     Due to the nature of SoClean's business, its customers are all ill or infirm because they have breathing problems for which they are receiving medical treatment in the form of CPAP therapy. If CPAP users knew that the SoClean devices generate unsafe levels of toxic gas, which is then pumped into their CPAP machines and into their bedrooms, they would find this risk material to their purchasing decisions.

3

6.     SoClean's representations are designed to mislead consumers into believing that the machine was legally marketed and uses a benign form of oxygen to clean CPAP machines rather than a harsh gas that is generally only suitable for commercial sanitization under highly controlled conditions. These material misrepresentations, concealment, half-truths, and omissions are made more egregious because the SoClean devices are designed and marketed for use on the consumer's bedside table and because CPAP users suffer from many symptoms that ozone exposure exacerbates – making the falsehoods especially reprehensible and dangerous.

7.     These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs and the Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

8.     All Plaintiffs and members of the State Classes suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

4

## PARTIES

I.    **Plaintiffs**

9.    Plaintiff **Donna Renn** is a resident of the City of Ozark in Dale County, **Alabama**. In or around 2016, Plaintiff Renn purchased a SoClean 2 device to clean her Philips CPAP machine. Plaintiff Renn used her SoClean 2 daily from 2016 until the end of 2021. Plaintiff Renn also purchased filters for her SoClean 2. Plaintiff Renn considered convenience and her safety when making her purchasing decision regarding the SoClean 2. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

10.    Prior to purchasing the SoClean device, Plaintiff Renn saw Defendant's claims on the SoClean website and product packaging indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Renn relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Renn would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After starting to use her SoClean 2 device, Plaintiff Renn began experiencing symptoms of bronchitis. Plaintiff Renn has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

11.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Renn saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on

Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

12.    Plaintiff **Dorian Lange** is a resident of the State of **Arizona**. He obtained a SoClean 2 to clean his Philips CPAP machine on or around 2019. Plaintiff Lange used his SoClean 2 daily from around 2019 until on or around late 2021 or early 2022. He would not have obtained the device if he had known what he knows now about the SoClean 2. Plaintiff Lange values safety, functionality, efficacy, and convenience. Plaintiff Lange used the SoClean 2 as instructed on the packaging because he believed the device used activated oxygen and was safe. He would not have used the SoClean device and/or would have sought a different product if he had known what he knows now about the SoClean 2.

13.    Prior to using his SoClean device, Plaintiff Lange saw Defendant's claims in advertising claiming the device was safe and effective to use, and he relied on these representations in selecting and using the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Lange was unaware that these products emitted ozone, and would not have used the device if that information was fully disclosed. Plaintiff Lange was injured by the loss of property, for which a premium price was paid, that has no or very little value—or whose value was at least less than what was paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Lange began experiencing eye irritation, insomnia, and short-term memory issues. Plaintiff Lange

has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

14.    Plaintiff **Steve Landers, Sr.** is a resident of the State of **Arkansas** and purchased a SoClean device to clean his Philips CPAP machine. After purchasing the device, Plaintiff Landers used his SoClean daily until mid to late 2021. Plaintiff Landers also purchased filters for his SoClean. Plaintiff Landers considers safety, health, ease, and convenience in making his purchasing decisions. He would not have purchased the SoClean device if he had known what he knows now about the SoClean device. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

15.    Prior to purchasing his SoClean device, Plaintiff Landers saw Defendant's claims on television advertisements claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Landers was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Landers was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Landers began experiencing skin and eye irritation, headaches, difficulty breathing, and wheezing. Plaintiff Landers has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

16.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Landers saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the device. During that time, based on Defendant's

omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Landers was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Landers was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

17.    Plaintiff **Donna Barbera-Diaz** is a resident of the City of Tracy in the State of **California**. In November 2018, she purchased a SoClean 2 device for her husband to clean his Philips CPAP machine. After purchasing the device, Plaintiff Barbera-Diaz used her SoClean 2 daily until late 2021. Plaintiff Barbera-Diaz also purchased filters for her SoClean 2. Plaintiff Barbera-Diaz considers the ability to sanitize and disinfect her husband's CPAP machine, how healthy the device was, convenience, safety, and price when making purchasing decisions. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

18.    Prior to purchasing her SoClean device, Plaintiff Barbera-Diaz saw Defendant's claims on the packaging, label, and website indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Barbera-Diaz relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Barbera-Diaz would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—

based on the presence of ozone. After starting to use her SoClean device, Plaintiff Barbera-Diaz began experiencing eye irritation and headaches. Plaintiff Barbera-Diaz has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

19.     Prior to purchasing charcoal filters for her SoClean device, Plaintiff Barbera-Diaz saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

20.     Plaintiff **Rick Young** is a resident of the City of San Diego in the State of **California**. On September 29, 2019, Plaintiff Young purchased a SoClean 2 device to clean his ResMed AirSense 10 CPAP machine. After purchasing the device, Plaintiff Young used his SoClean 2 regularly until approximately late 2021 or early 2022. Plaintiff Young considers the ability to sanitize and disinfect his CPAP machine, convenience, and his safety when making purchasing decisions. He would not have purchased the SoClean 2 if he knew what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

21.     Prior to purchasing the SoClean 2 device, Plaintiff Young saw Defendant's claims on television, the internet, and the packaging indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Young relied on these representations in purchasing the device.

9

During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Young would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean 2 device, Plaintiff Young experienced eye irritation and excessive sneezing attacks. Plaintiff Young has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

22.     Plaintiff **Diane Monaghan** is a resident of the State of **Colorado**. In and around the end of 2020, Plaintiff purchased a SoClean 2 device to clean her ResMed CPAP machine. Plaintiff Monaghan purchased the SoClean 2 because its advertising indicated that the SoClean 2 would be easier to clean her SoClean 2 and it would also be safe to use. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

23.     Prior to purchasing her SoClean device, Plaintiff Monaghan saw Defendant's claims on the packaging and website indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Monaghan relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Monaghan would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the

presence of ozone. After starting to use her SoClean 2 device, Plaintiff Monaghan experienced respiratory infections, coughing, and sneezing. Plaintiff Monaghan has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

24.     Plaintiff **John Perun** is a resident of the City of Woodbury in **Connecticut**. In or around 2017, Plaintiff purchased his SoClean 2 device to clean his ResMed CPAP machine. Plaintiff Perun also purchased filters for his SoClean 2. Plaintiff Perun considered the ability to sanitize his device, convenience, and his safety when he made his purchasing decisions. He would not have purchased it if he had known what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

25.     Prior to purchasing his SoClean device, Plaintiff Perun saw Defendant's claims online on SoClean's website and in television advertisements that the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean 2 device, Plaintiff Perun experienced respiratory irritation. Plaintiff Perun has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

26.     Prior to purchasing charcoal filters for his SoClean device, Plaintiff Perun saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the filters. During that time, based on

11

Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

27.    Plaintiff **Ralph Gemelli** is a citizen and resident of Manatee County, **Florida**. On or about November 2020, he purchased a SoClean 2 device to clean his ResMed CPAP machine. Plaintiff Gemelli also purchased filters for his SoClean 2. Plaintiff Gemelli considers efficiency and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he knew what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

28.    Prior to purchasing his SoClean device, Plaintiff Gemelli saw Defendant's claims on advertising and the packaging claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean 2 device, Plaintiff Gemelli experienced respiratory irritation and shortness of breath. Plaintiff Gemelli has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

29.     Prior to subscribing to SoClean's filter replacement program for his SoClean device, Plaintiff Gemelli saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

30.     Plaintiff **John Huff** is a resident of the City of St. Petersburg, **Florida**. In or around 2019, he purchased a SoClean 2 device to clean his ResMed CPAP machine. Plaintiff Huff used his SoClean 2 daily from purchase until 2021. Plaintiff Huff also regularly purchased filters for his SoClean 2. Plaintiff Huff considers convenience and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he had known what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

31.     Prior to purchasing his SoClean device, Plaintiff Huff saw Defendant's claims in its advertising and on the packaging, TV and social media claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very

13

little value—or whose value was at least less than what he paid—based on the presence of ozone. Plaintiff Huff has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

32.     Prior to purchasing charcoal filters for his SoClean device, Plaintiff Huff saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

33.     Plaintiff **Jessie Brooks** is a resident of City of Macon in the State of **Georgia**. In or around 2019, he purchased a SoClean device to clean his ResMed CPAP machine. Plaintiff Brooks used his device daily from purchase until around August 2021. Plaintiff Brooks considers efficiency and his safety when making his purchasing decisions. He would not have purchased the SoClean device if he had known what he knows now about the SoClean device. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

34.     Prior to purchasing his SoClean device, Plaintiff Brooks saw Defendant's claims on advertisements and packaging claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Brooks was unaware that these products emitted

ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Brooks was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Brooks began experiencing a constant nasal drip. Plaintiff Brooks has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

35.    Plaintiff **Herbert Ciesla** is a resident of the City of Canton in the State of **Georgia**, Cherokee County. In or around December of 2019, he purchased a SoClean 2 device to clean his ResMed Bi-PAP machine. Plaintiff Ciesla also purchased filters for his SoClean 2. Plaintiff Ciesla considers efficiency and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he knew what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

36.    Prior to purchasing his SoClean device, Plaintiff Ciesla saw Defendant's claims on the packaging and advertising claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean 2 device, Plaintiff Ciesla experienced respiratory tract irritation, nasal issues, a continuous runny nose and headaches. Plaintiff Ciesla has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

15

37.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Ciesla saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

38.    Plaintiff **Christine Benson** is a resident of the City of Chicago in the State of **Illinois**. On or about December 12, 2019, Plaintiff purchased a SoClean 2 device to clean her Philips CPAP machine. Plaintiff Benson used her SoClean 2 regularly from around December 2019 until April 2022. Plaintiff Benson also purchased filters for her SoClean 2. Plaintiff Benson purchased the SoClean 2 because its advertising indicated that the SoClean 2 would make it easier to clean her CPAP machine and that it would also be safe to use. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

39.    Prior to purchasing her SoClean device, Plaintiff Benson saw Defendant's claims on the packaging indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Benson relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Benson would not have purchased the device or paid as much for it if that information

16

was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After starting to use her SoClean 2 device, Plaintiff Benson experienced headaches. Plaintiff Benson has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

40.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Benson saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

41.    Plaintiff **Barry Harris** is a resident of the Town of Brownsburg in **Indiana**. Plaintiff Harris purchased a SoClean device to clean his Philips REMstar Pro C-Flex+ CPAP machine. Plaintiff Harris used his SoClean device daily until August 20, 2021. Plaintiff Harris also purchased filters for his SoClean. Plaintiff Harris considered the ability to sanitize his device, convenience, and his safety in making his purchasing decisions. He would not have purchased if he had known what he knows now about the SoClean. He also paid more because he believed the product used activated oxygen and was safe and healthy.

42.    Prior to purchasing his SoClean device, Plaintiff Harris saw Defendant's claims online on SoClean's Amazon listing that the device used activated oxygen and was safe and

healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. Plaintiff Harris has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

43.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Harris saw Defendant's claims on the packaging alleging the filters converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

44.    Plaintiff **April Phillips** is a resident of the City of Ninevah in **Indiana**. Plaintiff Phillips purchased a SoClean 2 to clean her Philips CPAP machine. Plaintiff Phillips used her SoClean 2 daily from January 2020 until the end of 2021. Plaintiff Phillips also purchased filters for her SoClean. Plaintiff Phillips considered the ability to sanitize her device, convenience, her health and safety, and price in making her purchasing decisions. She would not have purchased if she had known what she knows now about the SoClean. She also paid more because she believed the product used activated oxygen and was safe and healthy.

18

45.     Prior to purchasing her SoClean device, Plaintiff Phillips saw Defendant's claims on the SoClean website and the packaging claiming that the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After starting to use her SoClean 2 device, Plaintiff Phillips experienced skin, eye, and respiratory tract irritation; headaches; and difficulty breathing. Plaintiff Phillips has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

46.     Prior to purchasing charcoal filters for her SoClean device, Plaintiff Phillips saw Defendant's claims on the packaging alleging the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

47.     Plaintiff **Larry Hunter-Blank** is a resident of the State of **Kansas** and purchased a SoClean 2 to clean his Philips CPAP machine on January 5, 2018. Plaintiff Hunter-Blank used his SoClean 2 regularly from around February 2018 until September 2021. Plaintiff Hunter-Blank

also purchased filters for his SoClean 2. Plaintiff Hunter-Blank considers online advertisements in making his purchasing decisions. He would not have purchased the device if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

48.    Prior to purchasing his SoClean device, Plaintiff Hunter-Blank saw Defendant's claims in advertisements, on the SoClean website, and on packaging claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Hunter-Blank was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Hunter-Blank was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. Plaintiff Hunter-Blank has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

49.    Prior to purchasing charcoal filters for his SoClean 2 device, Plaintiff Hunter-Blank saw Defendant's claims on advertisements, the SoClean website, and packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Hunter-Blank was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Hunter-Blank was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

50.    Plaintiff **Teresa Humphress** is a citizen and a resident of the City of Campbellsville in **Kentucky**. Plaintiff Humphress purchased the SoClean 2 in or around September 5, 2019, to clean her ResMed CPAP machine. Plaintiff Humphress used her SoClean 2 regularly from around September 2019 until March 2022. Plaintiff Humphress purchased SoClean filters regularly in 2020 and 2021. Plaintiff Humphress considered the ability to sanitize her CPAP machine, convenience, and her health in making her purchasing decisions. She would not have purchased if she had known what she knows now about the SoClean 2. She also paid more because she believed the product used activated oxygen and was safe and healthy.

51.    Prior to purchasing her SoClean device, Plaintiff Humphress saw Defendant's claims on online advertisements on SoClean's website that the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. Plaintiff Humphress has experienced light headedness, irritation, and headaches as a result of using her SoClean device. These health effects have gone away after she stopped using the device. Plaintiff Humphress has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

52.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Humphress saw Defendant's claims on the packaging alleging the filers converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the device. During

that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

53.     Plaintiff **George Mayes, Jr.** is a citizen and a resident of the City of Prospect in **Kentucky**. Plaintiff Mayes purchased the SoClean 2 in or around 2019 to clean his Philips CPAP machine. Plaintiff Mayes used his SoClean 2 daily from approximately 2019 until June 2021. Plaintiff Mayes also purchased filters for his SoClean 2. Plaintiff Mayes considered the ability to sanitize his CPAP machine, convenience, and his health and safety in making his purchasing decisions. He would not have purchased if he had known what he knows now about the SoClean 2. He also paid more because he believed the product used activated oxygen and was safe and healthy.

54.     Prior to purchasing his SoClean device, Plaintiff Mayes saw Defendant's claims on advertisements and the SoClean website that the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After using his SoClean 2 device, Plaintiff Mayes has experienced irritation of the nose, mouth, and throat. Plaintiff Mayes

has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

55.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Mayes saw Defendant's claims on the packaging alleging the filers converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

56.    Plaintiff **Thomas Hebert** is a resident of the State of **Louisiana** and purchased the SoClean 2 in around 2019 to clean his Philips DreamStation CPAP machine. Plaintiff Hebert used his SoClean 2 daily from approximately 2019 until summer 2021. Plaintiff Hebert also purchased filters for his SoClean 2. He would not have purchased the device if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

57.    Prior to purchasing his SoClean device, Plaintiff Hebert saw Defendant's claims on the packaging claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Hebert was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff

Hebert was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Hebert began experiencing eye and respiratory tract irritation. Plaintiff Hebert has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

58.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Hebert saw Defendant's claims on the packaging alleging the product was safe and effective, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Hebert was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Hebert was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

59.    Plaintiff **Robert Morris** is a resident of the State of **Louisiana** and purchased a SoClean device in around 2017 to clean his Philips CPAP machine. Plaintiff Morris used his SoClean device daily from approximately 2017 until December 2021. Plaintiff Morris also purchased filters for his SoClean device. He would not have purchased the device if he had known what he knows now about the SoClean device. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

60.    Prior to purchasing his SoClean device, Plaintiff Morris saw Defendant's claims on advertisements claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's

24

omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Morris was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Morris was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Morris began experiencing eye and respiratory tract irritation and an increase in frequency or severity of respiratory infections. Plaintiff Morris has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

61.     Prior to purchasing charcoal filters for his SoClean device, Plaintiff Morris saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Morris was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Morris was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

62.     Plaintiff **Chinedu Ekweozoh** is a resident of the State of **Maryland** and purchased a SoClean 2 device to clean his Philips CPAP machine in late 2019 or early 2020. Plaintiff Ekweozoh used his SoClean 2 regularly from late 2019 or early 2020 until May 2022. Plaintiff Ekweozoh also purchased filters for his SoClean 2. He would not have purchased the device if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

25

63.    Prior to purchasing his SoClean device, Plaintiff Ekweozoh saw Defendant's claims on advertisements claiming the device was a safe and effective way to clean a CPAP machine, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Ekweozoh was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Ekweozoh was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Ekweozoh experienced eye irritation, heart palpitations, and shortness of breath. Plaintiff Ekweozoh has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

64.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Ekweozoh saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Ekweozoh was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Ekweozoh was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

65.    Plaintiff **Elyse Cohen** is a resident of the City of Canton in **Massachusetts**. In or around 2017, Plaintiff purchased her SoClean 2 to clean her Philips CPAP machine. Plaintiff Cohen purchased filters for her SoClean 2 multiple times over the last five years. Plaintiff Cohen

26

considered the ability to sanitize her device, convenience, and her health and safety when she made her purchasing decisions. She would not have purchased if she had known what she knows now about the SoClean 2. She also paid more because she believed the product used activated oxygen and was safe and healthy.

66.     Prior to purchasing her SoClean device, Plaintiff Cohen saw Defendant's claims online on SoClean's website that the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. Plaintiff Cohen has experienced respiratory irritation and daily headaches after she started using her SoClean 2 device. Plaintiff Cohen has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

67.     Prior to purchasing charcoal filters for her SoClean device, Plaintiff Cohen saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a filter

that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

68.     Plaintiff **Edda Williams-Redding** is a resident of the City of Ypsilanti in **Michigan**. Approximately two to three years ago, she purchased a SoClean 2 device to clean her ResMed CPAP machine. Plaintiff Williams-Redding used her SoClean 2 device regularly until she became aware of this litigation less than a year ago. Plaintiff Williams-Redding also purchased filters for her SoClean 2. Plaintiff Williams-Redding considers the ability to sanitize and disinfect her CPAP machine when making purchasing decisions. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

69.     Prior to purchasing her SoClean device, Plaintiff Williams-Redding saw Defendant's claims on the SoClean website, television advertisements, and packaging indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Williams-Redding relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Williams-Redding would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After using the SoClean 2 device, Plaintiff Williams-Redding suffered respiratory track irritation. Plaintiff Williams-Redding has also suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

70.     Prior to purchasing charcoal filters for his SoClean device, Plaintiff Williams-Redding saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

71.     Plaintiff **Matthew Pomianek** is a resident of the State of **Missouri** and purchased a SoClean 2 on September 12, 2019, to clean his Philips CPAP machine. Plaintiff Pomianek used his SoClean 2 regularly from September 2019 until 2021. Plaintiff Pomianek also purchased filters for his SoClean 2. Plaintiff Pomianek considers whether a product is healthy as well as ease and convenience in making his purchasing decisions and reviewed a number of advertisements before purchasing his SoClean 2. He would not have purchased the device if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

72.     Prior to purchasing his SoClean device, Plaintiff Pomianek saw Defendant's claims on advertisements, the label, and websites claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Pomianek was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully

disclosed. Plaintiff Pomianek was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Pomianek began experiencing skin irritation, respiratory tract irritation, asthma, and a lingering cough. Plaintiff Pomianek has suffered anguish, fear, and concern since it has been revealed that these products emit dangerous ozone.

73.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Pomianek saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Pomianek was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Pomianek was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

74.    Plaintiff **Jackie Turner** is a resident of the State of **Missouri** and purchased a SoClean 2 device in 2020 to clean his Philips CPAP machine. Plaintiff Turner used his SoClean 2 daily from 2020 until fall 2021. Plaintiff Turner also purchased filters for his SoClean 2. Plaintiff Turner considers ease, convenience, functionality, and safety in making his purchasing decisions. He would not have purchased the device if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

75.    Prior to purchasing his SoClean device, Plaintiff Turner saw Defendant's claims on television commercials claiming the device would make the CPAP fresh and clean by using

activated oxygen and was safe and healthy to use, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Turner was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Turner was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Turner began experiencing respiratory tract irritation. Plaintiff Turner has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

76.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Turner saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Turner was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Turner was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

77.    Plaintiff **Chris Odom** is a resident of the State of **Mississippi** and purchased a SoClean 2 on October 31, 2018, to clean his ResMed CPAP machine. Plaintiff Odom used his SoClean 2 regularly from October 2018 until around November 2021. Plaintiff Odom considers ease and convenience in making his purchasing decisions. He would not have purchased the device

if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

78.     Prior to purchasing his SoClean device, Plaintiff Odom saw Defendant's claims on the internet, through online advertisements and websites, and on the packaging claiming the device would safely and effectively clean the CPAP machine, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Odom was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Odom was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Odom began experiencing skin irritation and an increase in the frequency or severity of respiratory infections. Plaintiff Odom has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

79.     Plaintiff **Anthony Sakalarios** is a resident of the State of **Mississippi** and purchased a SoClean 2 to clean his ResMed CPAP device. Plaintiff Sakalarios considers ease of use, effectiveness and safety of a product in making his purchasing decisions. He would not have purchased the device if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

80.     Prior to purchasing his SoClean device, Plaintiff Sakalarios saw Defendant's claims on television about how simple it was to use the SoClean device to clean his CPAP machine, claiming the device used activated oxygen and was safe and healthy, and he relied on these

representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Sakalarios was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Sakalarios was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Sakalarios began experiencing shortness of breath. Plaintiff Sakalarios has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

81.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Sakalarios saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Sakalarios was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Sakalarios was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

82.    Plaintiff **Leonard Bradley** is a resident of the State of **Nebraska** and purchased a SoClean 2 to clean his Philips CPAP machine, in or around June 25, 2019. Plaintiff Bradley used his SoClean 2 daily from around June 25, 2019 until around May or June 2021. Plaintiff Bradley also purchased filters for his SoClean 2. He would not have purchased the device if he had known what he knows now about the SoClean 2. He also paid more for his SoClean device because he believed the product used activated oxygen and was safe and healthy.

33

83.    Prior to purchasing his SoClean device, Plaintiff Bradley saw Defendant's claims on the SoClean website claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Bradley was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Bradley was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Bradley began experiencing respiratory tract irritation. Plaintiff Bradley has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

84.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Bradley saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Bradley was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Bradley was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

85.    Plaintiff **Saundra Thompson** is a resident of the City of Willingboro in **New Jersey**. In or around early 2020, Plaintiff Thompson purchased a SoClean 2 device to clean her ResMed CPAP machine. Plaintiff Thompson used her SoClean 2 regularly from around early 2020

until around May 2022. Plaintiff Thompson also purchased filters for her SoClean 2. Plaintiff purchased the SoClean 2 because its advertising indicated that the SoClean 2 would make it easier to clean her CPAP machine, and it would also be safe to use. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

86.    Prior to purchasing her SoClean device, Plaintiff Thompson saw Defendant's advertisements indicating that the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Thompson would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After using her SoClean 2 device, Plaintiff experienced irritation in her nose and a dry mouth. Plaintiff Thompson has also suffered anguish and concern since it has been revealed that these products emit dangerous ozone

87.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Thompson saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no

or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

88.    Plaintiff **Jacqueline Wazny** is a resident of Hamburg, **New York** in Erie County. On or about October 11, 2018, she purchased a SoClean 2 device to clean her ResMed CPAP machine. Plaintiff Wazny used her SoClean 2 regularly from October 2018 until September 2021. Plaintiff Wazny also purchased filters for her SoClean 2. Plaintiff Wazny purchased the SoClean 2 because its advertising indicated that the SoClean 2 would be easier to clean her ResMed and it would also be safe to use. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

89.    Prior to purchasing her SoClean device, Plaintiff Wazny saw Defendant's claims on the packaging and in advertising indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Wazny relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Wazny would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After using her SoClean 2 device, Plaintiff Wazny experienced coughing, dizziness, and fatigue and continues to experience these symptoms as well as headaches on a regular basis.. Plaintiff Wazny has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

90.     Prior to purchasing charcoal filters for her SoClean device, Plaintiff Wazny saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

91.     Plaintiff **Randolph B. Screen** is a resident of the City of Raleigh, **North Carolina**. In or around 2019, he purchased a SoClean 2 device to clean his ResMed CPAP machine. Plaintiff Screen used his SoClean 2 every other day from purchase until around mid-2020 to early 2021. Plaintiff Screen considers convenience and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he had known what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

92.     Prior to purchasing his SoClean device, Plaintiff Screen saw Defendant's claims in its television advertising and on the packaging, claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose

value was at least less than what he paid—based on the presence of ozone. Plaintiff Screen suffered rosacea and skin irritation as a result of use of his SoClean 2 device. Plaintiff Screen has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

93.    Plaintiff **Marguerite Smith** resides in the City of Mount Holly in **North Carolina**. In or around October of 2018, Plaintiff purchased a SoClean 2 device to clean her ResMed CPAP machine. Plaintiff Smith used her SoClean 2 regularly from October 2018 until around summer 2021. Plaintiff Smith also purchased filters for her SoClean 2. Plaintiff Smith considered the ability to sanitize her device, her safety, and the price when she made her purchasing decision. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 devices because she believed the product used activated oxygen and was safe and healthy.

94.    Prior to purchasing her SoClean device, Plaintiff Smith saw Defendant's claims on the label, packaging, the SoClean website, and advertisements claiming the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Smith was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Smith was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. Plaintiff Smith has suffered eye and respiratory tract irritation, headaches, shortness of breath, and increased frequency of respiratory infections since using the SoClean 2 Device. Plaintiff Smith has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

95.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Smith saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Smith was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Smith was injured by paying for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

96.    Plaintiff **Sharen Schaefer** is a resident of the Village of Middlefield in **Ohio**. In around April or May 2021, she purchased a SoClean 2 device to clean her Philips CPAP machine. Plaintiff Schaefer used her SoClean 2 daily from her purchase until June 2021. Plaintiff Schaefer also purchased filters for her SoClean 2. She would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

97.    Prior to purchasing her SoClean device, Plaintiff Schaefer saw Defendant's claims on television advertisements, the label, and the SoClean website claiming the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone.

39

Plaintiff Schaefer has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

98.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Schaefer saw Defendant's claims on the packaging alleging the product was safe and effective to use, and she relied on these representations in purchasing the product. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Schaefer was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Schaefer was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

99.    Plaintiff **Dale Vernon, Sr.** is a resident of the City of Kirtland in the State of **Ohio**. In around 2017, he purchased a SoClean 2 device to clean his ResMed CPAP machine. Plaintiff Vernon considers efficiency and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he knew what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

100.    Prior to purchasing his SoClean device, Plaintiff Vernon saw Defendant's claims on the packaging claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was

injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean 2 device, Plaintiff Vernon began having a mild cough. Plaintiff Vernon has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

101.    Plaintiff **Sabrina Harrell** is a resident of the City of Norman in **Oklahoma**. In or around March 2020, Plaintiff purchased her SoClean 2 device to clean her ResMed CPAP machine. Plaintiff Harrell used her SoClean 2 regularly from her purchase until she quit using the device. Plaintiff Harrell considered the ability to sanitize her device, convenience, and her safety when she made her purchasing decisions. She would not have purchased if she had known what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

102.    Prior to purchasing her SoClean device, Plaintiff Harrell saw Defendant's claims online on SoClean's website/in television advertisements that the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After starting to use her SoClean 2 device, Plaintiff Harrell began having difficulty breathing. Plaintiff Harrell has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

103.     Plaintiff **Mark Meles** is a resident of the Commonwealth of **Pennsylvania**, City of Philadelphia. Approximately five years ago, in around 2017, he purchased a SoClean 2 device to clean his Philips CPAP machine. Plaintiff Meles used his SoClean 2 regularly from his purchase until summer 2021. Plaintiff Meles also purchased filters for his SoClean 2. Plaintiff Meles considers efficiency and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he knew what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

104.     Prior to purchasing his SoClean device, Plaintiff Meles saw Defendant's claims on the packaging claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean 2 device, Plaintiff Meles began having eye irritation. Plaintiff Meles has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

105.     Prior to purchasing charcoal filters for his SoClean device, Plaintiff Meles saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much

for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

106.    Plaintiff **Susan Clark** is a resident of the State of **South Carolina**. In or around January of 2021, Plaintiff Clark purchased a SoClean 2 to clean her Philips CPAP machine. Plaintiff Clark used her SoClean 2 regularly from purchase until approximately July 2021. Plaintiff Clark considered the ability to sanitize her device, her safety, and convenience when she made her purchasing decision regarding the SoClean. She would not have purchased the device if she had known what she knows now about the SoClean 2. She also paid more because she believed the product used activated oxygen and was safe and healthy.

107.    Prior to purchasing his SoClean device, Plaintiff Clark saw Defendant's claims on the packaging claiming the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Clark was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff Clark was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. Plaintiff Clark has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

108.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Clark saw Defendant's claims on the packaging alleging the device was safe, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing,

43

Plaintiff Clark was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Clark was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

109.    Plaintiff **Heather Lattimore** resides in the City of Lebanon in **Tennessee**. On May 29, 2020, she purchased the SoClean 2 device to clean her Philips CPAP machine. Plaintiff Lattimore used her SoClean 2 daily from her purchase until spring 2022. Plaintiff Lattimore considers efficiency and her safety when making her purchasing decisions. She would not have purchased the SoClean 2 if she had known what she knows now about the SoClean 2. She also paid more because she believed the product used activated oxygen and was safe and healthy.

110.    Prior to purchasing her SoClean device, Plaintiff Lattimore saw Defendant's claims on the packaging claiming the device used activated oxygen and was safe and healthy, and she relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After using the SoClean 2 device, Plaintiff experienced a mild cough and eye irritation. Plaintiff Lattimore has also suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

111.    Plaintiff **Amin Simms** is a resident of the City of Austin in the State of **Texas**. Approximately six years ago, in or around December 2016, he purchased a SoClean 2 device to clean his CPAP machine. Plaintiff Simms used his SoClean 2 daily from his purchase until early

2022. Plaintiff Simms considers efficiency and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he knew what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy

112.    Prior to purchasing his SoClean device, Plaintiff Simms saw Defendant's claims on the packaging claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. Plaintiff Simms experienced inflammation soon after he started using his SoClean 2. Plaintiff Simms has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

113.    Plaintiff **William Wheeler** is a resident of the State of **Texas**. He obtained a SoClean 2 to clean his Philips CPAP machine on or around February 6, 2018. Plaintiff Wheeler used his SoClean 2 regularly from around February 2018 until on or around the summer of 2021. Plaintiff Wheeler also purchased filters for his SoClean 2. He would not have obtained the device if he had known what he knows now about the SoClean 2. Plaintiff Wheeler values safety, functionality, efficacy, and convenience. Plaintiff Wheeler used the SoClean 2 as instructed on the packaging because he believed the device used activated oxygen and was safe. He would not have used the SoClean device and/or would have sought a different product if he had known what he knows now about the SoClean 2. He also would have had no need to purchase charcoal filters and

would not have purchased them if he had known what he knows now about the SoClean 2 and charcoal filters.

114.    Prior to using his SoClean device, Plaintiff Wheeler saw Defendant's claims on the packaging claiming the device was safe and effective to use, and he relied on these representations in using the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Wheeler was unaware that these products emitted ozone, and would not have used the device if that information was fully disclosed. Plaintiff Wheeler was injured by the loss of property, for which a premium price was paid, that has no or very little value—or whose value was at least less than what was paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Wheeler began experiencing nighttime coughing. Plaintiff Wheeler has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

115.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Wheeler saw Defendant's claims on the packaging alleging the product was safe and effective to use, and he relied on these representations, which induced him to purchase in order to keep up with the cleanliness of the SoClean device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff Wheeler was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff Wheeler was injured by paying a premium for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

116.    Plaintiff **Loreen Hughes** is a resident of Glen Allen in the Commonwealth of **Virginia**. In or around February of 2019, Plaintiff Hughes purchased a SoClean 2 device to clean

her ResMed CPAP machine. Plaintiff Hughes used her SoClean 2 regularly from around February 2019 until 2020. Plaintiff Hughes also purchased filters for her SoClean 2. Plaintiff Hughes purchased the SoClean 2 because its advertising indicated that the SoClean 2 would be easy to use and an efficient way to clean her SoClean 2. Plaintiff Hughes also purchased the SoClean 2 because SoClean maintained that its product would be safe to use. Plaintiff Hughes would not have purchased the SoClean 2 if she knew what she knows now about the SoClean 2. She also paid more for the SoClean 2 because she believed the product used activated oxygen and was safe and healthy.

117.    Prior to purchasing her SoClean device, Plaintiff Hughes saw Defendant's claims on television and online advertising as well as the packaging indicating that the device used activated oxygen and was safe and healthy, and Plaintiff Hughes relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone. Plaintiff Hughes would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what she paid—based on the presence of ozone. After starting to use her SoClean device, Plaintiff Hughes began experiencing headaches and respiratory tract irritation. Plaintiff Hughes has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

118.    Prior to purchasing charcoal filters for her SoClean device, Plaintiff Hughes saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and she relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations,

advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what she paid—based on its ineffectiveness.

119.    Plaintiff **Robert E. Parker** is a resident of the City of Vancouver, **Washington**. In or around 2017 and 2018, he purchased a SoClean 2 device to clean his Philips CPAP machine. Plaintiff Parker used his SoClean 2 daily from purchase until 2021. Plaintiff Parker also regularly purchased filters for his SoClean 2. Plaintiff Parker considers convenience and his safety when making his purchasing decisions. He would not have purchased the SoClean 2 if he had known what he knows now about the SoClean 2. He also paid more for the SoClean 2 because he believed the product used activated oxygen and was safe and healthy.

120.    Prior to purchasing his SoClean device, Plaintiff Parker saw Defendant's claims in its advertising and on the packaging and website claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Parker began experiencing skin and respiratory tract irritation as well as shortness of breath. Plaintiff Parker has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

121.    Prior to purchasing charcoal filters for his SoClean device, Plaintiff Parker saw Defendant's claims that the filters converted activated oxygen to regular oxygen before release, and he relied on these representations in purchasing the filters. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products have no measurable effect on ozone release or accumulation, and would not have purchased the filter or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying for a filter that has no or very little value—or whose value was at least less than what he paid—based on its ineffectiveness.

122.    Plaintiff **Timothy Lakin** is a resident of the City of Fond du Lac in **Wisconsin**. In or around October 2019, Plaintiff Lakin purchased a SoClean 2 to clean his ResMed CPAP machine. Plaintiff Lakin used his SoClean 2 daily from purchase until spring 2021. Plaintiff Lakin considered the ability to sanitize his device, convenience, and his health and safety in making his purchasing decisions. He would not have purchased the SoClean 2 device if he had known what he knows now about the SoClean 2. He also paid more because he believed the product used activated oxygen and was safe and healthy.

123.    Prior to purchasing his SoClean device, Plaintiff Lakin saw Defendant's claims on the packaging, the website, and the label claiming the device used activated oxygen and was safe and healthy, and he relied on these representations in purchasing the device. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that these products emitted ozone, and would not have purchased the device or paid as much for it if that information was fully disclosed. Plaintiff was injured by paying a premium for a device that has no or very little value—or whose

value was at least less than what he paid—based on the presence of ozone. After starting to use his SoClean device, Plaintiff Lakin began experiencing eye irritation and headaches. Plaintiff Lakin has suffered anguish and concern since it has been revealed that these products emit dangerous ozone.

## II.    **Defendant**

124.    Defendant SoClean, Inc., is a Delaware corporation with its principal place of business at 12 Vose Farm Road, Peterborough, New Hampshire 03458.

## JURISDICTION & VENUE

125.    *Subject Matter Jurisdiction*. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 class members. The Court has subject-matter jurisdiction over the federal Magnuson-Moss warranty claims under 28 U.S.C. § 1331 and 28 U.S.C. § 2310(d). The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

126.    *Personal Jurisdiction*. Each of the transferor courts has personal jurisdiction over SoClean because SoClean regularly conducts business in those states (including in Pennsylvania) and because SoClean has falsely advertised the product to consumers who reside in those states (including in Pennsylvania). SoClean has also sold its products in the transferor states (including in Pennsylvania). In addition, SoClean committed tortious acts in the transferor states (including in Pennsylvania), and Plaintiffs' claims arise out of such acts, and/or because SoClean has otherwise made or established contacts in the transferor states (including in Pennsylvania) sufficient to permit the exercise of personal jurisdiction.

127.    *Venue*. Venue is proper in this judicial district for pretrial proceedings pursuant to 28 U.S.C. § 1407 and the transfer orders of the Judicial Panel on Multidistrict Litigation. *See, e.g.,* Dkt. No. 68, Transfer Order, *In re SoClean, Inc., Mktg., Sales Practices & Products Liability Litig.*, MDL No. 3021 (J.P.M.L. Feb. 2, 2022). Plaintiffs do not waive their rights under *Lexecon v. Milberg Weiss*, 523 U.S. 26 (1998), and thus remand to their filing venues at the end of pretrial proceedings will be required unless waivers for some or all Plaintiffs are given at a future date.

## FACTUAL ALLEGATIONS

128.    SoClean manufactures and sells medical devices that clean common sleep equipment including continuous positive airway pressure ("CPAP") and Bi-Level Positive Airway Pressure ("BiPAP") devices. Plaintiffs are the owners of SoClean cleaning devices.

## I.    Sleep Apnea and Its Treatment

129.    Sleep apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can prevent an individual from getting enough oxygen and cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health.

130.    The most common form of sleep apnea is caused by airway obstruction.

131.    Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy helps treat sleep apnea by preventing

the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing. CPAP therapy typically involves the use of a mask that covers the nose or face, a hose or tube that connects the mask to the CPAP machine, and a motor in a CPAP machine that delivers constant and steady air pressure to an individual's throat to help individuals breathe. The American Association of Sleep Technologists illustrates CPAP therapy as follows:



132.    Some CPAP machines also include a heated humidifier that is either fully integrated into the machine or easily attached. Use of the humidifier is optional; generally, it can either be turned off or detached.

133.    An estimated 8 million people in the United States use a CPAP machine.

134.    CPAP machines are most commonly prescribed for sleep apnea, a potentially serious disorder in which an individual's breathing repeatedly stops and starts while sleeping.

135.    CPAP machines are also used to treat diseases such as pulmonary fibrosis and Chronic Obstructive Pulmonary Disease ("COPD"), an umbrella term used to describe progressive lung diseases characterized by increasing breathlessness.

136.    Bi-Level Positive Airway Pressure therapy (also known as "BiPAP") is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or face mask device to maintain air pressure in an individual's airway. BiPAP therapy is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels – inspiratory and expiratory – of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device, the inspiratory positive airway pressure assists a person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. Bi-Level PAP devices deliver one level of pressurized air (the inspiratory positive level) to assist as the person inhales, and another level (the expiratory level) as a person exhales.

## II.    SoClean's Sleep Equipment Sanitizing Devices

137.    CPAP and BiPAP users must regularly sanitize or disinfect their sleep equipment devices.

138.    Manufacturers recommend cleaning these devices regularly with soap and water.

139.    The SoClean devices are marketed as a fast, easy way to clean and disinfect sleep equipment to avoid the hassle of washing with soap and water. However, prior to the development of the SoClean line of products, the CEO of SoClean did not even know what a CPAP machine was. Rather, he was part of a company looking for the next entrepreneurial opportunity for a predecessor entity that had been focused on the dying industry of supplying machines to take scratches out of CDs and DVDs to clients like Blockbuster.[1]

---

[1] Daniel D'Ambrosio, *Healthcare Startup Grows 2,805 Percent in 7 Years with CPAP Sanitizer*, FORBES (Dec. 21, 2018, 12:30 AM), https://www.forbes.com/sites/danieldambrosio/2018/12/21/healthcare-startup-grows-2805-percent-in-7-years-with-cpap-sanitizer/?sh=761264055cfb.

140.    The SoClean devices work on a variety of different sleep equipment and can be used on Positive Airway Pressure devices with or without humidifiers. They are compatible with all popular brands of CPAP and BiPAP machines including those manufactured by Philips Respironics, ResMed, and Fisher & Paykel.

141.    The SoClean devices sanitize CPAP machines by generating ozone and circulating it throughout the user's CPAP equipment.

142.    The SoClean 1, SoClean 2, and the SoClean 2 Go work similarly, but the SoClean 2 Go is a smaller, more portable version. *Compare* Ex. A (SoClean 2 Photos), *with* Ex. B (SoClean 2 Go Photos).

### III.    Ozone Gas

143.    Ozone ($O_3$) is an unstable blue gas with a pungent characteristic odor.

144.    Ozone gas forms when oxygen molecules ($O_2$) interact with electricity and re-combine with oxygen atoms (O) to form ozone ($O_3$).[2]

145.    Because ozone is an unstable gas, over time it gradually breaks down by re-combining with other molecules to re-form oxygen ($O_2$).

146.    In still air at room temperature, studies show it can take up to twenty-five hours for ozone levels to reduce by half,[3] and ozone continues to break down at this rate until it dissipates.

---

[2] Oxygen atoms (the "O" on the periodic table of elements) and oxygen molecules (the $O_2$ that we breathe) are both commonly called oxygen.

[3] J.D. McClurkin & D.E. Maier, *Half-Life Time of Ozone as a Function of Air Conditions and Movement*, 10th Int'l Working Conf. on Stored Prod. Prot. 381, 382 (2010), https://works.bepress.com/dirk-maier/44/ (finding that ozone's half-life varies based on atmospheric conditions with a maximum half-life of 1,524 minutes (25 hours) in dry still cool air).

147.    When ozone encounters organic material, its third oxygen atom can detach from the ozone molecule and re-attach to molecules of the other substance, thereby altering the chemical composition of the other substance.

148.    This reaction, called oxidation, can kill bacteria, viruses, and odors. As the FDA has recognized, ozone "is a gas that can be used to kill harmful bacteria. However, for ozone to be effective in destroying harmful bacteria, it must be present at a concentration above levels considered safe for humans." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

149.    As the U.S. Environmental Protection Agency ("EPA") states in explaining the dangers of products that use ozone indoors: "The same chemical properties that allow high concentrations of ozone to react with organic material outside the body give it the ability to react with similar organic material that makes up the body, and potentially cause harmful health consequences."[4]

150.    In sufficiently large quantities, ozone is also toxic to human beings.

151.    In smaller quantities, breathing ozone for even a short time can cause adverse health consequence in human beings.

152.    Ozone inhalation predominantly affects the respiratory system, and can cause irritation, pulmonary edema, and reduced lung function.

153.    Breathing ozone can cause coughing and shortness of breath.

---

[4] *Ozone Generators that are Sold as Air Cleaners*, EPA, https://www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners (last updated July 6, 2022).

154.    Breathing ozone can compromise the body's ability to fight respiratory infections.

155.    Breathing ozone can worsen asthma symptoms.

156.    Breathing ozone can worsen symptoms in people with heart disease.

157.    Ozone can react with other chemicals in the air to produce additional chemicals and fine particles that can also be irritating to the eyes, nose, throat, and lungs.

158.    As the FDA warned consumers in its safety communication on ozone devices, "Exposure to high levels of ozone gas also may worsen chronic respiratory diseases, such as asthma, or increase vulnerability to respiratory infection." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

159.    William H. Maisel, M.D., M.P.H, director of the Office of Product Evaluation and Quality in the FDA's Center for Devices and Radiological Health, warned patients about the potential health impacts from ozone gas devices used for cleaning sleep equipment: "**Exposure to high levels of ozone gas may worsen a patients' existing chronic respiratory diseases or increase the chance of a respiratory infection.**" Ex. D, Press Release, U.S. Food & Drug Administration, FDA Reminds Patients that Devices Claiming to Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized (Feb. 27, 2020) (emphasis in original).

160.    The EPA similarly warns: "When inhaled, ozone can damage the lungs. Relatively low amounts can cause chest pain, coughing, shortness of breath and throat irritation. Ozone may also worsen chronic respiratory diseases such as asthma and compromise the ability of the body to fight respiratory infections. People vary widely in their susceptibility to ozone. Healthy people, as well as those with respiratory difficulty, can experience breathing problems when exposed to

ozone. Exercise during exposure to ozone causes a greater amount of ozone to be inhaled, and increases the risk of harmful respiratory effects. Recovery from the harmful effects can occur following short-term exposure to low levels of ozone, but health effects may become more damaging and recovery less certain at higher levels or from longer exposures."[5]

161.    "The FDA has received reports from patients experiencing cough, difficulty breathing, nasal irritation, headaches, asthma attacks and other breathing complaints when ozone gas-based products were used to clean, sanitize or disinfect CPAP devices and accessories." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

## IV.    FDA Regulation of Ozone

162.    Given the dangers of ozone, all medical devices must comply with the FDA's Maximum Acceptable level of Ozone Rule, 21 C.F.R. § 801.415 (2019).

163.    The FDA's Maximum Acceptable Level of Ozone requirements took effect in 1974. *See* FDA Final Rulemaking: Ozone Generators and Other Devices Generating Ozone, 39 Fed. Reg. 13773-74 (Apr. 17, 1974).

164.    The FDA has determined that "[o]zone is a toxic gas." 21 C.F.R. § 801.415(a).

165.    The FDA initially regulated ozone in medical devices because "[i]n order for it to be effective as a germicide, ozone must be present in a concentration far greater than that which can be safely tolerated by man and animals." FDA Notice of Proposed Rulemaking, 37 Fed. Reg. 12644 (June 27, 1972); *accord* 21 C.F.R. § 801.415(a) (same).

---

[5] *Ozone Generators that are Sold as Air Cleaners*, EPA, https://www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners (last updated July 6, 2022) (citations omitted).

166.    The FDA found that "ozone has no useful medical application and that in tests conducted to study the bactericidal properties of ozone, test animals have died before the bacteria were completely destroyed." FDA Notice of Proposed Rulemaking, 37 Fed. Reg. 12644 (June 27, 1972).

167.    The FDA has determined that ozone exposure causes "undesirable physiological effects on the central nervous system, heart, and vision" and "the predominant physiological effect of ozone is primary irritation of the mucous membranes. Inhalation of ozone can cause sufficient irritation to the lungs to result in pulmonary edema." 21 C.F.R. § 801.415(b).

168.    FDA regulations considers any medical device "adulterated and/or misbranded" if it:

    a.  "generates ozone at a level in excess of 0.05 part per million by volume of air circulating through the device," 21 C.F.R. § 801.415(c)(1);

    b.  "causes an accumulation of ozone in excess of 0.05 part per million by volume of air . . . in the atmosphere of enclosed space intended to be occupied by people for extended periods of time, e.g., houses, apartments, hospitals, and offices," 21 C.F.R. § 801.415(c)(1);

    c.  "generate[s] ozone and release[s] it into the atmosphere in hospitals or other establishments occupied by the ill or infirm," 21 C.F.R. § 801.415 (c)(2);

    d.  "generate[s] ozone and release[s] it into the atmosphere and does not indicate in its labeling the maximum acceptable concentration of ozone which may be generated (not to exceed .05 part per million by volume of air circulating through the device) as established herein and the smallest area in which such device can be used so as

not to produce an ozone accumulation in excess of .05 part per million." 21 C.F.R.

§ 801.415(c)(3).

**V.    SoClean Avoided Proper FDA Classification and Regulations**

169.    SoClean classified its ozone devices for sleep equipment as Class I medical devices subject to the Medical Device Amendments to the Food, Drug and Cosmetic Act ("FDCA") and the implementing regulations promulgated by the Food and Drug Administration ("FDA").

170.    By averring that its medical devices belonged in Class I, SoClean avoided premarket review or approval by the FDA. Only devices that meet the safety and effectiveness standards in the premarket approval process are considered to be "approved" by the FDA. For this reason, SoClean devices are not considered "approved" by the FDA.

171.    The SoClean devices have also never fulfilled the 510(k) review process requirements and been cleared by the FDA. For this reason, they are not considered "cleared" by the FDA.

172.    By self-classifying as a Class I device, SoClean ignored the congressional mandate that any new device introduced after May 28, 1976, "intended for human use . . . is classified in class III." 21 U.S.C. § 360c(f)(1). The only exceptions to this rule are if a device is: (1) "substantially equivalent to another device" which has been classified as Class I or II, (2) the Secretary classifies the device in response to a petition, (3) the device is classified pursuant to a formal request. *Id.* Even after a petition or formal request, a new device must be classified as Class III until the agency order on reclassification becomes effective.

173.    SoClean classified its ozone medical devices as "general purpose disinfectants" under 21 C.F.R. § 880.6890. The FDA medical device database shows that as of July 2022, SoClean continues to make this classification for its family of products:[6]

| | |
|---|---|
| Proprietary Name: | SoClean Family of Products (SC1200, SC1400) |
| Classification Name: | DISINFECTANT, MEDICAL DEVICES |
| Product Code: | LRJ |
| Device Class: | 1 |
| Regulation Number: | 880.6890 |
| Medical Specialty: | General Hospital |
| Registered Establishment Name: | SoClean, Inc. |
| Registered Establishment Number: | 3009534409 |
| Owner/Operator: | SoClean, Inc. |
| Owner/Operator Number: | 10039873 |
| Establishment Operations: | Manufacturer; Remanufacturer; Repackager/Relabeler; Specification Developer; Complaint File Establishment |

174.    According to the CFR provision, a "general purpose disinfectant is a germicide intended to process noncritical medical devices and equipment surfaces." 21 C.F.R. § 880.6890(a).

175.    The SoClean ozone sleep-equipment devices are not "substantially equivalent" to any device in this category. Indeed, SoClean represented that it is "the world's first automated CPAP cleaner and sanitizer."

---

[6] *Establishment Registration & Device Listing*, FDA, https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRL/rl.cfm?lid=337549&lpcd=LRJ (last updated July 18, 2022).



176.    Instead, "General purpose disinfectants" are only to be used to "preclean or decontaminate critical or semicritical medical devices prior to terminal sterilization or high level disinfection." *Id.* Respiratory therapy equipment, like CPAP and BiPAP machines, are considered "semicritical" because they come into contact with mucous membranes.[7]

177.    The type of disinfectants used to clean "semicritical" medical devices are "high level disinfectants." 21 C.F.R. § 880.6885(a). High level disinfectants are Class II medical devices and require special controls including premarket notification as well as specific user information and training. 21 C.F.R. § 880.6885(b).

---

[7] *See* WORLD HEALTH ORGANIZATION, INFECTION PREVENTION AND CONTROL OF EPIDEMIC- AND PANDEMIC-PRONE ACUTE RESPIRATORY INFECTIONS IN HEALTH CARE. 71 (2014), https://www.ncbi.nlm.nih.gov/books/NBK214361/.

178.    When SoClean classified itself as a "general purpose disinfectant," it represented to the FDA that its device was a Class I medical device as safe as a bandage and non-electric wheelchairs. By choosing this classification, SoClean also exempted itself from the FDA's premarket notification procedures for medical devices. SoClean still classifies all of its medical devices as Class I medical devices under this provision.

179.    SoClean did not classify itself as a "high level disinfectant," which applies to "a germicide that is intended for use as the terminal step in processing critical and semicritical medical devices prior to patient use." 21 C.F.R. § 880.6885(a).

180.    If a medical device does not fall into any of the established product classifications, a manufacturer can request a formal device determination or classification from the FDA by submitting a 513(g) Request.

181.    On February 27, 2020, the FDA issued a Safety Communication stressing that it had "not authorized for market any products using ozone gas . . . to clean, disinfect, or sanitize continuous positive airway pressure (CPAP) devices and accessories (for example: hoses, masks, tubing, and headgear)." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

182.    The FDA went on to emphasize that "the FDA has not evaluated the safety and effectiveness of ozone gas . . . products claiming to clean, sanitize or disinfect CPAP machines and accessories in the home or healthcare setting." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

183.    Because the FDA has not "cleared or approved" these devices, the FDA considered these ozone-using devices "***illegally marketed*** products." Ex. D, Press Release, U.S. Food & Drug Administration, FDA Reminds Patients that Devices Claiming to Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized (Feb. 27, 2020) (emphasis added).

184.    As the FDA stated, "devices claiming to clean, disinfect or sanitize continuous positive airway pressure (CPAP) devices or accessories (such as masks, tubing, headgear) using ozone gas [] ***are not legally marketed*** for this use by the FDA in the U.S., and as such, their safety and effectiveness for use with CPAP devices and accessories is unknown." Ex. D, Press Release, U.S. Food & Drug Administration, FDA Reminds Patients that Devices Claiming to Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized (Feb. 27, 2020) (emphasis added).

185.    The FDA has "informed" SoClean that "based on their product's intended use and technological characteristics, FDA review and clearance or approval is needed and that data would need to be provided to demonstrate safety and effectiveness." Ex. D, Press Release, U.S. Food & Drug Administration, FDA Reminds Patients that Devices Claiming to Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized (Feb. 27, 2020).

## VI.    SoClean's CPAP Sanitizing Process

186.    The SoClean devices sanitize CPAP machines by generating ozone and circulating it throughout the user's CPAP equipment.

187.    The SoClean devices work on a variety of different CPAP models and can be used on CPAPs with or without humidifiers.

188.    Each SoClean device features an ozone generator, a black hose with a connector, and a chamber. *See* Ex. A (SoClean 2 Photos), Figure 1; Ex. B (SoClean 2 Go Photos), Figures 1-2.

189.    The SoClean 2 has a hard-plastic box as the chamber. *See* Ex. A (SoClean 2 Photos), Figures 1-2.

190.    Inside the SoClean 2's chamber, there is a spot for a filter cartridge. *See* Ex. A (Photos of SoClean 2 Device), Figure 1.

191.    The SoClean 2 Go uses a cloth bag with a draw string as the chamber. *See* Ex. B (SoClean 2 Go Photos), Figures 1, 4.

192.    On the SoClean 2 Go's cloth chamber, there is an outside pocket for a filter cartridge. *See* Ex. B (Photos of SoClean 2 Go Device), Figure 4.

193.    The approximately 3.5" long and 1" square filter cartridges consist of a plastic shell filled with granulated charcoal.

194.    SoClean makes and markets replacement filter cartridges to SoClean owners and represents that the filter must be replaced every six months for the life of the machine.

195.    To set up a SoClean device initially, a user connects the black hose to his CPAP tank's air output opening, where the face-mask hose also attaches. *See* Ex. A (SoClean 2 Photos), Figure 3; *See* Ex. B (SoClean 2 Go Photos), Figure 2.

196.    Connecting the black hose sometimes requires an adapter specific to the user's CPAP model.

197.    Once connected, the black hose remains attached to the user's CPAP even while the SoClean device is not in use.

198.    SoClean recommends that its customers run at least one cleaning cycle every day.

199.    During a cleaning cycle, the SoClean device actively generates ozone for approximately 7 to 14 minutes.

200.    To run a cleaning cycle, the user places his face mask into the SoClean device's chamber and closes the lid or draw string. *See* Ex. A (SoClean 2 Photos), Figure 2; Ex. B (SoClean 2 Go Photos), Figure 1.

201.    The user can then manually initiate a cleaning cycle by pressing a button or series of buttons.

202.    Alternatively, the SoClean 2 automatically runs a cleaning cycle every day when its digital clock reads 10:00 AM.

203.    When a cleaning cycle starts, the SoClean device begins generating a large quantity of ozone gas that travels through the black hose into the CPAP's tank.

204.    From the CPAP's tank, some of the ozone travels to the face mask and circulates inside the SoClean device's chamber.

205.    By design, this process inundates the CPAP mask, hose, and tank with ozone, killing bacteria, viruses, and odors found within.

206.    During and after a cleaning cycle, ozone escapes a SoClean device in two ways.

207.    First, ozone is pumped into the user's CPAP machine and because CPAP machines are not airtight, that ozone vents into the user's bedroom.

208.    This occurs because a CPAP machine has an open-air path between its air intake (where room air enters the machine to be pressurized) and its air outlet (where the face mask and the SoClean device connect to the machine). *See* Ex. E (Airflow Diagrams), Figure 1.

209.    Accordingly, ozone that enters the CPAP's air outlet (where the SoClean and face mask attach) can freely escape through the CPAP's air-intake opening. *See* Ex. E (Airflow Diagrams), Figure 2.

210.    Leaks can also "occur at tubing connections, filters or through fabric containers used to house CPAP accessories." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

211.    Anyone in proximity to the device can then inhale the escaped ozone.

212.    As the FDA has warned, when ozone escapes, "ozone gas in the nearby space may temporarily rise to unsafe levels, especially if the space is not well ventilated." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

213.    SoClean users generally keep their SoClean devices attached to their CPAP machines in the bedroom on a bedside table, as consistently depicted by SoClean in marketing materials. *See, e.g.*, Ex. F (SoClean Marketing Materials), Figures 1-2.

214.    Second, ozone remains in the CPAP mask, hose, and tank after a cleaning cycle.

215.    During normal CPAP use, the user inhales this leftover ozone through the face mask as air from the CPAP machine flows into the mask.

## VII.    The SoClean Devices Generate and Release Problematic Levels of Ozone

216.    Testing done by the FDA, an independent laboratory, and a competitor all demonstrate that the SoClean devices generate and release problematic levels of ozone.

### A.    FDA Review and Testing

217.    The FDA conducted preliminary lab testing of several ozone-using disinfection devices including products manufactured by SoClean.[8]



218.    The FDA conducted preliminary laboratory research on products claiming to use either ozone gas to clean, sanitize, or disinfect sleep equipment machines and accessories. To do so, the FDA did tests "in a minimally ventilated space with a volume representative of a small enclosed bathroom showed that several marketed ozone gas products generated ambient ozone levels above stated regulatory limits. Ozone levels were also elevated inside CPAP tubing even

---

[8] FDA, *Testing CPAP Cleaning Devices*, flickr, https://www.flickr.com/photos/fdaphotos/albums/72157713268590437 (last visited July 21, 2022).

after recommended wait times in ozone gas products that do not perform an automatic clean air purge towards the end of the cleaning cycle." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

219.    The FDA concluded that even if ozone-using disinfecting devices claim they "are designed to keep the ozone generated inside the machine and its accessories, leaks can occur at tubing connections, filters or through fabric containers used to house CPAP accessories." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

220.    As the FDA has warned, when ozone escapes, "ozone gas in the nearby space may temporarily rise to unsafe levels, especially if the space is not well ventilated." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

221.    The FDA also warned of the risk of ozone remaining in sleep equipment machines: "Ozone gas concentrations within the CPAP machine and tubing can also remain above safe levels even after the recommended waiting periods for ozone gas products that claim to clean. If the CPAP accessories are used without first allowing fresh air to circulate through the entire CPAP machine to remove any remaining ozone gas, this could lead to nasal, lung or any other type of irritation to the user's breathing passages." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

### B. *Independent Testing Shows the Generation and Release of Ozone through the Device and into the Environment*

222.    When used as directed, the SoClean 2 and the SoClean 2 Go generate ozone and cause ozone to be released into the atmosphere.

223.    When used as directed, the SoClean 2 and the SoClean 2 Go generate ozone at a level in excess of 0.05 ppm by volume of air circulating through the device.

224.    Independent testing of the SoClean 2 and SoClean 2 Go devices was done by Research Triangle Laboratories in October 2021.

225.    The SoClean 2 and SoClean 2 Go devices were tested for ozone emissions to determine if the levels exceeded the generation and release standard of 0.05 parts per million under 21 C.F.R. § 801.415(c)(1).

226.    The ozone instrument used UV absorption at 254 nm wavelength which is specific for ozone and the same technology used by the EPA and state programs for ozone compliance monitoring.

227.    In addition, a secondary ozone analysis method was used for confirmation of the ozone 2B Technologies results.  The secondary analysis used was a Gastec colorimetric detector tube No. 18L (measuring range of 0.025- 6 ppmv).

228.    The testing was conducted using ASTM D6670 "Full-Scale Chamber Determination of Volatile Organic Emissions from Indoor Materials/Products."  The SoClean 2 device was prepared and operated according to the manufacturers' instructions provided with the device.

229.    At the beginning of both tests, an ozone control sample was collected to demonstrate that no ozone was present in the room prior to turning on the device.

230.    Prior to testing on both devices, the SoClean filter was installed in the device.

231.    On October 26, 2021, testing was conducted by Research Triangle Laboratories on a SoClean 2 Model SC1200 S/N SC120021030211449.

232.    Ozone was measured at the CPAP device vent continuously during the 7-minute cleaning cycle for the SoClean 2 device.

233.    This initial independent 2B Tech test results show that, when used as directed, the SoClean 2 generates ozone and causes ozone to be released into the environment through the CPAP vent at levels of at least 2.0 ppmv during the default 7-minute cleaning cycle. This initial independent Gastec test results show that, when used as directed, the SoClean 2 generates ozone and causes ozone to be released into the environment through the CPAP vent at levels of at least 1.5 ppmv during the default 7-minute cleaning cycle. Ex. G, Research Triangle Laboratories, SoClean 2 Test Results.

234.    These levels are at least 30 to 40 times the FDA's limit on ozone generation and release by medical devices.

235.    On October 29, 2021, testing was conducted by Research Triangle Laboratories on a SoClean2 Go Model SC1300 S/N 1300SC041817112.

236.    This initial independent 2B Tech test results show that, when used as directed, the SoClean 2 Go generates ozone and causes ozone to be released into the environment through the CPAP vent at levels of at least 2 ppmv during the default 7-minute cleaning cycle. This initial independent Gastec test results show that, when used as directed, the SoClean 2 Go generates ozone and causes ozone to be released into the environment through the CPAP vent at levels of at least 3 ppmv during the default 7-minute cleaning cycle. Ex. H, Research Triangle Laboratories, SoClean 2 Go Test Results.

237.    These levels are at least 40 to 60 times the FDA's limit on ozone generation and release by medical devices. *See* 21 C.F.R. § 801.415(c)(1).

### C. Competitor Testing Confirms Plaintiffs' Testing Results

238.    According to the lab tests done by a competitor which were filed in federal court, the SoClean 2 consistently generates 30 ppm of ozone by volume of air circulating through the device during a cleaning cycle. *See* Compl., Ex. E (SoClean 2 Lab Reports), *3B Medical, Inc. v. SoClean, Inc.*, Case No. 1:19-cv-03545-KPF (S.D.N.Y. Apr. 22, 2019).

239.    When a SoClean 2 is run for 12 minutes, 28 ppm of ozone escapes the device and is released in a 50-liter Teflon chamber – with or without a filter cartridge installed. *See* Compl., Ex. E (SoClean 2 Lab Reports), *3B Medical, Inc. v. SoClean, Inc.*, Case No. 1:19-cv-03545-KPF (S.D.N.Y. Apr. 22, 2019).

240.    This is 560 times the FDA's limit on ozone generation and accumulation by medical devices. *See* 21 C.F.R. § 801.415(c)(1).

241.    According to the lab tests done by a competitor which were filed in federal court, when a SoClean 2 Go is run for 10 minutes, 5.6 ppm of ozone escapes the device and is released in a 27-liter glass chamber – with or without a filter cartridge installed. *See* Compl., Ex. F (SoClean 2 Go Lab Reports), *3B Medical, Inc. v. SoClean, Inc.*, Case No. 1:19-cv-03545-KPF (S.D.N.Y. Apr. 22, 2019) (attached here as Exhibit H).

242.    This is 112 times the FDA's limit on ozone generation and release by medical devices. *See* 21 C.F.R. § 801.415 (c)(1).

71

## VIII.    SoClean's False and Misleading Material Misrepresentations, Concealment, Half-Truths, and Omissions

243.    SoClean has made material misrepresentations, concealed, and omitted material information, and spun half-truths about the SoClean devices' ozone output across many forums, which are not only false but dangerous for consumers.

### D.    *SoClean's Failure to Disclose Its Ozone Generation and Use of the Term "Activated Oxygen"*

244.    The SoClean devices use ozone to sanitize sleep equipment machines.

245.    The SoClean devices' packaging does not disclose that the SoClean devices generate ozone or the levels of ozone generated.

246.    Marketing materials for the SoClean devices do not disclose that they generate ozone or the levels of ozone generated.

247.    Instead, SoClean represents to consumers that it uses "activated oxygen" to sanitize CPAP machines.

248.    In a prior User Guide, SoClean never mentions ozone, but instead indicates repeatedly that the device is "generating activated oxygen."

> # FAQ
>
> **1. Will my PAP equipment be wet from the SoClean?** No. The SoClean disinfects with activated oxygen. No fluids or water are used in this process.
>
> **2. Is the SoClean harmful to me or the environment?** No. The SoClean disinfects with activated oxygen. The same sanitizing technology is safely used on produce and drinking water. The SoClean produces activated oxygen in a closed system. The activated oxygen disinfects your equipment and naturally breaks down to regular oxygen within two hours. Additionally, any excess activated oxygen passes through a filter which converts it back to regular oxygen before release.

Ex. I, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN, at 18 (Rev. H) (highlighting added).

249.    SoClean has represented across many forums that the SoClean devices use "activated oxygen."  For example:

a.   The product packaging for the SoClean 2 never mentions ozone and the box states: "Activated Oxygen powers through your CPAP reservoir, hose, and mask."  *See* Ex. J (SoClean 2 Packaging), Figure 6.

b.   The SoClean website homepage has never mentioned ozone and instead, from January 2016 to June 2019, stated: "SoClean's activated oxygen cleaning

completely sanitizes your CPAP mask, hose, and reservoir without any water or chemicals."[9]



c.  To this day, SoClean's website homepage does not mention ozone.[10] Instead it touts having "health and non-toxic clean living" products that "create a happier, healthier home environment for you and those you love."[11]

d.  Since at least 2015, SoClean has used a promotional brochure advertising the SoClean devices that does not mention ozone and states: "SoClean's activated oxygen completely sanitizes your mask, hose, and reservoir without any water or chemicals."

---

[9] SoClean, https://www.soclean.com/
[https://web.archive.org/web/20160123184413/https://www.betterrestsolutions.com/?utm_source=radio&utm_medium=redirect&utm_campaign=marketingarchitects] (archived on Jan. 23, 2016); SoClean, https://www.soclean.com/
[https://web.archive.org/web/20190621205101/https://www.soclean.com/] (archived on June 21, 2019).

[10] SoClean, www.soclean.com (last visited July 18, 2022).

[11] Id.

74

e.  Currently, on the SoClean Website, in answer to the FAQ "Why do I smell ozone in my mask at night when the unit ran in the morning?" SoClean falsely stated: "What you smell is not ozone; the equipment is being oxidized with activated oxygen, and that is what you smell – it is completely safe. Some suggestions to lessen the smell: 1) Increase the cleaning time to 12 minutes for a few weeks, then decrease to 7 minutes. 2) Blow air from your CPAP through your mask for 5 minutes before using it. 3) Do not use fragrance wipes or any fragrance products to clean your CPAP equipment, as this will intensify the smell."[12]

f.  Three prior versions of the SoClean 2 User Guide never mention ozone and state that SoClean disinfects with "activated oxygen." Ex. K, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN (Rev. G); Ex. I, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN (Rev. H); Ex. L, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN (Rev. I).

g.  The online version of the SoClean 2 Go User Guide never mentions ozone and states: "The SoClean 2 Go users no fluids in its operation. It sanitizes with activated oxygen. No fluids or water are used in this process." Ex. M, *SoClean 2 Go Travel CPAP Sanitizer User Guide*, SOCLEAN, at 14 (Rev. A).

250.  However, ozone is a toxic gas with different chemical and toxicological properties from oxygen.

---

[12] A similar FAQ is still available on the British version of the website. *SoClean and Activated Oxygen*, SOCLEAN, https://www.soclean.com/uk/soclean-faq [https://web.archive.org/web/20210625061906/https://www.soclean.com/uk/soclean-faq] (last visited July 21, 2022).

251.    As the EPA explains: "Manufacturers[, like SoClean,] and vendors of ozone devices often use misleading terms to describe ozone," similar to activated oxygen, that "suggest that ozone is a healthy kind of oxygen."[13] But, in reality, as the EPA emphasized, "[o]zone is a toxic gas with vastly different chemical and toxicological properties form oxygen."[14]

252.    These omissions and representations are material, false, and highly misleading.

253.    Previously, during a limited period, buried deep within SoClean's website was a user-support FAQ page and a "white paper" that disclose that "activated oxygen" is actually ozone.

254.    The Brochure stated: "The SoClean uses ozone – also known as $O_3$ or activated oxygen – to sanitize CPAP equipment. Ozone is a 100% safe, naturally occurring gas that has been used to purify water since the 1800s. In today's world, it's a trusted sanitizing process used by hospitals, food handlers and the hotel industry."

255.    The FAQ titled "What is Activated Oxygen" states:

> Activated oxygen also known as ozone, or O3 is defined by Merriam-Webster dictionary as: 1. a form of oxygen that is found in a layer high in the earth's atmosphere. 2. fresh healthy air especially near the sea. Activated oxygen is a three atom oxygen molecule.

> This three atom molecule is a colorless gas with powerful oxidizing properties, formed from oxygen by electrical discharges or ultraviolet light. it differs from normal oxygen (O2) but over time or with forced filtration, will break back down to normal oxygen (O2) that we breathe.

> Many become confused over the term ozone. There is good ozone and there is bad ozone. Most commonly used is bad ozone which is linked to high ozone alerts or smog alerts in certain areas of the world. This kind of ozone is mixed with toxic gases that can be

---

[13] *Ozone Generators that are Sold as Air Cleaners*, EPA, https://www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners (last updated July 6, 2022).

[14] *Id.*

breathed  Good ozone is found in our upper atmosphere, or you may smell the essence of ozone after a thunderstorm.

Activated oxygen (ozone) is known as one of the best and most effective means to natural disinfection. This process is commonly used in array of applications such as public water filtration, fruit and vegetable handling, hotel housekeeping, and hospital disinfection. Please see common FAQs to learn more about activated oxygen (ozone) or see activated oxygen in SoClean to learn how the SoClean safely disinfects your CPAP equipment.[15]

256.    Not only were the foregoing disclosures obscure and difficult to locate, but they were themselves affirmatively false and misleading. They also function as half-truths because they contradict the more prominent language that SoClean uses. SoClean

257.    In any event, the disclosures do nothing to cure SoClean's falsehoods, omissions, concealments, and half-truths.

### E.    SoClean Fails to Notify Consumers of Ozone Usage and Risks

258.    SoClean does not advise users of the risk posed by ozone.

259.    For example, a prior version of the User Guide provides certain dangers and warnings. But none of them mention ozone or its risks:

---

[15]A similar FAQ is still available on the British version of the website. *Activated Oxygen*, SOCLEAN, https://www.soclean.com/uk/soclean-faq [https://web.archive.org/web/20210625061906/https://www.soclean.com/uk/soclean-faq] (last visited July 21, 2022).

**Contraindications for Use:** Do not use SoClean if a fragrant essence is used in the PAP water reservoir or if highly fragrant detergents are used to clean the PAP equipment. Discontinue use if acne or rash develops along mask contact line.

 **DANGER:** Keep away from water sources including rain, bathtubs, sinks and pools.

 **DANGER:** Keep away from children. It is not a toy!

 **DANGER:** Do not use in explosive air environments, near gas vapors, or other flammables, etc.

 **DANGER:** Do not place any items on top of SoClean Unit, particularly flammable or ignitable items.

 **DANGER:** Never place any living thing inside.

 **WARNING:** Do not dismantle the SoClean unit.

 **WARNING:** Do not run the SoClean for more than 30 minutes consecutively.

 **WARNING:** Please be aware that there are sensitive electronics inside the SoClean. If you need to clean your SoClean, wipe with a damp cloth. Do not submerge your SoClean or use any chemical cleaners to clean out the inside of the SoClean chamber.

Ex. I, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN, at 4 (Rev. H).

260.     Still, in November 2020, the SoClean website's main warning was about fragrance essences and nothing about the potential risks of ozone exposure:[16]

**Contraindications for Use**: Do not use the SoClean device if a fragrant essence is used in the PAP water reservoir or if highly fragrant detergents are used to disinfect the PAP equipment. Discontinue use if acne or rash develops along mask contact line.

---

[16] SOCLEAN, www.soclean.com
[https://web.archive.org/web/20201121170209/https://www.soclean.com/soclean2/product/soclean-2] (archived on Nov. 21, 2020).

261.    Even to this day, the SoClean User Manual provides a "contraindications for use" alert for those with underlying lung diseases and cardiovascular disease of potential "sensitiv[ity]." But the EPA has warned: "Healthy people, as well as those with respiratory difficulty, can experience breathing problems when exposed to ozone."

**Contraindications for Use:** Persons with underlying lung diseases, such as asthma and chronic obstructive pulmonary disease (also known as COPD, which includes emphysema and chronic bronchitis) and those with cardiovascular disease may be sensitive to ozone and should consult with their physician before using this product.

262.    Buried in the user guides, SoClean advises users to leave the mask in the SoClean device for two hours "to achieve maximum sanitizing," Ex. M, *SoClean 2 Go Travel CPAP Sanitizer User Guide*, SOCLEAN, at 12 (Rev. A), or so that "all disinfecting is complete," Ex. M, *SoClean 2 Go Travel CPAP Sanitizer User Guide*, SOCLEAN, at 16 (Rev. A).

263.    The SoClean 2 Go User Guide never warns that the two-hour post-cycle waiting period is intended to avoid exposure to unsafe levels of toxic gas. The SoClean 2 User Guide, in an unrelated FAQ on page 18, states: "The activated oxygen disinfects your equipment and naturally breaks down to regular oxygen within two hours."  However, the SoClean 2 User Guide never discloses the waiting period is intended or required to allow toxic gas to dissipate.

264.    But the ozone within the CPAP mask, hose, and tank may not always break down within two hours.

265.    As the FDA laboratory research testing indicated: "Ozone levels were also elevated inside CPAP tubing even after recommended wait times in ozone gas products that do not perform an automatic clean air purge towards the end of the cleaning cycle." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories (Feb. 27, 2020).

266.    Similarly, according to testing disclosed in separate case brought by a competitor, their testing showed ozone levels remain at 3 ppm two hours after a cleaning cycle was complete. *See* Compl., Ex. E (SoClean 2 Lab Reports), *3B Medical, Inc. v. SoClean, Inc.*, Case No. 1:19-cv-03545-KPF (S.D.N.Y. Apr. 22, 2019).

267.    When using their CPAP after a cleaning cycle, users often complain of a strong odor.

268.    The odor is attributable to ozone gas that remains in the CPAP mask, hose, and tank.

269.    The FDA's Maude database, where consumers can report adverse experiences with medical devices, contains thousands of reports about SoClean, attributing  adverse effects to unwitting ozone exposure. These reports include the following consumer complaints:

   a.    "I purchased a soclean c-pap-cleaner. I followed all of the directions i.E., preached the unit, hoses etc. etc. etc. I then cleaned the cpap machine using soclean at the recommended settings. That evening i slept with the cleaned machine. The smell of ozone was strong. The mfr calls ozone activated oxygen. After about 6 hours, i experienced a severe asthma attach which i have never had before. Treatment with rescue inhaler, steroids, bronchodilators. I have cough predominant asthma. The coughing was so severe that i injured my back."[17]

---

[17] *MAUDE Adverse Event Report: Inceptus SoClean 2*, FDA (Sept. 10, 2016), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/detail.cfm?mdrfoi__id=5969746&pc=LRJ (last visited June 1, 2022).

b.  "Purchased a soclean 2 cpap sanitizer from apria direct health care.
Upon using machine, a strong odor was noted on mask, but was told this
was normal and that it was like the ocean smell. After the first week i
began having trouble with my breathing. It continued to get worse.
Started breathing treatments and prednisone did not help. I then found
out that they used ozone to sanitize the cpap machine. Checked the
(b)(6) clinic web site only to find ozone is an irritant and can cause
asthma attacks. Called apira direct and they told me to return the
machine. They do not advise you of this danger. I ended up in an urgent
care center today for the asthma attack."[18]

c.  "After approximately 3 months of using soclean 2 cpap cleaner i noticed
i was getting sick, started having chest pains for short periods of time
each day and felt tired all the time. After research of the product, found
it uses ozone to disinfect and found i had most of the symptoms of
excess ozone in my system. After 3 days of not using it i am feeling
much better with no instances of chest pain and my cold is going away
along with my lungs clearing up. I will be seeing my doctor in 2 weeks
to be referred to a cardiologist for assessment."[19]

---

[18] *MAUDE Adverse Event Report: SoClean2 CPAP Sanitizer*, FDA (Mar. 12, 2018),
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=7472673
&pc=LRJ (last visited June 1, 2022).

[19] *MAUDE Adverse Event Report: SoClean Inc. SoClean Disinfectant, Medical Devices*, FDA
(Mar. 12, 2018),
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=7352173
&pc=LRJ (last visited June 1, 2022).

d.  "I used the soclean cpap cleaning machine, after i purchased it for (b)(6). It used ozone to cleanse cpap machine. There was ozone residue left in my cpap after using the soclean, and that ozone residue burned my sinuses and lungs. This product is hazardous to people's respiratory systems and it causes pain. It caused me severe pain. This product is unregulated and it should be regulated. I went to the doctor and was told to discontinue use of the soclean machine."[20]

e.  "I purchased a soclean2 pap disinfecting device on (b)(6) 2018, from (b)(6) center in (b)(6), to clean my cpap unit. Since using the product from that time, i have noticed my sense of taste and smell have diminished dramatically as well as a very dry and an unusual taste in my mouth. Everything i eat tastes bland. Can you tell me if this product has side effects that are causing me these issues? i have not changed anything else in my diet. Including no new medications. Is there residue left from the cleaning that are irritating my mucous membranes? i have appointments to see a pulmonary and nose/throat specialist as well as my dentist to rule out any other medical issues. As i mentioned before,

---

[20] *MAUDE Adverse Event Report: SoClean Inc. SoClean CPAP Cleaning Machine Disinfectant, Medical Devices*, FDA (May 1, 2017), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/detail.cfm?mdrfoi__id=7805317&pc=LRJ (last visited June 1, 2022).

there have been no changes to my diet or lifestyle and current blood tests show no issues."[21]

f. "Since using soclean to disinfect my cpap i suffer difficulty and pain breathing. My lungs hurt. Shortly after waking in the morning i have nausea. Fda safety report id # (b)(4)."[22]

g. "I have been using the soclean cpap sanitizer for a little over 7 months and have been getting headaches and sinus issues lately. I thought it was related to spring allergies but after researching it seems that the ozone remaining in the sanitizing unit could be the culprit. Fda safety report id # (b)(4)."[23]

h. "Used a soclean 2 last night. It disinfected at 10:00am on (b)(6) 2021 and i went to bed at 10:00pm and when i put the mask on it had a strong odor. I put the mask on and eventually the smell went away. Used my cpap machine through the night. The next day, i was having trouble breathing and my lungs don't feel right. I used one time and my

---

[21] *MAUDE Adverse Event Report: SoClean, Inc SoClean2 CPAP Sanitizing Machine Disinfectant Medical Devices*, FDA (Feb. 20, 2019), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=8377760&pc=LRJ (last visited June 1, 2022).

[22] *MAUDE Adverse Event Report: SoClean, Inc. SoClean2 Disinfectant, Medical Devices*, FDA (Apr. 1, 2021), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=12075158&pc=LRJ (last visited June 1, 2022).

[23] *MAUDE Adverse Event Report: SoClean, Inc. SoClean CPAP Sanitizer Disinfectant, Medical Devices*, FDA (May 3, 2021), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=11938365&pc=LRJ (last visited June 1, 2022).

breathing is terrible. I am needing an inhaler. I am returning the product to apriadirect where i purchased it from. I called them and told them what happened and i need to return it. They just wanted to sell me a different machine. I will clean it myself going forward."[24]

i. "Used the soclean 2 cpap cleaning machine. The first night i immediately felt a headache (i suffer from migraine). The headache would last the majority of the next day and return each night. Night five, i had no headache when putting on my cpap mask which was taken right out of the soclean 2 machine (cleaned it 14 hours prior and let it sit in the closed machine to allow the ozone to dissipate) and immediately got a headache once i started breathing the air. Fda safety report id# (b)(4)."[25]

j. "Increased coughing, tightness of chest, wheezing, after using product - soclean (for home automated cpap equipment sanitizer using ozone cartridges). I've detected a white, powdery residue sometimes after using this product. No manual came with the product. It was shown to me how to use it by a respiratory tech. There are no manuals/or

---

[24] *MAUDE Adverse Event Report: SoClean, Inc. SoClean 2 Disinfectant, Medical Devices*, FDA (May 27, 2021), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=1191283 5&pc=LRJ (last visited June 1, 2022).

[25] *MAUDE Adverse Event Report: SoClean, Inc. SoClean 2 Disinfectant, Medical Devices*, FDA (June 6, 2021), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=1200812 2&pc=LRJ (last visited June 1, 2022).

disclosures on adverse effects using this product. I went for medical help at urgent care due to an asthma attack…"[26]

k. "I purchased a soclean cpap cleaning system, which had been recommended by my sleep specialist, for use with my dreamstation which i have used for 2 years in treatment of osa. I purchased the system at the end of august and immediately used it precisely according to manufacturer instructions, with use of the precleaning solution and generous time running the cpap prior to using it, after cleaning cycle completed. About 2-3 days after initiating the use of the soclean device, i developed an irritated sensation in my chest, with a very mild wheeze, which i self treated with albuterol. Upon noting the symptom to worsen i discontinued use of the soclean, and within 2 days the symptoms had resolved. I then used the soclean again several weeks later, again following instructions quite carefully and repeating the recommended prewash, and again developed the same set of symptoms, which again resolved upon cessation of the device. Not fully convinced, i used the device again last week, with the same situation occurring. At this point i am 100% convinced that the discomfort i felt with the mild end expiratory wheeze is a reaction to the device, having caused and

---

[26] *MAUDE Adverse Event Report: SoClean Inc. SoClean Disinfectant, Medical Devices*, FDA (Nov. 4, 2019), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=9328395 &pc=LRJ (last visited July 13, 2022).

resolved it 3 separate times with initiation and discontinuation of use. These symptoms were bothersome but mild, and at no point did i seek out formal medical evaluation. (i myself am a physician.) I do feel the duty to report this as an adverse event…"[27]

l.   "I have been using a cpap machine for about a year now. When i purchased my cpap  machine i also purchased a so clean device. After using the so clean machine in the first month i noticed i started to develop a dry cough. I am in pretty good shape and i mountain bike usually 2 times a week. I started to notice on my bike rides or other strenuous activities where i was getting heart palpitations, headaches, and shortness of breath. I didn't realize what was causing it at the time. I was starting to think i was just getting old. The symptoms started to get worse over time, and finally one night i thought maybe it has something to do with the so clean machine. I started to research how harmful breathing ozone can be on humans. I found that people were complaining about the same symptoms that i was having. I thought how could a company just sell a device that can cause harm to people. I followed the directions on how to use the machine in the user manual. They recommend waiting for the green light on the machine before

---

[27] *MAUDE Adverse Event Report: SoClean Inc. SoClean 2 Disinfectant, Medical Devices*, FDA (Sept. 14, 2020),
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=10755512&pc=LRJ (last visited July 13, 2022).

using your cpap machine for use. I always replaced the filters when the machine told me it was time to. My wife and i could always smell the ozone whenever the machine was running but thought it was safe because the instruction manual says that it is a closed system. My wife started to also develop a dry cough anytime i used the machine. I stopped using the machine about two months ago and my symptoms have slightly dissipated, but i still feel short of breath, and sometimes feel heart palpitations. I am worried about my long term side effects, and how long it will take for some of the symptoms to completely go away. I have stopped using the machine completely and now i just use mild dish detergent to clean my equipment. I also found out that this machine will void the warranty of my cpap machine. None of this was disclosed through the vendor (aerocare). They say that this machine is fda registered on the box. I just thought that it meant it was approved as well. I feel i was misled and now may have some permanent damage to my lungs and possibly my wife's as well. Please feel free to reach out to me anytime…"[28]

m. "A reporter called to report that he developed an asthma after using a soclean machine to clean his machine two years. He was also expressing

---

[28] *MAUDE Adverse Event Report: SoClean Inc. SoClean 2 PAP Disinfecting Device Disinfectant, Medical Devices*, FDA (Aug. 29, 2020), https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=10656027&pc=LRJ (last visited July 13, 2022).

his concern a device that causes an adverse effects like this has been

marketed without fda's approval."[29]

270.    These experiences are representative of consumers' experiences with ozone

exposure through the SoClean devices.

271.    As the FDA summarized, it "has received reports from patients experiencing cough,

difficulty breathing, nasal irritation, headaches, asthma attacks and other breathing complaints

when ozone gas-based products were used to clean, sanitize or disinfect CPAP devices and

accessories." Ex. C, Safety Communication, U.S. Food & Drug Administration, Potential Risks

Associated with the Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP

Machines and Accessories (Feb. 27, 2020).

272.    Similar consumer complaints can be found across the internet.

**F.    SoClean Failed to Meet FDA Standards, Omitted Mandatory Notifications and
Misleadingly Suggested FDA Approval**

273.    To this day, SoClean is still illegally marketing the SoClean 2 device and it has not

been pulled from the market even though the device has not been cleared or approved by the FDA.

274.    SoClean has never recalled any of its predecessor devices, including the SoClean 2

Go, even though they were illegally marketed because they were never cleared or approved by the

FDA.

---

[29] *MAUDE Adverse Event Report: SoClean Inc. Disinfectant, Medical Devices,* FDA (Mar. 17,
2021),
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/detail.cfm?mdrfoi__id=1156869
5&pc=LRJ (last visited July 13, 2022).

275.    Even while an application is in process for Class I or Class II certification, a new medical device, like the SoClean devices, must meet the FDA requirements for a Class III medical device in order for it to be legally sold.

276.    SoClean did not indicate in its labeling the maximum acceptable concentration of ozone which may be generated (<0.05 ppm) and the smallest area in which such device can be used so as not to produce an ozone accumulation in excess of 0.05 PPM. *See* 21 C.F.R. § 801.415(c)(3).

277.    Given the SoClean devices are used by those with conditions requiring treatment with CPAP and BiPAP therapy, SoClean knew or should have known that its devices would generate ozone and release it into the atmosphere in establishments occupied by the ill or infirm in violation of 21 C.F.R. § 801.415 (c)(2).

278.    Given that SoClean represented that its devices would eliminate 99.99% of germs and were more effective at sanitizing than other cleaning methods, SoClean knew or should have known that its devices would be selected by many people who were immunocompromised and thus would be generating ozone and releasing it into the atmosphere in establishments occupied by the ill or infirm in violation of 21 C.F.R. § 801.415 (c)(2).

279.    Starting in January 2016 until at least June 2018, SoClean also misleadingly insinuated on its homepage that the FDA had at least reviewed its devices by using the FDA logo.[30]

---

[30] SoClean, https://www.soclean.com/
[https://web.archive.org/web/20160123184413/https://www.betterrestsolutions.com/?utm_source=radio&utm_medium=redirect&utm_campaign=marketingarchitects] (archived on Jan. 23, 2016).

A consumer could also reasonably believe that the FDA had approved or cleared the SoClean sleep equipment ozone devices.



### G. Representations that the SoClean Devices use "No Chemicals" and/or "No Harsh Chemicals"

280. SoClean misleadingly represents that its devices use "no water or chemicals" or "no harsh chemicals" to clean CPAP machines.

281. These representations are material, false, and misleading.

282. The SoClean devices use ozone gas to clean CPAP machines.

283. Ozone is a chemical.

284. Ozone is a harsh chemical.

285. So Clean has repeatedly represented that its devices use "[n]o water or chemicals" or "no harsh chemicals" to clean CPAP machines across many forums. For example:

    a. The box for the SoClean 2 states: "No water or chemicals." Ex. J (SoClean 2 Packaging), Figure 3.

b.  Since at least January 23, 2016, SoClean's website homepage has read: "SoClean kills 99.9% of CPAP germs and bacteria in your mask, hose and reservoir with no disassembly, no water, and no chemicals."[31]



c.  SoClean has aired the television commercial "Getting Sick from a Dirty CPAP" at least 10,929 times nationwide since 2018, representing that the SoClean devices use "no harsh chemicals" to clean CPAP machines.

d.  SoClean has aired the television commercial "CPAP Cleaner and Sanitizer" at least 22, 058 times nationwide since 2016, representing that the SoClean devices use "no chemicals" to clean CPAP machines.

---

[31] SoCLEAN, https://www.soclean.com [https://web.archive.org/web/20160123184413/https://www.betterrestsolutions.com/?utm_source =radio&utm_medium=redirect&utm_campaign=marketingarchitects] (archived on Jan. 23, 2016).

e.  SoClean has aired the television commercial "Safely Sanitize and Disinfect" at least

6,325 times nationwide between 2017

f.   and July 2018, representing that the SoClean devices use "no harsh chemicals" to

clean CPAP machines.

g.  SoClean has aired the television commercial "Automated CPAP Sanitizer" at least

512 times nationwide in 2018, representing that the SoClean devices use "no harsh

chemicals" to clean CPAP machines.

**H.  *Representations that the SoClean Devices Are "Safe" and "Healthy" for Use***

286.   SoClean often markets its device as "safe" and "healthy."

287.   These representations are false and misleading.

288.   A device that releases toxic gas into a user's bedroom at levels exceeding federal

regulations is not "safe" or "healthy."

289.   SoClean has repeatedly represented that its devices are safe and healthy across

many forums. For example:

a.  The packaging for the SoClean 2 states: "Breathe Healthy, Breathe SoClean."  *See*

Ex. J (SoClean 2 Packaging), Figure 4.

b.  Since at least March 28, 2016, SoClean's website homepage has represented that

the SoClean devices offer "Safer, healthier CPAP cleaning."[32]

---

[32] SOCLEAN, https://www.soclean.com
[https://web.archive.org/web/20160328103739/https://www.betterrestsolutions.com/?utm_source
=radio&utm_medium=redirect&utm_campaign=marketingarchitects] (archived on Mar. 28,
2016).



c. A brochure advertising the SoClean and SoClean 2 Go used since at least 2015 reads: "The SoClean makes it easy for any CPAP user to safely and naturally clean and sanitize their equipment on a daily basis."

d. A brochure advertising the SoClean and SoClean 2 Go used since at least 2015 reads: "Featuring the same safe, effective sanitizing process as the SoClean, the SoClean 2 Go is the perfect travel companion for any CPAP user – so small it can fit easily anywhere."

e. SoClean has aired the television commercial "Getting Sick from a Dirty CPAP" at least 10,929 times nationwide since 2018, representing that the SoClean devices help users stay healthy.

f. SoClean has aired the television commercial "CPAP Cleaner and Sanitizer" at least 22,058 times nationwide since 2016, representing that the SoClean devices improve users' health.

g. SoClean has aired the television commercial "Safely Sanitize and Disinfect" at least 6,325 times nationwide between 2017 and July 2018, representing that the SoClean devices safely sanitize CPAP masks and hoses.

93

h. In a brochure that consumers can obtain from SoClean only if they provide a name and valid email address, SoClean states that: "The SoClean users ozone – also known as $O_3$ or activated oxygen – to sanitize CPAP equipment. Ozone is a 100% safe, naturally occurring gas that has been used to purify water since the 1800s. In today's world, it's a trusted sanitizing process used by hospitals, food handlers and the hotel industry."

i. A product description of the SoClean 2 device reads: "The SoClean CPAP sanitizing machine uses safe, natural, activated oxygen to thoroughly sanitize your entire CPAP system (mask, hose, and water reservoir) by eliminating any mold, bacteria, and viruses it comes in contact with."[33]

j. A SoClean FAQ page represents that: "What is the concentration of ozone inside the SoClean CPAP cleaner and sanitizer? SoClean uses enough ozone to thoroughly sanitize your CPAP equipment and by the time you open the chamber it will have decreased to 0 ppm."[34]

290. A prior SoClean 2 PAP Disinfecting Device User Guide assured users that "SoClean is committed to developing innovative and safe ways to improve the health and well-being of PAP users." Ex. I, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN, at 2 (Rev. H).

---

[33] *SoClean 2*, AEROCARE, https://homecaremedical.com/products/soclean-2#:~:text=The%20SoClean%20CPAP%20sanitizing%20machine,Oxygen%20%2D%0A%20powerful%20sanitizing%20agent (last visited July 22, 2022).

[34] *SoClean – Frequently Asked Questions*, prior version available at DIRECTHOME MEDICAL, https://www.directhomemedical.com/accessories/soclean-frequently-asked-questions.pdf (last updated Dec. 21, 2018).

291.    A device that releases toxic gas into a user's bedroom at levels exceeding federal regulations is not "safe" or "healthy."

292.    SoClean's representations, advertisements, and written materials have been false in the past and continue to be false and misleading to the present.

### I.  *Representations that the SoClean Devices Use the Same Sanitizing Process Used in Hospitals*

293.    SoClean represents that its devices use the same sanitizing process found in hospital sanitizing.

294.    This representation is false, misleading, omits crucial information, and conceals the differences between these processes.

295.    Hospital ozone decontamination systems can only be used in vacant, sealed rooms.

296.    Hospitals cannot and do not use ozone sanitizers in spaces occupied by patients.

297.    SoClean devices, however, are marketed for use in the home, specifically bedrooms, and marketing materials often depict the SoClean device on the user's nightstand.

298.    SoClean has repeatedly represented that its devices are used in hospital sanitizing across many forums. For example:

a.    Since at least 2015, SoClean has used a promotional brochure advertising the SoClean devices that includes:

Did you know that SoClean uses the
same sanitizing process found in:

   

Water Purification    Produce Handling    Hotel Housekeeping    Hospital Sanitizing

95

b. Since at least 2015, SoClean has used a "rack card" advertising the SoClean devices that includes:



c. The box for the SoClean 2 features a similar image that states: "SoClean uses the same sanitizing process found in:" "water," "produce," "hotels," and "hospitals." *See* Ex. J (SoClean 2 Packaging), Figure 5.

d. The SoClean 2 Walmart product page maintained by the company reads "SoClean provides you with a fast, safe and effective way to disinfect CPAP equipment. It's designed to kill 99.9 percent of germs, bacteria and other pathogens in your mask, hose and reservoir. This CPAP cleaning system requires no disassembly, no water and no chemicals. . . . This automated CPAP sanitizer is patented, FDA-registered and independently lab-tested. . . . The SoClean 2 CPAP Cleaner and Sanitizer uses

the same disinfecting process also found in hospitals, hotels and produce handling."[35]

---

**Product details**                                                    ∧

Keep your system properly maintained with the SoClean 2 CPAP Cleaner and Sanitizer. It's a simple way to keep your machine free of germs and odor. SoClean provides you with a fast, safe and effective way to disinfect CPAP equipment. It's designed to kill 99.9 percent of germs, bacteria and other pathogens in your mask, hose and reservoir. This CPAP cleaning system requires no disassembly, no water and no chemicals. It also includes SoClean Adapter for Fisher & Paykel ICON Series Machines. This automated CPAP sanitizer is patented, FDA-registered and independently lab-tested. It features simple push-button controls on the front of the unit. The SoClean 2 CPAP Cleaner and Sanitizer uses the same disinfecting process also found in hospitals, hotels and produce handling.

---

   e.  In a brochure that SoClean requires consumers to provide a name and valid email address to obtain, SoClean states that: "The SoClean uses ozone – also known as $O_3$ or activated oxygen – to sanitize CPAP equipment. Ozone is a 100% safe, naturally occurring gas that has been used to purify water since the 1800s. s. In today's world, it is a trusted sanitizing process used by hospitals, food handlers and the hotel industry."

### J.    Representations that SoClean Is a Sealed or "Closed-Loop" System

299.    SoClean represents that the SoClean is a "closed system" and that no "activated oxygen" escapes the device.

300.    This representation is false, misleading, omits crucial information, and conceals what the company knew or should have known about how the system worked.

301.    A closed-loop system is one in which ozone circulates within but does not leave the device.

---

[35] *SoClean 2 CPAP Cleaner & Sanitizer + SoClean Adapter for Fisher & Paykel ICON Series Machines*, WALMART, https://www.walmart.com/ip/SoClean-2-CPAP-Cleaner-Sanitizer-SoClean-Adapter-for-Fisher-Paykel-ICON-Series-Machines/637890698 (last visited July 22, 2022).

302.     The SoClean devices circulate ozone through the CPAP machine which is then released into the ambient air or breathed by the CPAP user.

303.     SoClean has repeatedly represented across many forums that its devices are a "closed system" and/or that no "activated oxygen" escapes.

304.     In its User Guide, SoClean reassures users that the device is not "harmful" in part because it is "a closed system":

> **2. Is the SoClean harmful to me or the environment?** No. The SoClean disinfects with activated oxygen. The same sanitizing technology is safely used on produce and drinking water. The SoClean produces activated oxygen in a closed system. The activated oxygen disinfects your equipment and naturally breaks down to regular oxygen within two hours. Additionally, any excess activated oxygen passes through a filter which converts it back to regular oxygen before release.

Ex. I, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN, at 18 (Rev. H).

305.     SoClean also made these representations in its marketing for its devices. For example:

     a.     A "CPAP cleaning demo video" hosted on the SoClean homepage shows "activated oxygen" circulating through the CPAP machine and SoClean device, but no "activated oxygen" escaping the CPAP machine during the cleaning process.[36]  *See*

---

[36] SOCLEAN, www.soclean.com
[https://web.archive.org/web/20190421224245/https://www.soclean.com/] (archived on Apr. 21, 2019).

Ex. F (Marketing Materials), Figure 3. Online, the video appears next to the "Buy Now" button.



b.  A SoClean FAQ webpage represents the following: "What is the concentration of ozone inside the SoClean CPAP cleaner and sanitizer? SoClean uses enough ozone to thoroughly sanitize your CPAP equipment and by the time you open the chamber it will have decreased to 0 ppm."[37]

c.  A previous version of the SoClean 2 User Guide states: "The SoClean produces activated oxygen in a closed system." Ex. K, *SoClean 2 PAP Disinfecting Device User Guide*, SOCLEAN, at 18 (Rev. G).

d.  Another version states: "Is the SoClean harmful to me or the environment? No. The activated oxygen generator is always kept at a safe level and never reaches the outside environment." Ex. N, *SoClean 2 CPAP Sanitizer User Guide*, SOCLEAN, at 18 (ed. 10/01/13).

---

[37] *SoClean – Frequently Asked Questions*, prior version available at DIRECTHOME MEDICAL, https://www.directhomemedical.com/accessories/soclean-frequently-asked-questions.pdf (last updated Dec. 21, 2018).

306.    SoClean has made additional false and misleading representations, omitted additional material information, concealed critical information the company knew or should have known, and engaged in half-truths about the SoClean devices like those alleged above.

307.    Upon information and belief, SoClean pays or otherwise incentivizes individuals to create blog posts and online reviews repeating the falsehoods, material omissions, and half-truths.

308.    Upon information and belief, SoClean perpetuates the falsehoods, material omissions, and half-truths alleged above by using search engine optimization services.

### K.  *The Charcoal Filter Cartridges*

309.    SoClean represents that the filter cartridges convert "activated oxygen" back into "normal oxygen."

310.    This representation is false, misleading, omits crucial information, and conceals that there is no meaningful impact from the filters.

311.    The FDA has determined that there is no reliable way to guarantee the rapid breakdown of ozone to prevent its accumulation in enclosed spaces. *See* FDA Final Ozone Rulemaking, 39 Fed. Reg. 13773, ¶ 6 (Apr. 17, 1974).

312.    The filter does not prevent the SoClean devices from emitting ozone into the environment.

313.    The SoClean filter does not prevent ozone from escaping into the atmosphere.

314.    The SoClean filter has no measurable effect on ozone release or accumulation.

315.    Despite knowing that the filters have no measurable effect, SoClean goes to great lengths to misleadingly suggest that frequent purchase and replacement is necessary. Indeed, the machine itself displays a command to users to replace the charcoal filters every 6 months:





Ex. I, *SoClean 2 PAP Disinfecting Device User Guide*, SoClean, at 14, 17 (Rev. H).

316.    SoClean has repeatedly represented across many forums that its filters convert "activated oxygen" into "regular oxygen."  For example:

        a.    A prior online version of the SoClean 2 User Guide states: "Additionally, any excess activated oxygen passes through a filter which converts it back to regular oxygen before release." Ex. K, *SoClean 2 PAP Disinfecting Device User Guide*, SoClean, at 18 (Rev. G).

101

b.  The online version of the SoClean 2 Go User Guide states: "This filter converts activated oxygen back into normal oxygen. Replace every 6 months." Ex. M, *SoClean 2 Go Travel CPAP Sanitizer User Guide*, SOCLEAN, at 6 (Rev. A).

## IX.    The Effect of SoClean's Material Misrepresentations, Omissions, Concealment, and Half-Truths

317.    SoClean's material misrepresentations, omissions, concealment, and half-truths deceive consumers into believing that the SoClean devices do not generate ozone, do not release ozone into the atmosphere, and are safe, healthy, and suitable for use in consumer's bedrooms.

318.    SoClean's material misrepresentations, omissions, concealment, and half-truths lead consumers to purchase SoClean's products when they would not otherwise do so.

319.    Due to the nature of SoClean's business, its customers all have breathing problems for which they are receiving medical treatment in the form of CPAP therapy making them ill or infirm. In fact, CPAP users are so concerned about their health that they endure the considerable inconvenience of using a CPAP machine and wearing a CPAP face mask to sleep every night.

320.    CPAP users would find the risk posed by the SoClean devices generating unsafe levels of toxic gas, which is then pumped into their CPAP machines and their bedrooms, material to their purchasing decisions.

321.    SoClean's material misrepresentations, omissions, concealment, and half-truths pose a threat to individual and public health.

322.    Ozone exposure at levels exceeding .05 ppm negatively affects respiratory health.

323.    Epidemiologic studies suggest that those with existing breathing problems may experience adverse symptoms of ozone exposure at concentrations even lower than .05 ppm.

324.    SoClean's material misrepresentations, omissions, concealment, and half-truths have actually deceived and harmed consumers.

102

## TOLLING AND ESTOPPEL

### I.    DISCOVERY RULE TOLLING

325.    Plaintiffs and the members of the State and/or National Classes had no way of knowing about SoClean's conduct with respect to the health risks associated with the use of the SoClean's devices.

326.    Neither Plaintiffs nor any other members of the State and/or National Classes, through the exercise of reasonable care, could have discovered the conduct by SoClean alleged herein. Further, Plaintiffs and members of the State and/or National Classes did not discover and did not know of facts that would have caused a reasonable person to suspect that SoClean was engaged in the conduct alleged herein.

327.    For these reasons, all applicable statutes of limitations have been tolled by the discovery rule with respect to claims asserted by Plaintiffs and the State and/or National Classes.

### II.    FRAUDULENT CONCEALMENT TOLLING

328.    The running of any statute of limitations has been equitably tolled by SoClean's fraudulent concealment and/or omissions of critical safety information. Through its affirmative material misrepresentations and omissions, SoClean actively concealed from Plaintiffs and the members of the State and/or National Classes the true risks associated with the SoClean devices.

329.    By failing to provide immediate notice of the adverse health effects associated with continued use of the SoClean devices, SoClean concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the State and/or National Classes.

330.    Upon information and belief, SoClean intended its acts to conceal the facts and claims from Plaintiffs and members of the State and/or National Classes. Plaintiffs and the members of the State and/or National Classes were unaware of the facts alleged herein without

any fault or lack of diligence on their part and could not have reasonably discovered Defendant's

conduct. For this reason, any statutes of limitations that otherwise may apply to the claims of the

Plaintiffs or members of the State and/or National Classes should be tolled.

## CLASS ACTION ALLEGATIONS

331.    Plaintiffs have not waived their *Lexecon* rights to have their cases remanded for

trials in the transferee courts in which their cases were filed before transfer to this MDL. For that

reason, class representatives for each State seek certification on behalf of a class of purchasers or

users in their respective states.

332.    Plaintiff Renn seeks certification on behalf of a Class defined as follows (the

"Alabama Class"):

> All persons who were or are citizens of the State of Alabama who
> purchased or used a SoClean 2, SoClean 2 Go, or predecessor
> SoClean device to clean and sanitize sleep equipment (including
> CPAP, BiPAP, or Mechanical Ventilation machines).

333.    Plaintiff Lange seeks certification on behalf of a Class defined as follows (the

"Arizona Class"):

> All persons who were or are citizens of the State of Arizona who
> purchased or used a SoClean 2, SoClean 2 Go, or predecessor
> SoClean device to clean and sanitize sleep equipment (including
> CPAP, BiPAP, or Mechanical Ventilation machines).

334.    Plaintiff Landers seeks certification on behalf of a Class defined as follows (the

"Arkansas Class"):

> All persons who were or are citizens of the State of Arkansas who
> purchased or used a SoClean 2, SoClean 2 Go, or predecessor
> SoClean device to clean and sanitize their sleep equipment
> (including CPAP, BiPAP, or Mechanical Ventilation machines).

335.    Plaintiffs Barbera-Diaz and Young seek certification on behalf of a Class defined

as follows (the "California Class"):

104

> All persons who were or are citizens of the State of California who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

336.    Plaintiff Monaghan seeks certification on behalf of a Class defined as follows (the "Colorado Class"):

> All persons who were or are citizens of the State of Colorado who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

337.    Plaintiff Perun seeks certification on behalf of a Class defined as follows (the "Connecticut Class"):

> All persons who were or are citizens of the State of Connecticut who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

338.    Plaintiffs Gemelli and Huff seek certification on behalf of a Class defined as follows (the "Florida Class"):

> All persons who were or are citizens of the State of Florida who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

339.    Plaintiffs Brooks and Ciesla seek certification on behalf of a Class defined as follows (the "Georgia Class"):

> All persons who were or are citizens of the State of Georgia who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

340.    Plaintiff Benson seeks certification on behalf of a Class defined as follows (the "Illinois Class"):

> All persons who were or are citizens of the State of Illinois who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

341.    Plaintiffs Harris and Phillips seeks certification on behalf of a Class defined as

follows (the "Indiana Class"):

> All persons who were or are citizens of the State of Indiana who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

342.    Plaintiff Hunter-Blank seeks certification on behalf of a Class defined as follows

(the "Kansas Class"):

> All persons who were or are citizens of the State of Kansas who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

343.    Plaintiffs Humphress and Mayes seek certification on behalf of a Class defined as

follows (the "Kentucky Class"):

> All persons who were or are citizens of the Commonwealth of Kentucky who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

344.    Plaintiffs Hebert and Morris seek certification on behalf of a Class defined as

follows (the "Louisiana Class"):

> All persons who were or are citizens of the State of Louisiana who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

345.    Plaintiff Ekweozoh seeks certification on behalf of a Class defined as follows (the

"Maryland Class"):

> All persons who were or are citizens of the State of Maryland who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

346.    Plaintiff Cohen seeks certification on behalf of a Class defined as follows (the "Massachusetts Class"):

> All persons who were or are citizens of the Commonwealth of Massachusetts who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

347.    Plaintiff Williams-Redding seeks certification on behalf of a Class defined as follows (the "Michigan Class"):

> All persons who were or are citizens of the State of Michigan who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

348.    Plaintiffs Odom and Sakalarios seek certification on behalf of a Class defined as follows (the "Mississippi Class"):

> All persons who were or are citizens of the State of Mississippi who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

349.    Plaintiffs Pomianek and Turner seek certification on behalf of a Class defined as follows (the "Missouri Class"):

> All persons who were or are citizens of the State of Missouri who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

350.    Plaintiff Bradley seeks certification on behalf of a Class defined as follows (the "Nebraska Class"):

> All persons who were or are citizens of the State of Nebraska who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

351.     Plaintiff Thompson seeks certification on behalf of a Class defined as follows (the "New Jersey Class"):

> All persons who were or are citizens of the State of New Jersey who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

352.     Plaintiff Wazny seeks certification on behalf of a Class defined as follows (the "New York Class"):

> All persons who were or are citizens of the State of New York who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

353.     Plaintiffs Screen and Smith seek certification on behalf of a Class defined as follows (the "North Carolina Class"):

> All persons who were or are citizens of the State of North Carolina who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

354.     Plaintiffs Schaefer and Vernon seek certification on behalf of a Class defined as follows (the "Ohio Class"):

> All persons who were or are citizens of the State of Ohio who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

355.     Plaintiff Harrell seeks certification on behalf of a Class defined as follows (the "Oklahoma Class"):

> All persons who were or are citizens of the State of Oklahoma who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

356.    Plaintiff Meles seeks certification on behalf of a Class defined as follows (the "Pennsylvania Class"):

> All persons who were or are citizens of the Commonwealth of Pennsylvania who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

357.    Plaintiff Clark seeks certification on behalf of a Class defined as follows (the "South Carolina Class"):

> All persons who were or are citizens of the State of South Carolina who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

358.    Plaintiff Lattimore seeks certification on behalf of a Class defined as follows (the "Tennessee Class"):

> All persons who were or are citizens of the State of Tennessee who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

359.    Plaintiffs Simms and Wheeler seek certification on behalf of a Class defined as follows (the "Texas Class"):

> All persons who were or are citizens of the State of Texas who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

360.    Plaintiff Hughes seeks certification on behalf of a Class defined as follows (the "Virginia Class"):

> All persons who were or are citizens of the Commonwealth of Virginia who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

361.    Plaintiff Parker seeks certification on behalf of a Class defined as follows (the "Washington Class"):

> All persons who were or are citizens of the State of Washington who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

362.    Plaintiff Lakin seeks certification on behalf of a Class defined as follows (the "Wisconsin Class"):

> All persons who were or are citizens of the State of Wisconsin who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

363.    Alternatively, for certain counts, all Plaintiffs seek certification of a National Class defined as follows:

> All persons who were or are residents and citizens of the United States of America who purchased or used a SoClean 2, SoClean 2 Go, or predecessor SoClean device to clean and sanitize sleep equipment (including CPAP, BiPAP, or Mechanical Ventilation machines).

364.    Plaintiffs reserve the right to modify or refine the definitions of the Class based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

365.    Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant's and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which Defendant or its parents have a controlling interest, as well as Defendant's current or former

employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

366.    **Numerosity (Rule 23(a)(1)).** The Class is so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class, as herein identified and described, is not known, but upon information and belief, the Defendant sold its products to millions of individuals.

367.    **Commonality (Rule 23 (a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

- whether Defendant owed a duty of care to Plaintiffs and members of the State Classes;

- whether Defendant knew or should have known that its SoClean 2, SoClean 2 Go, and predecessor SoClean products posed health risks;

- whether Defendant misleadingly represented that its products were safe;

- whether Defendant misleadingly represented that its SoClean 2, SoClean 2 Go, or predecessor SoClean products were safe to use;

- whether Defendant misleadingly failed to disclose that its SoClean 2, SoClean 2 Go, or predecessor SoClean products used ozone and that ozone posed health risks users;

- whether Defendant's representations, omissions, concealment, and half-truths in advertising, warranties, packaging, and/or labeling were false, deceptive, and/or misleading;

- whether those representations and omissions were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one Defendant's SoClean 2, SoClean 2 Go, or predecessor SoClean devices;

- whether Defendant had knowledge that those representations, omissions, concealment, and half-truths were false, deceptive, and misleading;

- whether Defendant breached its express warranties;

- whether Defendant breached its implied warranties;

- whether Defendant engaged in false advertising;

- whether Defendant made negligent and/or fraudulent material misrepresentations and/or omissions; and

- whether Plaintiffs and the members of the State and/or National Classes are entitled to actual, statutory, and punitive damages.

368.    **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed State and/or National Classes. Plaintiffs and members of the State and/or National Classes (as applicable) suffered injuries as a result of Defendant's wrongful conduct that is uniform across the State and/or National Classes.

369.    **Adequacy (Rule 23(a)(4)).** Plaintiffs' interests are aligned with the Class they seek to represent. Plaintiffs have and will continue to fairly and adequately represent and protect the interest of the State and/or National Classes. Plaintiffs have retained competent counsel highly experienced in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interest of the Class. Plaintiffs have no interest that is antagonistic to those of the State and/or National Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and counsel are committed to vigorously prosecuting this

action on behalf of the members of the State and/or National Classes. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the State and/or National Classes.

370. **Superiority.** The class actions are appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the State and/or National Classes is impracticable. The prosecution of separate actions by individual members of the State and/or National Classes would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the State and/or National Classes, and would be dispositive of the interest of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

371. **Manageability.** The proposed class actions present fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

372. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the State and/or National Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**CLAIMS FOR RELIEF**

**COUNT I: BREACH OF EXPRESS WARRANTY**

**(on behalf of all Plaintiffs individually and all State Classes)**

113

373.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

374.    SoClean marketed and sold its products into the stream of commerce with the intent that its products would be purchased by Plaintiffs and members of the State Classes.

375.    SoClean expressly warranted, advertised, and represented to Plaintiffs and members of the State Classes that its products were safe and appropriate for human use.

376.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

377.    SoClean made these express warranties regarding its products' quality and fitness for use in writing, as part of a uniform marketing and advertising campaign, through its website, advertisements, and marketing materials, and on its products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the members of the State Classes entered into upon purchasing Defendant's products.

378.    SoClean's advertisements, warranties, representations, and omissions regarding health risks associated with its products, were made in connection with the sale of its products to Plaintiffs and members of the State Classes. Plaintiffs and members of the State Classes relied on SoClean's advertisements, warranties, representations, and omissions regarding its products in deciding whether to purchase and use SoClean's products.

379.    SoClean breached its warranty because the SoClean devices do not conform to SoClean's advertisements, warranties, representations, and omissions in that they are not legally marketed, safe, healthy, appropriate for human use, and pose risks of serious injury and disease.

380. SoClean therefore breached its express warranties by placing its products into the stream of commerce and selling them to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by SoClean. These associated health effects substantially impair the use, value, safety of the products, and render them worthless.

381. SoClean was aware, or should have been aware, of the toxic or dangerous health effects of the use of its products, but nowhere on the package labeling or package inserts or on SoClean's websites or other marketing materials did SoClean warn Plaintiffs and members of the State Classes that they were at risk of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products.

382. Instead, SoClean concealed the dangerous health effects of the ozone generated by, and used in, SoClean's products and deceptively represented that these products were safe, healthy, and appropriate for use. SoClean thus utterly failed to ensure that the material representations they were making to consumers were true.

383. The adverse health effects associated with use of SoClean's products existed when they left SoClean's possession or control and were sold to Plaintiffs and members of the State Classes. The dangers associated with use of SoClean's products were undiscoverable by Plaintiffs and members of the State Classes at the time of purchase of SoClean's products.

384. As manufacturers, marketers, advertisers, distributors, and sellers of the products used by the Plaintiffs and members of the State Classes, SoClean had exclusive knowledge and notice of the fact that its products did not conform to the affirmations of fact and promises. In addition, or in the alternative, to the formation of an express contract, SoClean made each of the

above-described representations and omissions to induce Plaintiffs and members of the State Classes to rely on such representations and omissions.

385.    SoClean's affirmations of fact and promises and its omissions were material, and Plaintiffs and members of the State Classes reasonably relied upon such representations and omissions in purchasing and using SoClean's products.

386.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs and the Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

387.    All conditions precedent to SoClean's liability for its breach of express warranty have been performed by Plaintiffs or members of the State Classes.

388.    Affording SoClean an opportunity to cure its breaches of written warranties would be unnecessary and futile here. SoClean, in addition to having actual knowledge based on reasonable notice from user reports and its lab testing that the use of the SoClean and SoClean 2 by its customers, in the manner set forth in SoClean's own printed materials, such as advertisements and instructions, presented an unsafe medical situation to SoClean customers. SoClean had ample opportunity to stop using the ozone method in cleaning its customers' CPAP machines.

389.    Had Plaintiffs and members of the State Class known the SoClean Devices were illegally marketed and were unsafe for use, they would not have purchased them.

390.    To the extent privity is required, Plaintiffs and members of the State Classes can establish privity with SoClean or alternatively, Plaintiffs and members of the State Classes can establish that they fall into an exception to a privity requirement.

391.    Alternatively, Plaintiffs and the members of the State Classes were foreseeable third-party beneficiaries of SoClean's sale of the devices at issue.

392.    All Plaintiffs and members of the State Classes suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

393.    As a direct and proximate result of SoClean's breaches of express warranty, Plaintiffs and members of the State Classes have been damaged because they did not receive the products as specifically warranted by SoClean. Plaintiffs and members of the State Classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for SoClean's products.

394.    Plaintiffs and members of the State Classes seek actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for SoClean's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (on behalf of all Plaintiffs individually and all State Classes)

395.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

396.    SoClean is a merchant engaging in the sale of goods to Plaintiffs and the members of the State Classes.

397.    There was a sale of goods from SoClean to Plaintiffs and members of the State Classes, either directly or indirectly, by and through the Plaintiffs' or State Class members' medical providers and/or medical suppliers.

398.    At all times mentioned herein, SoClean designed, manufactured, and/or supplied its products, and prior to being purchased by Plaintiffs and members of the State Classes, SoClean impliedly warranted to them that SoClean's products were of merchantable quality and were safe and fit for their ordinary and intended use.

399.    Such implied warranty of merchantability, contained in U.C.C. § 2-314, has been codified in each state. *See* Ala. Code §§ 7-2-314, *et seq.*; Ariz. Rev. Stat. Ann. §§ 47-2314, *et seq.*; Ark. Code Ann. §§ 4-2-314, *et seq.*; Cal. Com. Code §§ 2314, *et seq.*; Colo. Rev. Stat. §§ 4-2-314, *et seq.*; Conn. Gen. Stat. Ann. §§ 42a-2-314, *et seq.*; Fla. Stat. Ann. §§ 672.314, *et seq.*; O.C.G.A. §§ 11-2-314, *et seq.*; Ill. Comp. Stat. Ann. Ch. 810, 5/2-314, *et seq.*; Ind. Code Ann. §§ 26-1-2-314, *et seq.*; Kan. Stat. Ann. §§ 84-2-314, *et seq.*; Ky. Rev. Stat. Ann. §§ 355.2-314, *et seq.*; La. Civ. Code Ann. art. 2520, *et seq.*; Md. Code Ann., Com. Law §§ 2-314, *et seq.*; Mass. Gen. Laws Ann. Ch. 106, §§ 2-314, *et seq.*; Mich. Comp. Laws Ann. §§ 440.2314, *et seq.*; Miss. Code Ann. §§ 75-2-314, *et seq.*; Mo. Rev. Stat. §§ 400.2-314, *et seq.*; Neb. Rev. Stat. §§ 2-314, *et seq.*; N.J. Stat. Ann. §§ 12A:2-314, *et seq.*; N.Y. U.C.C. Law §§ 2-314, *et seq.*; N.C. Gen. Stat. Ann. §§ 25-

2-314, *et seq*.; Ohio Rev. Code Ann. §§ 1302.27, *et seq*.; Okla. Stat. tit. 12A, §§ 2-314, *et seq*.; 13

Pa. Stat. Ann. §§ 2314, *et seq*.; S.C. Code Ann. §§ 36-2-314, *et seq*.; Tenn. Code Ann. §§ 47-2-

314, *et seq*.; Tex. Bus. & Com. Code §§ 2.314, *et seq*.; Va. Code Ann. §§ 8.2-314, *et seq*.; Wash.

Rev. Code §§ 62A.2-314, *et seq*.; and Wis. Stat. Ann. §§ 402.314, et seq.

400.     Contrary to these warranties, SoClean's products were not safe and fit for their

ordinary use and SoClean. Instead, the SoClean devices were unsuitable and unsafe for personal

use. Thus, SoClean breached the implied warranty of merchantability in connection with the sale

and distribution of the SoClean devices.

401.     SoClean was on notice of this breach, as it was made aware of the adverse health

effects accompanying use of the devices through user reports submitted to SoClean and through

lab testing.

402.     To the extent privity may be required, Plaintiffs and members of the State Classes

can establish privity with SoClean or, alternatively, Plaintiffs and members of the State Classes

can establish they fall into an exception to a privity requirement. Privity exists because SoClean

impliedly warranted to Plaintiffs and members of the State Classes through the warrantying,

packaging, advertising, marketing, and labeling that SoClean's products were safe, healthy, and

suitable for use to clean sleep equipment including CPAP and BiPAP devices.

403.     Alternatively, Plaintiffs and the members of the State Classes were foreseeable

third-party beneficiaries of SoClean's sale of the SoClean devices.

404.     As a direct and proximate result of SoClean's breach of the implied warranty of

merchantability, Plaintiffs and members of the State Classes have suffered actual damages in that

each product they purchased is worth less than the price they paid and which they would not have

purchased at all had they known of the SoClean devices were unsafe for use.

405.    Plaintiffs and members of the State Classes seek actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for SoClean's failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT III: FRAUDULENT MISREPRESENTATION

**(on behalf of Plaintiffs Barbera-Diaz and Young and the California Class; Plaintiffs Gemelli and Huff and the Florida Class; Plaintiff Benson and the Illinois Class; Plaintiff Hunter-Blank and the Kansas Class; Plaintiffs Hebert and Morris and the Louisiana Class; Plaintiff Wazny and the New York Class)**

406.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

407.    Simply by marketing and selling their SoClean devices to the public, SoClean falsely represented to the public that they were legally marketing their SoClean devices and that their medical devices complied with FDA medical device regulations and statutory requirements that ensure safety and efficacy.

408.    Plaintiffs Barbera-Diaz and Young and members of the California Class, Plaintiffs Gemelli and Huff and members of the Florida Class, Plaintiff Benson and members of the Illinois Class, Plaintiff Hunter-Blank and members of the Kansas Class, Plaintiffs Hebert and Morris and members of the Louisiana Class, Plaintiff Wazny and members of the New York Class bought their devices from reputable sources and they should have been able to presume that their devices were safe and legally marketed because the FDA has a system that ensures all devices marketed and sold meet those criteria.

409.    By placing its devices on the market, SoClean intentionally, knowingly, and recklessly made material misrepresentations and omissions about the safety and legality of the devices to induce purchase of SoClean's products by Plaintiffs Barbera-Diaz and Young and members of the California Class, Plaintiffs Gemelli and Huff and members of the Florida Class,

Plaintiff Benson and members of the Illinois Class, Plaintiff Hunter-Blank and members of the Kansas Class, Plaintiffs Hebert and Morris and members of the Louisiana Class, Plaintiff Wazny and members of the New York Class.

410.    By putting these products on the market with the knowledge (or constructive knowledge) that they did not fit into any Category I classification, SoClean was fraudulently representing that its devices were as safe as bandages.

411.    SoClean knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers into believing they were purchasing a legal product that had met FDA safety standards.

412.    Plaintiffs Barbera-Diaz and Young and members of the California Class, Plaintiffs Gemelli and Huff and members of the Florida Class, Plaintiff Benson and members of the Illinois Class, Plaintiff Hunter-Blank and members of the Kansas Class, Plaintiffs Hebert and Morris and members of the Louisiana Class, Plaintiff Wazny and members of the New York Class did in fact rely on these material omissions and misrepresentations and purchased and used SoClean's products to their detriment. Given the deceptive manner in which SoClean advertised, represented, and otherwise promoted its products, this reliance on SoClean's material omissions and misrepresentations should be presumed and was justifiable.

413.    Because the very act of marketing and selling the product was fraudulent, SoClean made identical representations to every Plaintiff and every member of the Class. All of SoClean's representations on its website, marketing, label, and packaging was part of a common core of a scheme to defraud consumers and users into believing that the product was safe and legally marketed.

414.    As a direct and proximate result of SoClean's conduct, Plaintiffs Barbera-Diaz and Young and members of the California Class, Plaintiffs Gemelli and Huff and members of the Florida Class, Plaintiff Benson and members of the Illinois Class, Plaintiff Hunter-Blank and members of the Kansas Class, Plaintiffs Hebert and Morris and members of the Louisiana Class, Plaintiff Wazny and members of the New York Class have suffered actual damages in that they purchased SoClean's products (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known of the health risks associated with the use of SoClean's products, and (c) which did not conform to the products' labels, packaging, advertising, and statements.

415.    These material misrepresentations were so fundamental that every customer would necessarily rely on them in making their purchase. The very purchase of the SoClean devices by Plaintiffs Barbera-Diaz and Young and members of the California Class, Plaintiffs Gemelli and Huff and members of the Florida Class, Plaintiff Benson and members of the Illinois Class, Plaintiff Hunter-Blank and members of the Kansas Class, Plaintiffs Hebert and Morris and members of the Louisiana Class, Plaintiff Wazny and members of the New York Class is circumstantial evidence that every one of them relied on SoClean's common scheme to defraud.

416.    Plaintiffs Barbera-Diaz and Young and members of the California Class, Plaintiffs Gemelli and Huff and members of the Florida Class, Plaintiff Benson and members of the Illinois Class, Plaintiff Hunter-Blank and members of the Kansas Class, Plaintiffs Hebert and Morris and members of the Louisiana Class, Plaintiff Wazny and members of the New York Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

417.    Further, Plaintiffs Barbera-Diaz and Young and members of the California Class, Plaintiffs Gemelli and Huff and members of the Florida Class, Plaintiff Benson and members of

the Illinois Class, Plaintiff Hunter-Blank and members of the Kansas Class, Plaintiffs Hebert and

Morris and members of the Louisiana Class, Plaintiff Wazny and members of the New York Class

shall be entitled to an award of punitive damages because SoClean's conduct was knowing,

intentional, with malice, demonstrated a complete lack of care, and/or was in reckless disregard

and complete indifference to the probable consequence of its actions. Because SoClean put its own

pecuniary interest ahead of all else, it sacrificed the safety, health, and well-being of consumers

and their families. SoClean also unfairly profited off unsuspecting purchasers who believed they

were buying a legal and safe medical device. The only way to prevent this type of egregious

indifference from occurring again is to assess punitive damages against Defendant.

## COUNT IV: FRAUD BY OMISSION

**(on behalf of Plaintiffs Barbera-Diaz and Young and the California Class; Plaintiffs
Gemelli and Huff and the Florida Class; Plaintiff Benson and the Illinois Class; Plaintiff
Hunter-Blank and the Kansas Class; Plaintiffs Humphress and Mayes and the Kentucky
Class; Plaintiffs Hebert and Morris and the Louisiana Class; Plaintiff Wazny and the New
York Class; Plaintiff Harrell and the Oklahoma Class)**

418.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully

set forth herein.

419.    SoClean concealed from, and failed to disclose to Plaintiffs Barbera-Diaz and

Young and the California Class, Plaintiffs Gemelli and Huff and the Florida Class, Plaintiff Benson

and the Illinois Class, Plaintiff Hunter-Blank and the Kansas Class, Plaintiffs Humphress and

Mayes and the Kentucky Class, Plaintiffs Hebert and Morris and the Louisiana Class, Plaintiff

Wazny and the New York Class, and Plaintiff Harrell and the Oklahoma Class that use of

SoClean's products is accompanied by a risk of exposure to unsafe levels of ozone and/or adverse

health effects, which does not conform to the products' labels, packaging, advertising, and

statements.

123

420.     SoClean was under a duty to disclose to Plaintiffs Barbera-Diaz and Young and the California Class, Plaintiffs Gemelli and Huff and the Florida Class, Plaintiff Benson and the Illinois Class, Plaintiff Hunter-Blank and the Kansas Class, Plaintiffs Humphress and Mayes and the Kentucky Class, Plaintiffs Hebert and Morris and the Louisiana Class, Plaintiff Wazny and the New York Class, and Plaintiff Harrell and the Oklahoma Class the true quality, characteristics, ingredients and suitability of SoClean's products because: (a) SoClean was in a superior position to know the true state of facts about its products; (b) SoClean was in a superior position to know the risks associated with the use of, characteristics of, and suitability of its products for use by individuals; and (c) SoClean knew that Plaintiffs and members of the State Classes could not reasonably have been expected to learn or discover prior to purchasing SoClean's products that there were material misrepresentations and omissions by SoClean in the packaging, labels, advertising, and websites regarding the health risks associated with use of these devices.

421.     The facts concealed or not disclosed by SoClean to Plaintiffs Barbera-Diaz and Young and the California Class, Plaintiffs Gemelli and Huff and the Florida Class, Plaintiff Benson and the Illinois Class, Plaintiff Hunter-Blank and the Kansas Class, Plaintiffs Humphress and Mayes and the Kentucky Class, Plaintiffs Hebert and Morris and the Louisiana Class, Plaintiff Wazny and the New York Class, and Plaintiff Harrell and the Oklahoma Class were material in that a reasonable consumer would have considered them important when deciding whether to purchase the SoClean devices.

422.     Plaintiffs Barbera-Diaz and Young and the California Class, Plaintiffs Gemelli and Huff and the Florida Class, Plaintiff Benson and the Illinois Class, Plaintiff Hunter-Blank and the Kansas Class, Plaintiffs Humphress and Mayes and the Kentucky Class, Plaintiffs Hebert and Morris and the Louisiana Class, Plaintiff Wazny and the New York Class, and Plaintiff Harrell

124

and the Oklahoma Class justifiably relied on SoClean's omissions to their detriment. The detriment is evident from the true quality, characteristics, and risk associated with the use of the SoClean devices, which is inferior when compared to how the SoClean devices are advertised and represented by SoClean.

423.    As a direct and proximate result of SoClean's conduct, Plaintiffs Barbera-Diaz and Young and the California Class, Plaintiffs Gemelli and Huff and the Florida Class, Plaintiff Benson and the Illinois Class, Plaintiff Hunter-Blank and the Kansas Class, Plaintiffs Humphress and Mayes and the Kentucky Class, Plaintiffs Hebert and Morris and the Louisiana Class, Plaintiff Wazny and the New York Class, and Plaintiff Harrell and the Oklahoma Class have suffered actual damages in that they purchased SoClean's products (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known of the health risks associated with the use of SoClean's products, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

424.    Plaintiffs Barbera-Diaz and Young and the California Class, Plaintiffs Gemelli and Huff and the Florida Class, Plaintiff Benson and the Illinois Class, Plaintiff Hunter-Blank and the Kansas Class, Plaintiffs Humphress and Mayes and the Kentucky Class, Plaintiffs Hebert and Morris and the Louisiana Class, Plaintiff Wazny and the New York Class, and Plaintiff Harrell and the Oklahoma Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

425.    Further Plaintiffs Barbera-Diaz and Young and the California Class, Plaintiffs Gemelli and Huff and the Florida Class, Plaintiff Benson and the Illinois Class, Plaintiff Hunter-Blank and the Kansas Class, Plaintiffs Humphress and Mayes and the Kentucky Class, Plaintiffs Hebert and Morris and the Louisiana Class, Plaintiff Wazny and the New York Class, and Plaintiff

Harrell and the Oklahoma Class shall be entitled to an award of punitive damages because SoClean's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and/or was in reckless disregard and complete indifference to the probable consequence of its actions. Because SoClean put its own pecuniary interest ahead of all else, it sacrificed the safety, health, and well-being of consumers and their families. SoClean also unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to prevent this type of egregious indifference from occurring again is to assess punitive damages against Defendant.

**COUNT V: NEGLIGENT MISREPRESENTATION**

**(on behalf of all Plaintiffs individually and all State Classes)**

426.     On behalf of all State Classes, Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

427.     Defendant SoClean manufactured, advertised, and supplied the SoClean 2, SoClean 2 Go, and predecessor devices to clean CPAP and other sleep equipment machines.

428.     Defendant owed consumers of SoClean's products a duty to exercise reasonable care or competence in communicating material information about SoClean's products and to behave as a reasonable manufacturer and supplier in the marketplace. At the very minimum, this duty demands a manufacturer or supplier not provide false or misleading information, negligently or recklessly, in the course of a business transaction, that induces another's reliance to complete the transaction.

429.     For the reasons described herein, Defendant breached this duty and caused resulting injury in the form of monetary and nonmonetary damages to Plaintiffs and the State Classes.

430.    Most egregiously, SoClean has never legally marketed its products because they have neither been cleared nor approved by the FDA. But consumers were never informed that these were adulterated and misbranded medical devices that were being illegally sold.

431.    Additionally, SoClean engaged in a uniform advertising campaign that consisted of repeated material misrepresentations, omissions, and concealment, such as:

- SoClean's marketing and user materials fail to disclose that its devices emit ozone, which is a longstanding requirement of federal law for devices designed for human use (i.e., medical devices). Instead, SoClean falsely represents that its devices use "activated oxygen" to clean CPAP machines.

- SoClean markets the devices as "safe" and "healthy," which is false given that they generate toxic ozone gas at levels that substantially exceed federal regulations.

- SoClean falsely represents that its devices use "no water or chemicals" or "no harsh chemicals" to clean CPAP machines, despite using ozone gas—a harsh chemical that causes respiratory problems in humans.

- SoClean represents that its devices use the same sanitizing process found in "hospital sanitizing," but hospitals cannot and do not use ozone sanitizers in spaces occupied by patients.

- SoClean also claims that separately sold filters convert "activated oxygen" into "regular oxygen," which is false because SoClean's filters have no measurable effect on the device's ozone output.

- Finally, SoClean falsely claims that its devices are "sealed" such that "activated oxygen" (i.e., ozone) does not escape the devices, when in fact it does so in levels that can be detected and measured.

127

432.    These material misrepresentations, half-truths, and omissions are legally actionable as a misrepresentation sounding in tort.

433.    Defendant SoClean knew or should have known by reasonable care that the qualities and characteristics of its products were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Defendant. Specifically, Defendant SoClean knew or should have known that: (a) the use of its products was accompanied by risk of adverse health effects that do not conform to the packaging and labeling; (b) its products were adulterated, or at risk of being adulterated, by the ozone the products generated and used; and (c) the products were otherwise not as warranted and represented by SoClean.

434.    By making these material misrepresentations, half-truths, and omissions in its advertisements, labeling, packaging, and user materials, Defendant SoClean intended to induce consumers, including Plaintiffs and members of the State Classes, to enter into a transaction and pay a premium for a device that was worthless or at least worth less than the price they paid.

435.    As reasonable consumers, Plaintiffs and members of the State Classes justifiably relied, to their detriment, on Defendant's representations and omissions in its advertisements, labeling, packaging, and user materials, including that the device was legally marketed, used "activated oxygen," and was safe for human use to clean CPAP machines.

436.    These material misrepresentations were so fundamental that every customer would necessarily rely on them in making their purchase.

437.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the State Classes have suffered actual damages in that they purchased SoClean's products (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health

128

effects, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

438.    By inducing consumer reliance on the basis of material misrepresentations as to product safety and fitness for human use—for profit—Defendant SoClean put its pecuniary interest ahead of all else and behaved with reckless indifference to the rights and interests of consumers, including Plaintiffs and the State Classes. Defendant's conduct constitutes a gross breach of its duty to behave as a reasonable manufacture or supplier and not convey false or misleading material information, negligently or recklessly. This conduct warrants the imposition of injunctive relief and punitive damages, awarded to Plaintiffs and the State Classes.

439.    Therefore, Plaintiffs and the State Classes seek monetary and nonmonetary relief to the full extent provided by law and/or determined at trial, including actual damages, punitive damages, injunctive relief, attorneys' fees and costs, and any other just and proper relief this Court deems appropriate.

## COUNT VI: UNJUST ENRICHMENT

### (on behalf of all Plaintiffs individually and all State Classes)

440.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

441.    Plaintiffs and members of the State Classes conferred substantial tangible and material benefits on SoClean through their purchase of its products. SoClean knowingly and willingly accepted and enjoyed these benefits.

442.    SoClean either knew or should have known that the payments rendered by Plaintiffs and members of the State Classes were given with the expectation that SoClean's products would be legally marketed and have the qualities, characteristics, and suitability for use represented and

warranted by SoClean. As such, it would be inequitable for SoClean to retain the benefit of the payments under these circumstances. SoClean should not be able to illegally market the SoClean devices then retain all of the profits that it obtained from those illegal sales. Under these circumstances, disgorgement is appropriate.

443.    SoClean's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for SoClean to retain the benefits without payment of the value to Plaintiffs and members of the State Classes.

444.    Plaintiffs and members of the State Classes are entitled to recover from SoClean all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

445.    Plaintiffs and members of the State Classes seek restitution and/or disgorgement, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VII: VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT

### ALA. CODE §§ 8-19-1, *et seq.*
### (on behalf of Donna Renn and the Alabama Class)

446.    Plaintiff Renn realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

447.    Plaintiff Renn brings this cause of action individually and on behalf of the Alabama Class.

448.    Defendant is a "person" as defined by ALA. CODE § 8-19-3(10) and within the meaning of ALA. CODE § 8-19-10(a).

449.    Plaintiff Renn and the Alabama Class are "consumers" who bought goods for personal, family, or household purposes, as defined by ALA. CODE § 8-19-3(2), and within the meaning of ALA. CODE § 8-19-10(a).

450.    Defendant received notice pursuant to ALA. CODE § 8-19-10(e) concerning its

wrongful conduct as alleged herein by Plaintiff Renn and the Alabama Class. On information and belief, Defendant also does not maintain a place of business or does not keep assets within the state of Alabama.

451.    Defendant advertised, offered, sold or distributed goods in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama, as defined by ALA. CODE § 8-19-3(14).

452.    The Alabama Deceptive Trade Practices Act ("DTPA") prohibits the following specific deceptive acts or practices in the conduct of any trade or commerce: (1) representing that goods or services have characteristics, uses, benefits, or qualities that they do not have, ALA. CODE § 8-19-5(5); (2) representing that goods are of a particular standard or quality if they are of another, ALA. CODE § 8-19-5(7); (3) advertising goods with intent not to sell them as advertised, ALA. CODE § 8-19-5(9); and (4) knowingly making false or misleading statements of fact concerning the need for parts or replacement parts, ALA. CODE § 8-19-5(13).

453.    The Alabama DTPA also broadly prohibits "any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5(27).

454.    For the reasons described herein, Defendant engaged in unconscionable, false misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of Alabama DTPA under Sections 8-19-5(5), (7), (9), (13), and (27).

455.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use.  In addition to these material misrepresentations and half-truths, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels

131

of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products— and therefore Defendant's products were unsafe and unfit for human use.

456.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

457.    Defendant's deceptive acts or practices in the conduct of trade or commerce were likely to deceive reasonable consumers to rely on its material misrepresentations, concealment, half-truths, and omissions.

458.    Defendant's deceptive acts or practices in the form of its misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they involved information that would be important to consumers in making relevant purchasing decisions.

459.    By actively concealing or omitting that SoClean's products generated or used ozone, the risk of exposure to unsafe levels of ozone, and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products, Defendant knowingly suppressed material facts from consumers, including Plaintiff Renn and the Alabama Class, who were ignorant and unable to discovery the truth through reasonable diligence.

460.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The

very purchase of the SoClean devices by Plaintiff Renn and the Alabama Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

461.    Defendant's misrepresentations, concealment, omissions, and half-truths about SoClean's products also constitute "unconscionable" practices or acts in violation of ALA. CODE § 8-19-5(27) because: (1) Defendant denied consumers, including Plaintiff Renn and the Alabama Class, a "meaningful choice" in a consumer transaction by misrepresenting, concealing, or omitting material facts about SoClean's products; (2) the terms of these consumer transactions were unreasonably favorable to Defendant and worked to the detriment of consumers, including Plaintiff Renn and the Alabama Class; (3) the terms of the consumer transactions were oppressive, one-sided, or patently unfair to consumers, including Plaintiff Renn and the Alabama Class; and/or (4) Defendant's acts or practices in the aforementioned consumer transactions otherwise violate public policy.

462.    As a direct and proximate result of Defendant's unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of the Alabama DTPA, Plaintiff Renn and all members of the Alabama Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

463.    Further, Defendant's unconscionable, false, misleading, or deceptive acts or practices were intentional, repetitious, and have harmed a large group of consumers across the

state of Alabama. Because Defendant put its own pecuniary interest ahead of all else, it sacrificed the safety, health, and well-being of consumers and their families. As a result, Defendant has unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. Therefore, Plaintiff Renn and the Alabama Class are entitled to treble damages, pursuant to ALA CODE § 8-19-10(2), and to punitive damages as permitted by law.

464.    Plaintiff Renn and the Alabama Class seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $100; treble and punitive damages; injunctive relief; attorneys' fees and costs; and any other relief that is just and proper.

### COUNT VIII: VIOLATION OF ARIZONA CONSUMER FRAUD ACT

### ARIZ. REV. STAT. §§ 44-1521, *et seq.*
### (on behalf of Dorian Lange and the Arizona Class)

465.    Plaintiff Lange realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

466.    Plaintiff Lange brings this cause of action individually and on behalf of members of the Arizona Class.

467.    Defendant is a "person" as defined by ARIZ. REV. STAT. § 44-1521 and within the meaning of ARIZ. REV. STAT. § 44-1522.

468.    The Arizona Consumer Fraud Act (CFA), ARIZ. REV. STAT. §§ 44-1522, *et seq.*, prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." ARIZ. REV. STAT.

ANN. § 44-1522(A).

469.    Defendant willfully engaged in acts and practices which are deceptive as that term is used in ARIZ. REV. STAT. ANN. § 44-1522 in that, among other things, Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were safe, healthy, and fit for human use.  In addition to these material misrepresentations and half-truths, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products— and therefore Defendant's products were unsafe and unfit for human use.

470.    Defendant SoClean also willfully misrepresented that its products were legally marketed, safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen", use no "chemicals" or "harsh chemicals" to clean CPAP machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen", and that its products are "safe" for use to clean and protect CPAP machines, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal regulations for medical devices.

471.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

472.    Defendant's deceptive acts or practices—in the form of its material misrepresentations, concealment, omissions, and half-truths about SoClean's products—in connection with a sale or advertisement of SoClean products were likely to deceive reasonable consumers.

473.    Defendant's deceptive acts or practices in the form of its misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they pertain to information that would be important to reasonable consumers in making relevant purchasing decisions.

474.    Defendant intended for consumers, including Plaintiff Lange and the Arizona Class, to rely on its material misrepresentations, concealment, omissions, and half-truths regarding SoClean's products.

475.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Lange and the Arizona Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

476.    Defendant has also willfully engaged in acts and practices which are unfair and unconscionable within the meaning of ARIZ. REV. STAT. ANN. § 44-1522 because its material misrepresentations, concealment, omissions, and half-truths have caused substantial injury to consumers, including Plaintiff Lange and the Arizona Class, which was not reasonably avoidable by the consumers and was not outweighed by countervailing benefits to consumers or to competition. Defendant's acts and practices in connection with the sale of its products have harmed the public interest and offend public policy or other established concepts of fairness and are immoral, unethical, and unscrupulous.

477.    As a direct and proximate result of Defendant's deceptive, unfair, and

unconscionable acts and practices in connection with the advertisement or sale of SoClean products, Plaintiff Lange and all members of the Arizona Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

478.    Further, with reckless indifference to the interests of others, Defendant put its own pecuniary interest ahead of all else and, in so doing, it sacrificed the safety, health, and well-being of consumers and their families. As a result, Defendant has unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. This egregious conduct warrants the imposition of punitive damages, as permitted by the Arizona CFA.

479.    Plaintiff Lange and the Arizona Class therefore seek all monetary and non-monetary relief allowed by law including actual and punitive damages, injunctive relief, attorneys' fees and costs, and any other relief that is just and proper.

**COUNT IX**: **VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT**

**ARK. CODE ANN. §§ 4-88-101,** *et seq.*
**(on behalf of Steve Landers Sr. and the Arkansas Class)**

480.    Plaintiff Landers realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

481.    Plaintiff Landers brings this cause of action individually and on behalf of members of the Arkansas Class.

482.    Plaintiff Landers, all members of the Class, and Defendant are "persons" within the meaning of ARK. CODE ANN. § 4-88-113, which creates a private cause of action under the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA").

483.    Defendant's conduct as alleged herein was in connection with its advertisement and sale of SoClean products, goods, within the meaning of ARK. CODE ANN. §§ 4-88-102 and 4-88-108.

484.    The Arkansas DTPA provides that "[a] person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful by this chapter may bring an action to recover his or her actual financial loss proximately caused by the offense or violation." ARK. CODE ANN. § 4-88-113(f)(1)(A).

485.    The Arkansas DTPA prohibits deceptive and unconscionable trade practices, including but not limited to: (1) "[k]nowingly making a false representation as to the characteristics, ingredients, uses, [or] benefits. . .of goods. . .or as to whether goods. . .are. . .of a particular standard, quality, [or] grade," in violation of ARK. CODE ANN. § 4-88-107(a)(1); "[a]dvertising the goods. . .with the intent not to sell them as advertised," in violation of ARK. CODE ANN. § 4-88-107(a)(3); and "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade," in violation of ARK. CODE ANN. § 4-88-107(a)(10).

486.    The Arkansas DTPA also prohibits the following conduct, "[w]hen utilized in connection with the sale or advertisement of any goods, . . .[t]he act, use, or employment by any person of any deception, fraud, or false pretense" and "[t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." ARK. CODE ANN. § 4-88-108.

487.    For the reasons discussed herein, Defendant violated and continues to violate the

Arkansas DTPA, by engaging in the herein described deceptive, false, and unconscionable acts or practices proscribed by the Arkansas DTPA.

488.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

489.    Defendant also misrepresented that its products were safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean CPAP machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" for use to clean and protect CPAP machines, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

490.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

491.    Defendant's deceptive acts or practices in the form of its misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they pertain to information that would be important to reasonable consumers in making relevant purchasing decisions.

492.    Defendant's representations and omissions were likely to deceive reasonable consumers to induce them to purchase and use the SoClean products without being aware of the risk of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products.

493.    Defendant's deceptive acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead reasonable consumers, including Plaintiff Landers and the Arkansas Class, who relied on Defendant's representations and omissions, to their detriment.

494.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Landers and the Arkansas Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

495.    Defendant put its own pecuniary interest ahead of all else and, in so doing, it sacrificed the safety, health, and well-being of consumers and their families. As a result, Defendant has unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. As described herein, Defendant's conduct offends public policy and affronts the sense of justice, decency, or reasonableness so as to be considered "unconscionable" within the meaning of ARK. CODE ANN. § 4-88-107(a).

496.    As a direct and proximate result of Defendant's deceptive, false, and unconscionable acts and practices in connection with the advertisement or sale of SoClean

products, Plaintiff Landers and all members of the Arkansas Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

497.    The only way to deter Defendant's egregious commercial conduct is to assess punitive damages against Defendant.

498.    Pursuant to ARK. CODE ANN. § 4-88-113(f), on behalf of himself and the Arkansas Class, Plaintiff Landers seeks monetary relief of actual damages in an amount to be determined at trial and punitive damages, as permitted by law.

499.    On behalf of himself and the Arkansas Class, Plaintiff Landers also seeks attorneys' fees and costs and any other just and proper relief available under the Arkansas DTPA.

## COUNT X: VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### CAL. CIV. CODE §§ 1750, *et seq.*
**(on behalf of Plaintiffs Donna Barbera-Diaz and Rick Young and the California Class)**

500.    Plaintiffs Barbera-Diaz and Young reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

501.    Plaintiffs Barbera-Diaz and Young bring this cause of action individually and on behalf of members of the California Class.

502.    Defendant is a "person," as defined by CAL. CIV. CODE § 1761(c), and within the meaning of Cal. Civ. Code § 1780(a).

503.    Plaintiffs Barbera-Diaz and Young and all members of the California Class are "consumers," as defined by CAL. CIV. CODE § 1761(d), and within the meaning of CAL. CIV. CODE § 1780(a).

504.    Defendant engaged, directly or indirectly, in a transaction with consumers, including Plaintiffs Barbera-Diaz and Young and the California Class, intending to result in a sale of goods, as defined by CAL. CIV. CODE § 1761(e), and within the meaning of CAL. CIV. CODE § 1770(a).

505.    Defendant's products are "goods" within the meaning of CAL. CIV. CODE § 1761(a).

506.    The California Consumer Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale . . . of goods . . . to any consumer," CAL. CIV. CODE § 1770(a), including: (1) representing that goods have characteristics, uses, or benefits that they do not have, CAL. CIV. CODE § 1770(a)(5); (2) representing that goods are of a particular standard or quality if they are of another, CAL. CIV. CODE § 1770(a)(7); and (3) advertising goods with intent not to sell them as advertised, CAL. CIV. CODE § 1770(a)(9).

507.    For the reasons described herein, Defendant engaged in unfair or deceptive acts or practices in the course of transactions intended to result in a sale of goods to consumers, including Plaintiffs Barbera-Diaz and Young and the California Class, in violation of CAL. CIV. CODE §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9).

508.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels, that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths,

142

Defendant failed to disclose the material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use. By these material misrepresentations, concealment, omissions, and half-truths, Defendant represented that its products had characteristics, uses, or benefits they did not and that its products were of a particular standard or quality when they were of another, in violation of CAL. CIV. CODE §§ 1770(a)(5) and 1770(a)(7).

509.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

510.    By actively concealing that SoClean's products used and/or generated ozone and affirmatively representing that SoClean's products were safe, healthy, and fit for human use despite the inherent risks posed by their use, Defendant intended to conceal the true nature of its products and sell goods not as advertised, in violation of CAL. CIV. CODE § 1770(a)(9).

511.    Defendant had a duty to disclose material facts about any safety issues arising from a defect in SoClean's products. Plaintiffs Barbera-Diaz and Young and the California Class had no way of discerning that Defendant's representations about SoClean's products were false and misleading or otherwise learning the facts that Defendant had concealed or failed to disclose. Defendant alone had exclusive knowledge of the material facts it concealed or omitted; Plaintiffs Barbera-Diaz and Young and the California Class did not, and could not, unravel Defendant's deception on their own.

512.    Defendant's material misrepresentations, concealment, omissions, and half-truths were "deceptive," within the meaning of the CLRA, because they were likely to mislead a reasonable consumer.

513.    Defendant's deceptive acts or practices in the form of its misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because a reasonable consumer would deem such information important when making relevant purchasing decisions.

514.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Barbera-Diaz and Young and the California Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

515.    Defendant's business acts or practices undertaken in the course of transactions to sell SoClean's products were "unfair," within the meaning of the CLRA, because they violated the public's right to protection from fraud, deceit, and unlawful conduct. Further, Defendant's unfair acts or practices caused substantial injury to consumers, including to Plaintiffs Barbera-Diaz and Young and the California Class, which was not reasonably avoidable by the consumers themselves and was not outweighed by countervailing benefits to consumers or to competition.

516.    As a direct and proximate result of Defendant's violations of the CLRA by unfair or deceptive acts or practices undertaken in the course of consumer transactions, Plaintiffs Barbera-Diaz and Young and all members of the California Class suffered losses in the form of

monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

517.    Defendant's unfair or deceptive acts or practices rise to the level of oppressive, fraudulent, or malicious because Defendant put its own pecuniary interest ahead of all else and, in so doing, sacrificed the safety, health, and well-being of consumers, including Plaintiffs Barbera-Diaz and Young and the California Class. Therefore, in addition to compensatory relief of their actual damages, Plaintiffs Barbera-Diaz and Young and the California Class are entitled to punitive damages as permitted by CAL. CIVIL CODE § 1780(a)(4).

518.    Defendant was provided notice of the issues raised in this count and this Complaint by way of a notice letter pursuant to CAL. CIV. CODE § 1782. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs Barbera-Diaz and Young, on behalf of themselves and the California Class, seek all damages and relief to which Plaintiffs and the Class are entitled.

519.    Pursuant to CAL. CIV. CODE § 1780(a), Plaintiffs Barbera-Diaz and Young and the California Class seek actual damages, an order enjoining Defendant's unfair or deceptive acts or practices and awarding restitution, attorneys' fees and costs, punitive damages, and any other just and proper relief available under the CLRA.

## COUNT XI: VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW

### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*
**(on behalf of Plaintiffs Donna Barbera-Diaz and Rick Young and the California Class)**

520.    Plaintiffs Barbera-Diaz and Young reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

521.    Plaintiffs Barbera-Diaz and Young bring this cause of action individually and on behalf of members of the California Class.

522.    Plaintiffs Barbera-Diaz and Young, all members of the California Class, and Defendant are "person[s]" within the meaning of CAL. BUS. & PROF. CODE § 17200.

523.    California's Unfair Competition Law ("UCL") prohibits "unfair competition" including "any unlawful, unfair, or fraudulent business act or practices." CAL. BUS. & PROF. CODE § 17201.

524.    For the reasons described herein, Defendant engaged in such unfair competition, in violation of CAL. BUS. & PROF. CODE § 17200, by unlawful, unfair, or fraudulent business practices in the course of its manufacturing, marketing, advertising, packaging, labeling, and sale or distribution of SoClean products.

525.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels, that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

146

526.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

527.    **Unlawful.** By these material misrepresentations, concealment, omissions, and half-truths, Defendant committed statutory violations of California state law, including CAL. CIV. CODE §§ 1770(a)(5), 1770(a)(7), 1770(a)(9); CAL. BUS. & PROF. CODE § 17500; breach of express and implied warranties, among other violations of law. Therefore, Defendant's conduct was "unlawful" within the meaning of the UCL, and satisfies the statutory predicate requirement for this cause of action.

528.    **Unfair.** As alleged herein, Defendant's conduct was "unfair," within the meaning of the UCL, because it was immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, or otherwise violative of established public policy. Defendant put its own pecuniary interest ahead of all else, while sacrificing the safety, health, and well-being of consumers, including Plaintiffs Barbera-Diaz and Young and the California Class. Defendant's conduct has caused substantial injury to consumers, including Plaintiffs Barbera-Diaz and Young and the California Class, which could not be reasonably avoided by the consumers and was not outweighed by countervailing benefits to consumers or to competition. Defendant's conduct is also "unfair," within the meaning of the UCL, because it violates established public policy or statutory provisions of California law, or is comparable to such violations, aimed at protecting consumers and fair competition.

529.    **Fraudulent Representation.** As alleged herein, Defendant's material misrepresentations, concealment, omissions, and half-truths about SoClean's products were fraudulent because they were likely to deceive a reasonable consumer.

147

530.     **Fraudulent Omission.** Defendant perpetrated fraudulent omissions by knowingly concealing or omitting material facts as to SoClean's products' characteristics and attendant risks for which Defendant had a duty to disclose. Defendant had a duty to disclose material facts because it had exclusive knowledge and which were not reasonably accessible to Plaintiffs Barbera-Diaz and Young and the California Class. Defendant also assumed a duty to disclose information by affirmatively representing that SoClean's products were safe, healthy, and fit for human use, similar to hospital grade sanitizing devices, and used "activated oxygen," while concealing or omitting the material facts that SoClean's products generate or use ozone, which is not authorized for household use, and which can escape the device during use, causing adverse health risks.

531.     Defendant's misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because a reasonable consumer would consider them important to their relevant purchasing decisions.

532.     These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Barbera-Diaz and Young and the California Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

533.     As a direct and proximate result of Defendant's unlawful, unfair, or fraudulent acts or practices, Plaintiffs Barbera-Diaz and Young and all members of the California Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not

concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

534.    Pursuant to CAL. BUS. & PROF. CODE § 17203, on behalf of themselves and the California Class, Plaintiffs Barbera-Diaz and Young seek an order enjoining Defendant's unlawful, unfair, or fraudulent conduct in violation of the UCL, and any other relief as may be necessary to prevent this conduct from recurring. On behalf of themselves and the California Class, Plaintiffs Barbera-Diaz and Young and also seek full restitution for their actual losses of an amount to be determined at trial but not less than the total cost of the SoClean device, which Plaintiffs Barbera-Diaz and Young and the California Class would not have purchased had they known the truth of its characteristics and attendant health risks, as well as any other relief available under the UCL.

## COUNT XII: VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW

### CAL. BUS. & PROF. CODE § 17500 ("FAL")
### (on behalf of Plaintiffs Donna Barbera-Diaz and Rick Young and the California Class)

535.    Plaintiffs Barbera-Diaz and Young reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

536.    Plaintiffs Barbera-Diaz and Young bring this cause of action individually and on behalf of members of the California Class.

537.    Plaintiffs Barbera-Diaz and Young, all members of the California Class, and Defendant are "person[s]," as defined by CAL. BUS. & PROF. CODE § 17506, and within the meaning of CAL. BUS. & PROF. CODE § 17500.

538.    The California False Advertising Law ("FAL") broadly prohibits false or misleading advertising by making it "unlawful for any person, firm, corporation, or association . . . with intent directly or indirectly to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in [the] state, . . . in any . . . publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement concerning that [] personal property . . . or concerning any circumstance or matter of fact connected with the . . . disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500.

539.    The FAL also specifically prohibits "any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property . . . as so advertised." Cal. Bus. & Prof. Code § 17500.

540.    As alleged herein, through its marketing, advertising, packaging, and labeling and over various advertising mediums (e.g., television and the internet), Defendant made or disseminated untrue or misleading statements of facts, which Defendant knew or should have known by reasonable diligence were untrue or misleading, pertaining to its SoClean products with the intent, directly or indirectly, to induce the public, including Plaintiffs Barbera-Diaz and Young and the California Class, to enter an obligation to purchase its products, in violation of Cal. Bus. & Prof. Code § 17500.

541.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels, that its products were legally marketed, safe,

healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, its products—and therefore Defendant's products were unsafe and unfit for human use.

542.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

543.    By actively concealing that its products used and/or generated ozone and affirmatively representing that its products were safe, healthy, and fit for human use despite the inherent risks posed by their use, Defendant made or caused to be made statements of fact pertaining to the SoClean products as part of a plan or scheme with the intent not to sell that personal property as advertised, in violation of CAL. BUS. & PROF. CODE § 17500.

544.    By representing that its products used "activated oxygen" while concealing or omitting that the products actually used or generated ozone, Defendant failed to disclose relevant, material information as to the characteristics and attendant risks of its products.

545.    Defendant's untrue or misleading representations and omissions about SoClean products' safety and efficacy were deceptive because they were likely to mislead a reasonable consumer.

546.    Defendant's untrue or misleading representations and omissions about SoClean products' safety and efficacy were material because a reasonable consumer would deem them important when making relevant purchasing decisions.

547.     These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Barbera-Diaz and Young and the California Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

548.     As a direct and proximate result of Defendant's violations of the California FAL, Plaintiffs Barbera-Diaz and Young and all members of the California Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

549.     For the foregoing reasons, Plaintiffs Barbera-Diaz and Young and the California Class are entitled to injunctive and equitable relief, including restitution and an order for the disgorgement of the funds by which Defendant has been unjustly enriched, and any other just and proper relief as is available under the California FAL, pursuant to CAL. BUS. & PROF. CODE § 17535.

**COUNT XIII: VIOLATION OF COLORADO CONSUMER PROTECTION ACT**

**COL. REV. STAT. ANN. § 6-1-101, *et seq.***
**(on behalf of Diane Monaghan and the Colorado Class)**

550.    Plaintiff Monaghan realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

551.    Plaintiff Monaghan brings this cause of action individually and on behalf of members of the Colorado Class.

552.    Plaintiff Monaghan, all members of the Colorado Class, and the Defendant are "persons" within the meaning of COLO. REV. STAT. ANN. §§ 6-1-102(6), 6-1-105(1), 6-1-113(1).

553.    Plaintiff Monaghan and the Colorado Class are "actual consumers" of Defendant's goods and services within the meaning of COLO. REV. STAT. ANN. § 6-1-113(1)(a).

554.    The Colorado Consumer Protection Act ("Colorado CPA"), COL. REV. STAT. ANN. § 6-1-101, *et seq.*, prohibits deceptive trade practices in the course of a person's business, vocation, or occupation. It was enacted to provide prompt, economical, and readily available remedies against consumer fraud by deterring and punishing commercial activities that, by their nature, may prove injurious, offensive, or dangerous to the public.

555.    The Colorado CPA explicitly defines the following conduct as deceptive and therefore unlawful under COL. REV. STAT. ANN. § 6-1-105: (1) "either knowingly or recklessly mak[ing] a false representation as to the characteristics, ingredients, uses. . .[or] benefits. . .of goods," § 6-1-105(e);  (2) "represent[ing] that goods are of a particular standard, quality, or grade. . .if he knows (or should know) that they are of another, § 6-1-105(g); (3) "advertis[ing] goods. . .with intent not to sell them as advertised," § 6-1-105(i); and (4) failing to disclose material information concerning goods. . .which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into

153

a transaction," § 6-1-105(u). The Colorado CPA also broadly prohibits "either knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice, § 6-1-105(kkk).

556.    Defendant has engaged in deceptive, unfair, unconscionable, deliberately misleading, false, and/or fraudulent trade practices in violation of the Colorado CPA by representing on its website, advertisements, and marketing materials, and on its products' packaging and labels, that its products were safe and fit for human use.

557.    Defendant also misrepresented that its products were legally marketed, safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean CPAP machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" for use to clean and protect CPAP machines.

558.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

559.    While making these material misrepresentations and half-truths, Defendant concealed, suppressed, or omitted the material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

560.    By its material misrepresentations, half-truths, concealment, and omissions about the SoClean device, Defendant engaged in deceptive trade practices in violation COLO. REV. STAT. ANN. § 6-1-105.

561.    At the time of the advertisement or sale, Defendant either knew of the material information relating to SoClean's products that it failed to disclose, concealed, or suppressed, (or should have known by reasonable diligence) and intended, by its material omissions, to induce consumers to enter into subsequent transactions.

562.    Defendant acted knowingly or recklessly in making false, misleading, or fraudulent representations regarding the nature and characteristics, safe and effective uses, and benefits of SoClean's products. Defendant knew or should have known at the time of the advertisement or sale that these material misrepresentations and half-truths were false or misleading.

563.    Defendant's material misrepresentations, half-truths, concealment, and omissions were likely to deceive reasonable consumers.

564.    The facts underlying Defendant's misrepresentations, half-truths, concealment, and omissions were material because reasonable consumers would deem them important in making relevant purchasing decisions.

565.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Monaghan and the Colorado Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

566.    As a direct and proximate result of the Defendant's deceptive trade practices in violation of the Colorado CPA, COLO. REV. STAT. ANN. § 6-1-101, *et seq.*, Plaintiff Monaghan and all members of the Colorado Class suffered losses in the form of monetary and non-monetary

damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

567.    Pursuant to COLO. REV. STAT. § 6-1-113, Plaintiff Monaghan and the Colorado Class seek all monetary and nonmonetary relief as permitted by law, including actual damages, injunctive relief, and attorneys' fees and costs, as well as any other relief the Court deems just and proper.

## COUNT XIV: VIOLATIONS OF CONNECTICUT UNFAIR TRADE PRACTICES ACT

### CONN. GEN. STAT. §§ 42-110a, *et seq.*
### (on behalf of John Perun and the Connecticut Class)

568.    Plaintiff Perun realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

569.    Plaintiff Perun brings this cause of action individually and on behalf of members of the Connecticut Class.

570.    Plaintiff Perun, all members of the Connecticut Class, and Defendant are "persons" as defined by CONN. GEN. STAT. § 42-110a(3).

571.    Defendant is engaged in "trade" or "commerce" as those terms are defined by CONN. GEN. STAT. § 42-110a(4).

572.    The Connecticut Unfair Trade Practices Act ("UTPA"), CONN. GEN. STAT.§ 42-110a, *et. seq.*, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." § 42-110b.

573.    Defendant engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of CONN. GEN. STAT. § 42-110b, by making material misrepresentations, concealment, omissions, and half-truths concerning the safety and efficacy of the SoClean products as set forth in this Complaint.

574.    Defendant has violated the Connecticut UTPA by representing on its website, advertisements, and marketing materials, and on its products' packaging and labels, that its products were legally marketed, safe, healthy, and fit for human use; and by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" and "healthy" for use to clean and sanitize sleep equipment machines; while concealing, suppressing, or omitting the material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

575.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

576.    Defendant's deceptive acts and practices in the form of its material misrepresentations, half-truths, concealment, and omissions about SoClean's products were likely to deceive a reasonable consumer.

577.    Defendant's deceptive acts and practices in the form of its misrepresentations, half-truths, concealment, and omissions about SoClean's products were material because a reasonable consumer would deem them important when making relevant purchasing decisions.

578.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Perun and the Connecticut Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

579.    Defendant's material misrepresentations, half-truths, concealment, and omissions about SoClean's products constitute "unfair" acts or practices, within the meaning of the Connecticut UTPA, because they have caused substantial injury to consumers, including to Plaintiff Perun and the Connecticut Class; they are immoral, unethical, oppressive, or unscrupulous; and they offend public policy or other well-established concept of fairness.

580.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff Perun and all members of the Connecticut Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

581.    Further, Defendant put its own pecuniary interest ahead of all else, and in so doing, it sacrificed the safety, health, and well-being of consumers and their families and have harmed the public interest. Defendant unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. Defendant's violations of the Connecticut UTPA were done with reckless indifference to the rights of Plaintiff Perun and the Connecticut Class, or were an intentional or wanton violation of those rights. The only way to deter this type of serious and egregious commercial conduct is to assess punitive damages against the Defendant.

582.    On behalf of the Connecticut Class, Plaintiff Perun has sent notice and a copy of this complaint to the Attorney General and Commissioner of Consumer Protection in accordance with CONN. GEN. STAT. § 42-110g(c).

583.    On behalf of himself and the Connecticut Class, Plaintiff Perun seeks actual and punitive damages, injunctive relief, attorneys' fees and costs, and any other relief the Court deems just and proper.

## COUNT XV: VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### FLA. STAT. ANN. §§ 501.201, *et seq*.
### (on behalf of Ralph Gemelli, John Huff, and the Florida Class)

584.    Plaintiffs Gemelli and Huff reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

585.    Plaintiffs Gemelli and Huff bring this cause of action individually and on behalf of members of the Florida Class.

586.    Plaintiffs Gemelli and Huff and all members of the Florida Class are "persons" within the meaning of FLA. STAT. ANN. § 501.211, which creates a private cause of action under the Florida Deceptive and Unfair Trade Practices Act ("DUTPA").

587.    By advertising, providing, offering, distributing, and/or selling goods in Florida, Defendant engaged in trade or commerce within the meaning of FLA. STAT. ANN. § 501.203(8).

588.    The Florida DUTPA prohibits deceptive, unfair, or unconscionable acts or practices in the conduct of trade or commerce. FLA. STAT. ANN. § 501.204.

589.    For the reasons discussed herein, Defendant violated and continues to violate the Florida DUTPA, by engaging in the herein described deceptive, unfair, and unconscionable acts or practices proscribed by the Florida DUTPA.

590.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

591.    Defendant also misrepresented that its products were legally marketed, safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" for use to clean and sanitize sleep equipment machines, while concealing, suppressing, or omitting the material fact that SoClean's

products use ozone and at levels which exceed federal standards for medical devices intended for human use.

592.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

593.    Defendant's deceptive representations and omissions were material because they pertained to information a reasonable consumer would deem important when making relevant purchasing decisions.

594.    Defendant knew or should have known the material facts it failed to disclose or concealed.

595.    Defendant's deceptive acts and practices, including its material omissions, described herein, were likely to mislead reasonable consumers to their detriment.

596.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Gemelli and Huff and the Florida Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

597.    Defendant's material misrepresentations, half-truths, concealment, and omissions about SoClean's products constitute "unfair" and "unconscionable" acts or practices, within the meaning of the Florida DUTPA, because they have caused substantial injury to consumers, including to Plaintiffs Gemelli and Huff and the Florida Class; they are immoral, unethical,

oppressive, or unscrupulous; and they offend public policy or other well-established concept of fairness.

598.    As a direct and proximate result of Defendant's deceptive, unfair, and unconscionable acts or practices in the conduct of trade and commerce, Plaintiffs Gemelli and Huff and all members of the Florida Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

599.    Defendant put its own pecuniary interest ahead of all else and, in so doing, it sacrificed the safety, health, and well-being of consumers and their families. As a result, Defendant has unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to deter Defendant's egregious and oppressive commercial conduct is to assess punitive damages against Defendant.

600.    Pursuant to FLA. STAT. § 501.211, Plaintiffs Gemelli and Huff and the Florida Class seek all monetary and non-monetary relief allowed by law, including actual and punitive damages; declaratory and injunctive relief; reasonable attorneys' fees and costs; and any other relief that is just and proper under the Florida DUTPA.

## COUNT XVI: VIOLATIONS OF FLORIDA FRAUDULENT PRACTICES STATUTE

### FLA. STAT. ANN. §§ 817.06, *et seq.*
### (on behalf of Ralph Gemelli, John Huff, and the Florida Class)

601.    Plaintiffs Gemelli and Huff reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

602.    Plaintiffs Gemelli and Huff bring this cause of action individually and on behalf of members of the Florida Class.

603.    Plaintiffs Gemelli, Huff, all members of the Florida Class, and Defendant are "persons" within the meaning of FLA. STAT. ANN. § 817.41, which creates a private cause of action under the Florida Fraudulent Practices statute.

604.    Defendant made or caused to be made, directly or indirectly, advertisements before the general public in Florida and obtained the benefits of such advertising.

605.    The Florida Fraudulent Practices statute prohibits the "making or dissemination of misleading advertising" "before the general public of the state" which is "designed and intended for obtaining money or property under false pretenses." FLA. STAT. ANN. § 817.41(1).

606.    For the reasons discussed herein, Defendant violated and continues to violate the Florida Fraudulent Practices statute, by making or disseminating misleading advertisements related to SoClean products, before the general public in Florida, designed and intended for obtaining money under false pretenses.

607.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by,

and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

608.    Defendant also misrepresented that its products were legally marketed, safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen,"  use  no "chemicals" or "harsh chemicals" to clean sleep equipment machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" and "healthy" for use to clean and sanitize sleep equipment machines, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

609.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

610.    Defendant knew, or should have known through reasonable care, that its material misrepresentations and half-truths as to the characteristics, ingredients, safety, effectiveness, quality, uses, and benefits of SoClean products were false or misleading.

611.    Defendant's false or misleading representations, described herein, were likely to, and did in fact, deceive, and mislead members of the Florida public, including Plaintiffs Gemelli and Huff and the Florida Class, acting reasonably under the circumstances, to their detriment.

612.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud

consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Gemelli and Huff and the Florida Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

613.    As a direct and proximate result of Defendant's false or misleading advertising, Plaintiffs Gemelli and Huff and all members of the Florida Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

614.    Further, Defendant put its own pecuniary interest ahead of all else and, in so doing, it sacrificed the safety, health, and well-being of consumers and their families. As a result, Defendant has unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to deter Defendant's willful and reckless commercial conduct is to assess punitive damages against Defendant.

615.    Pursuant to FLA. STAT. § 501.211, Plaintiffs Gemelli and Huff and the Florida Class seek all monetary and non-monetary relief allowed by law, including actual and punitive damages, reasonable attorneys' fees and costs, and any other relief that is just and proper under the Florida Fraudulent Pretenses statute.

## COUNT XVII: VIOLATIONS OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

### GA. CODE ANN. §§ 10-1-370 to 375
**(on behalf of Jessie Brooks and Herbert Ciesla and the Georgia Class)**

616.     Plaintiffs Brooks and Ciesla reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

617.     Plaintiffs Brooks and Ciesla bring this cause of action individually and on behalf of members of the Georgia Class.

618.     Plaintiffs, all members of the Georgia Class, and Defendant are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

619.     The Georgia Uniform Deceptive Trade Practices Act ("UDTPA") states that a "deceptive trade practice" includes: (1) representing that goods or services have characteristics, uses, or benefits that they do not have, GA. CODE ANN. § 10-1-372(a)(5); (2) representing that goods or services "are of a particular standard, quality, or grade . . . if they are another," *id.* § 10-1-372(a)(7); (3) advertising "goods or services with intent not to sell them as advertised," *id.* § 10-1-372(a)(9); (4) engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding," *id.* § 10-1-372(a)(12).

620.     For the reasons discussed herein, SoClean violated and continues to violate the Georgia UDTPA, by engaging in the deceptive trade practices proscribed by the Georgia UDTPA.

621.     Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. Defendant failed to disclose the material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of

166

the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

622.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

623.    Defendant's deceptive representations and omissions were material because they pertained to information a reasonable consumer would deem important when making relevant purchasing decisions.

624.    Defendant's deceptive acts and practices, in the form of its material misrepresentations, half-truths, concealment, and omissions, were likely to, did in fact, and will continue to deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

625.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Brooks and Ciesla and the Georgia Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

626.    There is a likelihood of future harm from Defendant's deceptive trade practices because it continues to sell and market the SoClean 2 and has not performed a recall or issued remedial statements.

627.    Plaintiffs Brooks and Ciesla and all members of the Georgia Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

628.    Plaintiffs Brooks and Ciesla and the Georgia Class are entitled to injunctive relief to prevent damages to those likely to be damaged by Defendant's deceptive trade practices.

629.    Because Defendant willfully engaged in a trade practice that it knew was deceptive, Plaintiffs Brooks and Ciesla and the Georgia Class are entitled to attorneys' fees and costs in accordance with GA. CODE ANN. § 10-1-373(b).

## COUNT XVIII: VIOLATIONS OF GEORGIA FAIR BUSINESS PRACTICES ACT

### GA. CODE ANN. §§ 10-1-390, *et seq.*
### (on behalf of Jessie Brooks and Herbert Ciesla and the Georgia Class)

630.    Plaintiffs Brooks and Ciesla reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

631.    Plaintiffs Brooks and Ciesla bring this cause of action individually and on behalf of members of the Georgia Class.

632.    Plaintiffs, all members of the Georgia class, and Defendant are "persons" within the meaning of GA. CODE ANN. § 10-1-392(a)(24) and § 10-1-399(a) of the Georgia Fair Business Practices Act ("FBPA").

633.    Plaintiffs Brooks and Ciesla and members of the Georgia Class are "consumers" within the meaning of § 10-1-392(a)(6) of the Georgia FBPA.

634.    Defendant was sent pre-suit notice pursuant to GA. CODE ANN. § 10-1-399 concerning its wrongful conduct as alleged herein by Plaintiffs Brooks and Ciesla and Georgia Class members. On information and belief, Defendant also does not maintain a place of business or does not keep assets within the state of Georgia.

635.    Defendant engaged in unfair or deceptive acts or practices in the conduct of its consumer transactions, in violation of GA. CODE ANN. § 10-1-393(a). Defendant's violations include: (1) representing that SoClean's products have characteristics, ingredients, uses, benefits, or qualities that they do not have, GA. CODE ANN. § 10-1-393(b)(5); (2) misrepresenting the SoClean products' quality, GA. CODE ANN. § 10-1-393(b)(7); and (3) advertising SoClean products with an intent not to sell them as advertised, GA. CODE ANN. § 10-1-393(b)(9).

636.    Defendant's material misrepresentations, half-truths, omissions, and concealment were likely to deceive reasonable consumers.

637.    Defendant's deceptive representations and omissions were material because they pertained to information a reasonable consumer would deem important when making relevant purchasing decisions.

638.    In addition, or in the alternative, Defendant made each of the above-described representations and omissions to induce Plaintiffs Brooks and Ciesla and members of the Georgia Class to rely on such representations and omissions.

639.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The

very purchase of the SoClean devices by Plaintiffs Brooks and Ciesla and the Georgia Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

640.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

641.    As a direct and proximate result of Defendant's unfair or deceptive acts and practices, Plaintiffs Brooks and Ciesla and all members of the Georgia Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

642.    Further, Plaintiffs Brooks and Ciesla and the Georgia Class shall be entitled to an award of exemplary, treble damages because Defendant's conduct was intentional. Because Defendant put its own pecuniary interest ahead of all else, it sacrificed the safety, health, and well-being of consumers and their families. Defendant also unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to prevent this type of egregious indifference again is to assess exemplary or punitive damages against Defendant.

643.    Plaintiffs Brooks and Ciesla and the Georgia Class seek all relief allowed by law, including treble or punitive damages, injunctive relief, and reasonable attorneys' fees and costs, under GA. CODE ANN. § 10-1-399(a), (c), (d).

## COUNT XIX: VIOLATION OF ILLINOIS CONSUMER FRAUD & DECEPTIVE BUSINESS PRACTICES ACT

### 815 ILL. COMP. STAT. §§ 505/1, *et seq.*
### (on behalf of Christine Benson and the Illinois Class)

644.     Plaintiff Benson realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

645.     Plaintiff Benson brings this cause of action individually and on behalf of members of the Illinois Class.

646.     Plaintiff Benson, all members of the Illinois Class, and the Defendant are "persons" within the meaning of 815 ILL. COMP. STAT. § 505/1(c) and § 505/10a.

647.     Defendant engaged in unfair methods of competition and deception in the conduct of trade or commerce by its use or employment of representations, concealment or suppression, and omissions as to material facts about the SoClean device with the intent that others rely upon Defendant's material deception, in violation of 815 ILL. COMP. STAT. § 505/2, and engaged in deceptive trade practices in the conduct of its consumer transactions, in violation of 815 ILL. COMP. STAT. § 510/2(a). Defendant's violations include: (1) representing that SoClean's products have characteristics, ingredients, uses, benefits, or qualities that they do not have, 815 ILL. COMP. STAT. § 510/2(a)(5); (2) misrepresenting the SoClean products quality, 815 ILL. COMP. STAT. § 510/2(a)(7); and (3) advertising SoClean products with an intent not to sell them as advertised, 815 ILL. COMP. STAT. § 510/2(a)(9).

648.     Defendant's representations, concealment or suppression, half-truths, and/or omissions, in violation of 815 ILL. COMP. STAT. § 505/2, were likely to deceive reasonable consumers.

649.    Defendant's deceptive representations and omissions were material because they pertained to information a reasonable consumer would deem important when making relevant purchasing decisions.

650.    In addition, or in the alternative, Defendant made each of the above-described material misrepresentations and omissions to induce Plaintiff Benson and members of the Illinois Class to rely on such representations and omissions.

651.    Defendant's misrepresentations, half-truths, omissions, and concealment were material, and Plaintiff Benson and members of the Illinois Class reasonably relied upon such representations and omissions in purchasing and using SoClean's products.

652.    Defendant intended that others rely on the concealment, suppression, and/or omission of these material facts.

653.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Benson and the Illinois Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

654.    As a direct and proximate result of Defendant's deceptive acts or  practices in the conduct of trade or commerce in violation of 815 ILL. COMP. STAT. § 505/2, Plaintiff Benson and all members of the Illinois Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean

devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

655.    Plaintiff Benson and the Illinois Class seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees and costs, and any other relief this Court deems just and proper.

656.    Further, Plaintiff Benson and the Illinois Class shall be entitled to an award of exemplary or punitive damages because SoClean's conduct was willful or intentional and done with evil motive or reckless indifference to the rights of others. Because Defendant put its own pecuniary interest ahead of all else, it sacrificed the safety, health, and well-being of consumers and their families. Defendant also unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to deter this type of egregious commercial conduct is to assess punitive damages against Defendant.

657.    Plaintiff Benson and the Illinois Class seek all monetary and non-monetary relief allowed by law, including actual and punitive damages; injunctive and equitable relief; reasonable attorneys' fees and costs; and any other relief this Court deems just and proper.

## COUNT XX: VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT

### 815 ILL. COMP. STAT. ANN. §§ 510/1 through 510/7
### (on behalf of Christine Benson and the Illinois Class)

658.    Plaintiff Benson realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

659.    Plaintiff Benson brings this cause of action individually and on behalf of members of the Illinois Class.

173

660.    Plaintiff Benson, all members of the Illinois Class, and the Defendant are "persons" within the meaning of 815 ILL. COMP. STAT. § 510/1(5).

661.    In the course of its business, Defendant engaged in deceptive trade practices in the conduct of its consumer transactions, in violation of 815 ILL. COMP. STAT. § 510/2(a). Defendant's violations include: (1) causing a likelihood of confusion or misunderstanding as to the certification of SoClean products or certification by another, 815 ILL. COMP. STAT. § 510/2(a)(2),(3); (2) representing that SoClean's products have characteristics, ingredients, uses, benefits, or qualities that they do not have, 815 ILL. COMP. STAT. § 510/2(a)(5); (3) misrepresenting that SoClean's products are of a particular standard or quality, 815 ILL. COMP. STAT. § 510/2(a)(7); and (4) advertising SoClean products with an intent not to sell them as advertised, 815 ILL. COMP. STAT. § 510/2(a)(9).

662.    Defendant's material misrepresentations, half-truths, omissions, and concealment, in violation of 815 ILL. COMP. STAT. § 510/2, were likely to deceive reasonable consumers to their detriment.

663.    Defendant's deceptive acts or practices in the form of its misrepresentations, half-truths, omissions, and concealment were material because they pertained to information a reasonable consumer would deem important when making relevant purchasing decisions.

664.    Defendant intended that others rely on its misrepresentations, half-truths, omissions, and concealment of these material facts about SoClean products.

665.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud

174

consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Benson and the Illinois Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

666.    As a direct and proximate result of Defendant's deceptive acts or  practices in the conduct of trade or commerce in violation of 815 ILL. COMP. STAT. § 510/2, Plaintiff Benson and all members of the Illinois Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

667.    Plaintiff Benson and the Illinois Class seek all relief allowed by law, including injunctive relief and reasonable attorneys' fees and costs, and any other relief this Court deems just and proper under 815 ILL. COMP. STAT. § 510/10a(a), (c).

## COUNT XXI: VIOLATIONS OF INDIANA DECEPTIVE CONSUMER SALES ACT

### IND. CODE §§ 24-5-0.5-1, *et seq.*
**(on behalf of Barry Harris and April Phillips and the Indiana Class)**

668.    Plaintiffs Harris and Phillips reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

669.    Plaintiffs Harris and Phillips bring this cause of action individually and on behalf of members of the Indiana Class.

670.    Plaintiffs Harris and Phillips, the Indiana Class, and Defendant are "persons" within the meaning of IND. CODE § 24-5-0.5-2(a)(2).

671. Defendant is a "supplier" within the meaning of IND. CODE § 24-5-0.5-2(a)(3) because it regularly engages in or solicits "consumer transactions" within the meaning of IND. CODE § 24-5-0.5-2(a)(1).

672. Plaintiffs Harris and Phillips and the Indiana Class engaged in consumer transactions with Defendant for personal, family, or household purposes.

673. Defendant's products, which Plaintiffs Harris and Phillips and Indiana Class members purchased, were the "subject of a consumer transaction" within the meaning of IND. CODE § 24-5-0.5-2(a)(4).

674. For the reasons described herein, Defendant has and continues to engage in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of IND. CODE § 24-5-0.5-3.

675. Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose the material information—namely, the risk of exposure to unsafe levels of ozone and/or developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

676. Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

677.    Defendant's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

678.    The injury to consumers from Defendant's conduct was and is substantial because it was non-trivial, non-speculative, and involved a monetary injury. The injury to consumers was substantial, not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

679.    Defendant's acts and practices were "abusive" for numerous reasons including: (a) because Defendant materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because it took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction and consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because it took unreasonable advantage of consumers' inability to protect their own interests and consumers could not protect their interests due to the asymmetry in information between them and Defendant; and (d) because Defendant took unreasonable advantage of consumers' reasonable reliance that it was providing truthful and accurate information.

680.    Defendant also engaged in "deceptive" acts and practices in violation of IND. CODE § 24-5-0.5-3(a) and § 24-5-0.5-3(b)(1)-(2) by (a) implicitly or explicitly misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have and (b) implicitly or explicitly misrepresenting that the subject of a consumer

transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

681.    Defendant's material misrepresentations, half-truths, concealment, and omissions were likely to deceive consumers acting reasonably under the circumstances, to their detriment.

682.    Defendant's deceptive misrepresentations, half-truths, concealment, and omissions were material because they pertained to information a reasonable consumer would deem important when making relevant purchasing decisions.

683.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Harris and Phillips and the Indiana Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

684.    Plaintiffs Harris and Phillips and the Indiana Class reasonably relied upon Defendant's representations and omissions, which constitute uncured or incurable deceptive acts under IND. CODE § 24-5-0.5-4(a), in the purchase of SoClean's products, by reasonably expecting these products to conform to Defendant's advertising, marketing, packaging, and labeling.

685.    Defendant received notice pursuant to IND. CODE § 24-5-0.5-5(a) concerning its wrongful conduct as alleged herein by Plaintiffs Harris and Phillips and the Indiana Class. Defendant's conduct also includes incurable deceptive acts that Defendant engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under IND. CODE § 24-5-0.5-2(a)(8).

686.     As a direct and proximate result of Defendant's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiffs Harris and Phillips and all members of the Indiana Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

687.     Defendant's violations are willful, as it knew or should have known that its acts, practices, and omissions were unfair, abusive, and deceptive to consumers.

688.     Defendant's violations present a continuing risk to Plaintiffs Harris and Phillips and the Indiana Class as well as to the general public.

689.     Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs Harris and Phillips and the Indiana Class seek all monetary and non-monetary relief allowed by law, including actual and/or statutory damages of $500 per plaintiff and Indiana Class member; restitution; reasonable attorneys' fees and costs; injunctive relief; exemplary damages of treble damages or $1,000 per Plaintiff and Class member, whichever is greater; and punitive damages.

## COUNT XXII: VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT

### KAN. STAT. ANN. § 50-623, *et seq.*
### (on behalf of Larry Hunter-Blank and the Kansas Class)

690.     Plaintiff Hunter-Blank realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

691.     Plaintiff Hunter-Blank brings this cause of action individually and on behalf of members of the Kansas Class.

179

692.    Defendant is a "supplier" within the meaning of the Kansas Consumer Protection Act ("Kansas CPA"), KAN. STAT. ANN. § 50-624(1).

693.    Plaintiff Hunter-Blank and Kansas Class members are "consumers," as defined by KAN. STAT. ANN. § 50-624(b), who purchased Defendant's SoClean products.

694.    The sale of the SoClean products was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

695.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," KAN STAT. ANN. § 50-626(a). Deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) [p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." KAN STAT. ANN. § 50-627(a).

696.    For the reasons discussed herein, Defendant violated and continues to violate the Kansas CPA, by engaging in the herein described deceptive or unconscionable acts or practices proscribed by the Kansas CPA.

697.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. Defendant failed to disclose the material information—namely, the

risk of exposure to unsafe levels of ozone and/or developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

698.     Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

699.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase and use the SoClean products without being aware of the risk of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products.

700.     Defendant's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive, and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

701.     Defendant knew, or should have known through reasonable care, that its material representations and omissions as to the characteristics, ingredients, safety, effectiveness, quality, uses, and benefits of SoClean products were false or misleading and likely to deceive reasonable consumers.

702.     These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The

very purchase of the SoClean devices by Plaintiff Hunter-Blank and the Kansas Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

703.    Defendant's violations of the Kansas CPA were willful in that Defendant consciously and intentionally represented that SoClean's products were safe and fit for human use while concealing, suppressing, or failing to disclose the products used and/or generated ozone, a toxic gas that can cause adverse health effects.

704.    Defendant's material misrepresentations, concealment, omissions, and half-truths about SoClean's products also constitute unconscionable acts or practices, in violation of the Kansas CPA, KAN. STAT. ANN. § 50-627, for the following reasons: (1) because Defendant took advantage of consumers' inability to protect their own interests; (2) because Defendant charged a premium price for a product with a dangerous defect that was worthless or at least worth far less than what consumers were charged and paid for it; (3) because Defendant induced consumers to enter into a transaction that was excessively one-sided in favor of Defendant; and (4) because Defendant made misleading statements as to the nature of its products that reasonable consumers were likely to rely upon to their detriment.

705.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff Hunter-Blank and all members of the Kansas Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

706.    In addition, Plaintiff Hunter-Blank and the Kansas Class are entitled to an award of punitive damages because Defendant's conduct was willful or intentional and done with evil motive or reckless indifference to the rights of others. Defendant put its own pecuniary interest ahead of all else, and, in so doing, it sacrificed the safety, health, and well-being of consumers and their families. Defendant also unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to deter this type of egregious commercial conduct is to assess punitive damages against Defendant.

707.    Pursuant to KAN. STAT. ANN. § 50-634, Plaintiff and the Class seek monetary relief of actual damages in an amount to be determined at trial.

708.    Plaintiff Hunter-Blank and the Kansas Class also seek and award of punitive damages, attorneys' fees and costs, and any other just and proper relief available under the Kansas CPA.

## COUNT XXIII: VIOLATIONS OF KENTUCKY CONSUMER PROTECTION ACT

### KY. REV. STAT. §§ 367.110, *et seq.*
**(on behalf of Teresa Humphress and George Mayes Jr. and the Kentucky Class)**

709.    Plaintiffs Humphress and Mayes reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

710.    Plaintiffs Humphress and Mayes bring this cause of action individually and on behalf of members of the Kentucky Class.

711.    Plaintiffs Humphress and Mayes, all members of the Kentucky Class, and Defendant are "persons" within the meaning of KY. REV. STAT. ANN. § 367.110(1).

712.    At all times relevant to this Complaint, Defendant advertised, offered, distributed, or sold goods in the Commonwealth of Kentucky and engaged in trade or commerce directly or

indirectly affecting the people of the Commonwealth of Kentucky, within the meaning of KY. REV. STAT. ANN. § 367.110(2).

713.    Plaintiffs Humphress and Mayes and the Kentucky Class purchased the goods that Defendant advertised, offered, distributed, or sold for personal, family, or household purposes.

714.    For the reasons described herein, Defendant engaged in unfair, false, misleading, and deceptive acts or practices, in violation of KY. REV. STAT. § 367.170.

715.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose the material information—namely, the risk of exposure to unsafe levels of ozone and/or developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

716.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

717.    Defendant's above-described misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they were likely to deceive a reasonably prudent person to induce them to purchase and use the SoClean products without being aware of the risk of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products.

718.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed,

all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Humphress and Mayes and the Kentucky Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

719.    As a direct and proximate result of Defendant's unfair, false, misleading, and deceptive acts or practices in the conduct of trade or commerce, Plaintiffs Humphress and Mayes and all members of the Kentucky Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

720.    The above unlawful acts and practices by Defendant were immoral, unethical, oppressive, and unscrupulous. Defendant put its own pecuniary interest ahead of all else, and in the process sacrificed the safety, health, and well-being of Plaintiff and Class members. Plaintiffs Humphress and Mayes and Kentucky Class members are therefore entitled to treble the amount of their actual damages as exemplary relief. Further, the only way to prevent this egregious conduct from recurring is to assess punitive damages against Defendant.

721.    Plaintiffs Humphress and Mayes and the Kentucky Class seek all monetary and non-monetary relief allowed under the KCPA, including compensatory, exemplary, and punitive

damages, restitution or other equitable relief, reasonable attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT XXIV: VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION ACT

### LA. REV. STAT. ANN. §§ 51:1401, *et seq.*
**(on behalf of Thomas Hebert and Robert Morris and the Louisiana Class)**

722.    Plaintiffs Hebert and Morris reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

723.    Plaintiffs Hebert and Morris bring this cause of action individually and on behalf of members of the Louisiana Class.

724.    Plaintiffs Hebert and Morris, all members of the Louisiana Class, and Defendant are "persons" within the meaning of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), LA. REV. STAT. ANN. §§ 51:1402(8) and 51:1409, which creates a private cause of action.

725.    Plaintiffs Hebert and Morris and all member of the Louisiana Class are "consumers," as defined by LA. REV. STAT. ANN. §  51:1402(1), who purchased Defendant's SoClean products.

726.    The sale of the SoClean products was a "consumer transaction" within the meaning of LA. REV. STAT. ANN. § 51:1402(3).

727.    At all times relevant to this Complaint, Defendant was engaged in trade or commerce within the meaning of LA. REV. STAT. ANN. § 51:1402(10).

728.    The LUTPA prohibits "unfair or deceptive acts or practices in the conduct of trade or commerce." LA. REV. STAT. ANN. § 51:1405(A).

186

729.    For the reasons discussed herein, Defendant violated and continues to violate the LUTPA, by engaging in the herein described unfair or deceptive acts or practices proscribed by the LUTPA.

730.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use.  Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

731.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

732.    Defendant also misrepresented that its products were safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" and "healthy" for use to clean and sanitize sleep equipment machines, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

733.    Defendant's deceptive acts and practices in the form of its material misrepresentations, half-truths, concealment, and omissions were likely to mislead reasonable consumers to their detriment.

734.    Defendant's deceptive acts and practices in the form of its misrepresentations, half-truths, concealment, and omissions were material because they pertained to information that reasonable consumers would consider important when making relevant purchasing decisions.

735.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Hebert and Morris and the Louisiana Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

736.    Defendant put its own pecuniary interest ahead of all else and, in so doing, it sacrificed the safety, health, and well-being of consumers and their families. As a result, Defendant has unfairly profited off unsuspecting purchasers who believed they were buying a natural, healthy, safe, healthy, closed cleaning system to clean their sleep equipment machines. As described herein, Defendant's conduct is "unfair," within the meaning of the LUTPA by virtue of being unethical, oppressive, unscrupulous, or substantially injurious to consumers and offending public policy or other well-established concepts of fairness.

737.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices in the conduct of trade or commerce, Plaintiffs Hebert and Morris and all members of the Louisiana Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the

products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

738.     Pursuant to LA. REV. STAT. ANN. § 51:1409, Plaintiffs Hebert and Morris and the Louisiana Class are entitled to recover actual damages in an amount to be determined at trial and to an award of treble damages, as permitted by law, for any violations of the LUTPA that are found to have been knowingly perpetrated, after being put on notice by the Attorney General.

739.     Plaintiffs Hebert and Morris and the Louisiana Class also seek attorneys' fees and costs and any other just and proper relief available under the LUTPA.

## COUNT XXV: WARRANTY AGAINST REDHIBITORY DEFECTS

### LA. CIV. CODE ART. 2520, *et seq.*
### (on behalf of Thomas Hebert and Robert Morris and the Louisiana Class)

740.     Plaintiffs Hebert and Morris reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

741.     Plaintiffs Hebert and Morris bring this cause of action individually and on behalf of members of the Louisiana Class.

742.     LA. CIV. CODE ART. 2520 imposes liability on a seller and provides for a cause of action to a buyer for "redhibitory defects, or vices, in the thing sold."

743.     At all times relevant herein, Defendant was the manufacturer and/or seller of the SoClean ozone sleep equipment cleaning devices ("SoClean products") it sold to Plaintiffs Hebert and Morris and the Louisiana Class, who are "buyers," within the meaning of LA. CIV. CODE ART. 2520.

744.     The SoClean products Defendant manufactured, sold, distributed, and/or delivered to Plaintiffs Hebert and Morris and the Louisiana Class and that Plaintiffs and the Class then used,

for personal or household use, were in substantially the same condition as when they left Defendant's possession.

745.    At the time Defendant sold, distributed, and/or delivered SoClean products to Plaintiffs Hebert and Morris and Louisiana Class members, Defendant had reason to know and, in fact, did know that Plaintiffs and Class members intended to use the SoClean devices to clean their sleep equipment devices.

746.    As alleged herein, SoClean products that Defendant manufactured, distributed and/or delivered to Plaintiffs Hebert and Morris and Louisiana Class members were not reasonably fit for their ordinary and intended use and purpose—to safely and effectively clean sleep equipment devices—due to a redhibitory defect involving the use and/or generation of ozone, a toxic gas; leakage of ozone from several component parts of the device into the ambient air and environment where the device is kept (often near the user's bedside); and residual ozone deposits within the CPAP mask that remain after a cleaning cycle and that may be inhaled or come into contact with a user's skin and mucous membranes.

747.    Defendant repeatedly misrepresented and omitted material information regarding SoClean products on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were safe, healthy, and fit for human use, while failing to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

748.    Defendant also misrepresented that its products were safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment machines, use the same sanitizing

process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" and "healthy" for use to clean and sanitize sleep equipment machines, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

749.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Hebert and Morris and the Louisiana Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

750.    At the time of the sale, Plaintiffs Hebert and Morris and the Louisiana Class could not have known, by reasonable diligence, of the SoClean product's redhibitory defects.

751.    This redhibitory defect renders the SoClean device useless or else diminishes its usefulness to an extent that a reasonable buyer, such as Plaintiffs Hebert and Morris and the Louisiana Class, would not have bought the device at all or would have paid far less than the premium which they paid.

752.    Defendant has received notice of the existence of a redhibitory defect, as described herein, in the SoClean products it sold to Plaintiffs Hebert and Morris and the Louisiana Class and has had sufficient time to reimburse Plaintiffs Hebert and Morris and the Louisiana Class for their losses, but has not done so.

753.    Plaintiffs Hebert and Morris and all members of the Louisiana Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's

products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

754.    Defendant is therefore liable to Plaintiffs Hebert and Morris and the Louisiana Class at least for restitution damages of the rescission of the sale or a significant reduction of the price.

755.    Since Defendant knew but omitted material facts pertaining to redhibitory defects in SoClean products, it is conclusively presumed to know of the defects in the SoClean devices it manufactured.

756.    Plaintiffs Hebert and Morris and the Louisiana Class are therefore entitled to a full "return of the purchase price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred from preserving of the thing, and also for damages and reasonable attorney fees" in accordance with La. Civ. Code art. 2545.

757.    On behalf of the Louisiana Class, Plaintiffs Hebert and Morris seek monetary and non-monetary damages to the full extent provided by law, including any and all economic damages, the cost of procuring a replacement device, interest from the date of purchase, and for attorneys' fees and costs, in accordance with La. Civ. Code art. 2545.

## COUNT XXVI: VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

### MD. CODE ANN., COM. LAW §§ 13-301, *et seq.*
### (on behalf of Chinedu Ekweozoh and the Maryland Class)

758.    Plaintiff Ekweozoh realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

759.    Plaintiff Ekweozoh brings this cause of action individually and on behalf of members of the Maryland Class.

760.    Plaintiff Ekweozoh, members of the Maryland Class, and Defendant are "persons" as defined by MD. CODE ANN., COM. LAW § 13-101(h).

761.    Defendant's conduct as alleged herein related to "sales" or "offers for sale" of "consumer goods," as defined by MD. CODE ANN., COM. LAW § 13-101(i) and within the meaning of § 13-303(1).

762.    Plaintiff Ekweozoh and members of the Maryland Class are "consumers" as defined by MD. CODE ANN., COM. LAW § 13-101(c) and within the meaning of § 13-301(1).

763.    Defendant advertises, offers, or sells "consumer goods" as defined by MD. CODE ANN., COM. LAW § 13-101(d) and within the meaning of § 13-301.

764.    Defendant advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

765.    The Maryland Consumer Protection Act ("Maryland CPA") prohibits unfair, abusive, or deceptive acts or practices, including: (1) "[f]alse . . . or misleading oral or written statement[s], visual depiction[s], or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," § 13-301(1); (2) "[r]epresenting that . . . consumer goods . . . have a characteristic, ingredient, use, [or] benefit . . . which they do not

have, § 13-301(2)(i); (3) "[r]epresenting that consumer goods . . . are of a particular standard, quality, [or] grade . . . which they are not," § 13-301(2)(iv); (4) "[f]ailure to state a material fact if the failure deceives or tends to deceive," § 13-301(3); (5) "[a]dvertisement or offer of consumer goods . . . [w]ithout intent to sell . . . them as advertise or offered," § 13-301(5)(i); and (6) "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods," § 13-301(9).

766.    For the reasons discussed herein, Defendant violated and continues to violate the Maryland CPA, by engaging in the herein described unfair, abusive, or deceptive acts or practices proscribed by the Maryland CPA.

767.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

768.    Defendant also misrepresented that its products were safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" and "healthy" for use to clean and protect sleep equipment machines, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

194

769.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

770.    Defendant's false or misleading representations and omissions about SoClean's products were material because most consumers pertained would attach importance to the information in making relevant purchasing decisions.

771.    Defendant's material misrepresentations and omissions about SoClean's products were likely to deceive reasonable consumers into purchasing and use the SoClean products without being aware of the risk of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products.

772.    Defendant knew of the falsity or misleading nature of its representations and omissions and intended to induce consumers to buy SoClean products that it advertised were safe, healthy, and effective for human use when they are not.

773.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Ekweozoh and the Maryland Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

774.    Indeed, Plaintiff Ekweozoh and the Maryland Class did rely on Defendant's representations and omissions, to their detriment.

775.    The injuries suffered by Plaintiff Ekweozoh and the Maryland Class, which they could not reasonably avoid, greatly outweigh any potential countervailing benefit of Defendant's unfair and abusive conduct to consumers or to competition.

776.    As a direct and proximate result of Defendant's unfair, abusive, or deceptive acts or practices in the advertisement or sale of SoClean products, Plaintiff Ekweozoh and all members of the Maryland Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

777.    Pursuant to MD. CODE ANN., COM. LAW § 13-408, Plaintiff Ekweozoh and the Maryland Class seek all monetary and non-monetary relief allowed under the Maryland CPA, including actual damages, restitution or other equitable relief, reasonable attorneys' fees and costs, and any other relief this Court deems just and proper.

## COUNT XXVII: VIOLATIONS OF DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW

### MASS. GEN. LAWS CH. 93A, §§ 1, *et seq.*
### (on behalf of Elyse Cohen and the Massachusetts Class)

778.    Plaintiff Cohen realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

779.    Plaintiff Cohen brings this cause of action individually and on behalf of members of the Massachusetts Class.

780.    Defendant, Plaintiff Cohen, and all Massachusetts Class members are "persons" within the meaning of MASS. GEN. LAWS CH. 93A § 1(a).

781.    Defendant engaged in "trade" or "commerce" directly or indirectly affecting the people of the Commonwealth of Massachusetts within the meaning of MASS. GEN. LAWS CH. 93A, § 1(b).

782.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS CH. 93A, § 2.

783.    For the reasons discussed herein, Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of MASS. GEN. LAWS CH. 93A, § 2.

784.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. Defendant failed to disclose the material information—namely, the risk of exposure to unsafe levels of ozone and/or developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

785.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

786.    Defendant's above-described misrepresentations, concealment, omissions, and half-truths were material because they were likely to deceive reasonable consumers to induce them to purchase and use the SoClean products without being aware of the risk of exposure to unsafe levels of ozone and/or developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products.

787.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Cohen and the Massachusetts Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

788.    As a direct and proximate result of Defendant's unfair or deceptive acts and practices, Plaintiff Cohen and all members of the Massachusetts Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

789.    Defendant's violations present a continuing risk to Plaintiff Cohen as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Pursuant to MASS. GEN. LAWS CH. 93A, § 9, Plaintiff Cohen and the Massachusetts Class members seek monetary and nonmonetary relief, including the greater of (a) actual damages in an amount to be determined at trial or (b) $25 per Plaintiff and Class member. Because Defendant's violations were both willful and knowing, Plaintiff Cohen and the Massachusetts Class should also be awarded two to three times the amount of actual damages. Additionally, Plaintiff Cohen and the Massachusetts Class seek equitable relief and reasonable attorneys' fees and costs.

790.    On June 22, 2022, Plaintiff Cohen sent a letter complying with MASS. GEN. LAWS CH. 93A, § 9(3). Defendant has failed to remedy its unlawful conduct within the requisite time period. Therefore, on behalf of the Massachusetts Class, Plaintiff Cohen seeks all damages and relief to which he and members of the Massachusetts Class are entitled.

## COUNT XXVIII: VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT

### MICH. COMP. LAWS ANN. §§ 445.903, *et seq.*
### (on behalf of Edda Williams-Redding and the Michigan Class)

791.    Plaintiff Williams-Redding realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

792.    Plaintiff Williams-Redding brings this cause of action individually and on behalf of members of the Michigan Class.

793.    Plaintiff Williams-Redding, Michigan Class members, and Defendant are "persons" within the meaning of MICH. COMP. LAWS ANN. § 445.902(d).

794.    Defendant advertised, offered, sold, or distributed goods in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by MICH. COMP. LAWS ANN. § 445.902(g).

795.    Plaintiff Williams-Redding and the Michigan Class purchased goods that were advertised, offered, sold, or distributed by Defendant for personal, family, or household purposes.

796.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MICH. COMP. LAWS ANN. § 445.903.

797.    For the reasons described herein, Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade and commerce, in violation of MICH. COMP. LAWS ANN. § 445.903(1), by (a) representing that its goods have characteristics, uses, and

benefits that they do not have, MICH. COMP. LAWS ANN. § 445.903(1)(c); (b) representing that its goods are of a particular standard or quality if they are of another, MICH. COMP. LAWS ANN. § 445.903(1)(e); (c) advertising or representing goods with intent not to dispose of those goods as advertised or represented, MICH. COMP. LAWS ANN. § 445.903(1)(g); (d) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, MICH. COMP. LAWS ANN. § 445.903(1)(s); (e) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, MICH. COMP. LAWS ANN. § 445.903(1)(bb); and (f) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, MICH. COMP. LAWS ANN. § 445.903(1)(cc).

798.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

799.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

800.    Defendant's unfair, unconscionable, or deceptive methods, acts, or practices in the form of these misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they involved information that would be important to consumers in making relevant purchasing decisions.

200

801.    Defendant's deceptive methods, acts, or practices in the conduct of trade or commerce were likely to cause confusion in the minds of reasonable consumers.

802.    Plaintiff Williams-Redding and the Michigan Class reasonably relied on Defendant's representations and half-truths regarding material facts of the transaction in deciding to purchase SoClean's products, which was to their detriment.

803.    By affirmatively representing that SoClean's products were safe, healthy, and fit for human use, Defendant assumed a duty to speak truthfully as to the products' characteristics and attendant risks, which it materially failed to do by its omissions and half-truths. And by actively concealing that SoClean's products generated or used ozone, Defendant knowingly suppressed material facts from consumers, including Plaintiff Williams-Redding and the Michigan Class who were ignorant and unable to discovery the truth through reasonable diligence.

804.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Williams-Redding and the Michigan Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

805.    Defendant's material misrepresentations, concealment, omissions, and half-truths about SoClean's products also constitute unfair or unconscionable methods, practices, or acts in violation of MICH. COMP. LAWS ANN. § 445.903(1) because they offend public policy or other established concepts of fairness are immoral, unethical, or unscrupulous; and/or caused substantial injury to consumers.

806. As a direct and proximate result of Defendant's unfair, unconscionable, and deceptive methods, acts, and practices in violation of MICH. COMP. LAWS ANN. § 445.903, Plaintiff Williams-Redding and all members of the Michigan Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

807. Plaintiff Williams-Redding and the Michigan Class seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and any other relief that the Court deems just and proper under the Michigan CPA.

## COUNT XXIX: VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

### RSMO. §§ 407.010, *et seq.*
### (on behalf of Matthew Pomianek and Jackie Turner and the Missouri Class)

808. Plaintiffs Pomianek and Turner reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

809. Plaintiffs Pomianek and Turner bring this cause of action individually and on behalf of members of the Missouri Class.

810. The Missouri Merchandising Practices Act ("MMPA"), RSMO. §§407.010 *et seq.*, prohibits the use of any unfair or deceptive act or practice in connection with a consumer transaction by a supplier and provides that an aggrieved consumer may seek private remedies for, among other things, damages and may be done so by class action.

202

811.     RSMO. §407.020 provides, in part, that no supplier shall engage in any unfair or deceptive acts in a transaction intended to result in the sale of goods to any consumer. This statute provides an unfair or deceptive practice is unlawful and violates the Merchandising Practices Act, RSMO. §§407.010 *et seq.* if undertaken in a transaction intended to result in the sale of goods to any consumer.

812.     For the reasons discussed herein, Defendant SoClean has engaged in acts and practices which are deceptive as that term is used in RSMO. §407.020 in that, among other things, Defendant SoClean misrepresented that its products were legally marketed, safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean CPAP machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" for use to clean CPAP machines.

813.     Defendant SoClean has also engaged in acts which are unfair or deceptive as that term is used in RSMO. §407.020 in that, among other things, Defendant SoClean willfully failed to disclose, omitted and failed to state or warn Plaintiffs Pomianek and Turner and the members of the putative class of a material fact in connection with a consumer transaction – namely, that the SoClean device generated prohibited amounts of ozone by volume of air circulating through the device and the sleep equipment machine and remained within the sleep equipment mask, hose and tank after cleaning by the SoClean device.

814.     Defendant SoClean has also engaged in acts which are unfair or deceptive as that term is used in RSMO. §407.020 in that, among other things, Defendant SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

815.    Defendant SoClean has engaged in acts which are unconscionable as that term is used in RSMO. §407.020 in that, among other things, Defendant SoClean misrepresented that its products were safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen", use no "chemicals" or "harsh chemicals" to clean sleep equipment machines, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen", and that its products are "safe" and "healthy" for use to clean sleep equipment machines.

816.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs Pomianek and Turner and all members of the Missouri Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

817.    Plaintiffs Pomianek and Turner and the members of the Missouri Class are therefore entitled to recover those damages and all costs of this action, including attorneys' fees and costs, from Defendant SoClean under the provisions of the MMPA, RSMO. §§407.010, *et seq.*

## COUNT XXX: MISSISSIPPI CONSUMER PROTECTION ACT

### MISS. CODE ANN. §§ 75-24-1, *et seq.*
### (on behalf of Chris Odom and Anthony Sakalarios and the Mississippi Class)

818.    Plaintiffs Odom and Sakalarios reallege and incorporate the foregoing allegations as if fully set forth herein.

819.    Plaintiffs Odom and Sakalarios bring this cause of action individually and on behalf of members of the Mississippi Class.

820.    Plaintiffs Odom and Sakalarios and all Mississippi Class members are "persons," as defined by MISS. CODE ANN. § 75-24-3(a) and within the meaning of MISS. CODE ANN. § 75-24-15(1).

821.    Defendant is a "seller," "manufacturer," or "producer" within the meaning of MISS. CODE ANN. § 75-24-15(1).

822.    The Mississippi Consumer Protection Act ("Mississippi CPA") broadly prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE ANN. § 75-24-5.

823.    The Mississippi CPA also specifically prohibits the following conduct: (1) representing that goods "characteristics," "uses," or "benefits" that they do not have, § 75-24-5(2)(e); (2) representing that goods "are of a particular standard, quality, or grade . . . if they are of another," § 75-24-5(2)(g); and (3) advertising goods "with intent not to sell them as advertised," § 75-24-5(2)(i).

824.    For the reasons discussed herein, Defendant violated and continues to violate the Mississippi CPA, by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by the Mississippi CPA.

825.    Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. At the same time, Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products are unsafe and unfit for human use.

826.    Defendant also misrepresented that its products are safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment devices, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" and "healthy" for use to clean and protect sleep equipment devices, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

827.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

828.    Defendant's herein described and ongoing deceptive acts and practices in the form of its material misrepresentations, half-truths, concealment, and omissions are material because they are likely to be considered important to reasonable consumers making relevant purchasing decisions.

829.    Defendant's herein described deceptive acts and practices in the form of its material misrepresentations, half-truths, concealment, and omissions were likely to mislead reasonable consumers and did deceive consumers, including Plaintiffs Odom and Sakalarios and the Mississippi Class, to their detriment.

830.    Defendant knew or should have known the material facts it failed to disclose or concealed.

831.    Defendant's unfair acts or practices caused substantial injury to consumers, including to Plaintiffs Odom and Sakalarios and the Mississippi Class, which was not reasonably

avoidable by the consumers themselves and was not outweighed by countervailing benefits to consumers or to competition.

832.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices in violation of the Mississippi CPA, Plaintiffs Odom and Sakalarios and the Mississippi Class have suffered ascertainable losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

833.    On behalf of the Mississippi Class, Plaintiffs Odom and Sakalarios seeks all relief available under the Mississippi CPA, including declaratory relief; equitable relief, including restitution and disgorgement of profits; and any other relief this Court deems just and proper.

## COUNT XXXI: VIOLATIONS OF NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT

### NEB. REV. STAT. §§ 87-301, *et seq.*
### (on behalf of Leonard Bradley and the Nebraska Class)

834.    Plaintiff Bradley realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

835.    Plaintiff brings this cause of action individually and on behalf of members of the Nebraska Class.

836.    Defendant, Plaintiff Bradley, and Class members are "persons" as defined by NEB. REV. STAT. § 87-301(19).

837.    Defendant advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

838.    Nebraska's Uniform Deceptive Trade Practices Act ("NUDTPA") prohibits specific deceptive trade practices and unconscionable acts and provides for a private cause of action for equitable relief under NEB. REV. STAT. § 87-303.

839.    As alleged herein Defendant engaged and continues to engage in deceptive trade practices in the course of its business, in violation of various provisions of NEB. REV. STAT. §§ 87-302, including by: (1) representing that goods have "characteristics," "uses," or "benefits" "that they do not have," § 87-302(a)(5); (2) representing that goods "are of a particular standard, quality, or grade . . . if they are of another," § 87-302(a)(8); (3) advertising goods "with intent not to sell them as advertised," § 87-302(a)(10); and (4) by using "any scheme or device to defraud by means of: obtaining money . . . by false or fraudulent pretenses, representations, or promises; or [s]elling, distributing, [or] supplying any property for the purpose of furthering such a scheme," § 87-302(a)(16).

840.    Defendant represents on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. At the same time, Defendant fails to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products are unsafe and unfit for human use.

841.    Defendant also misrepresents that its products are safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment devices, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" for use to clean and sanitize sleep equipment devices, while

concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

842.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

843.    Defendant's herein described and ongoing deceptive acts and practices in the form of its material misrepresentations, half-truths, concealment, and omissions were and are likely to mislead reasonable consumers to their detriment.

844.    Defendant's herein described and ongoing deceptive acts and practices in the form of its material misrepresentations, half-truths, concealment, and omissions are material because they are likely to be considered important to reasonable consumers making relevant purchasing decisions.

845.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Bradley and the Nebraska Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

846.    Defendant put its own pecuniary interest ahead of all else and, in so doing, it sacrificed the safety, health, and well-being of consumers and their families. As a result, Defendant has unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system to clean their CPAP machines. As described herein,

Defendant's conduct is "unconscionable," within the meaning of NEB. REV. STAT. § 87-303.1, by virtue of being unethical, oppressive, unscrupulous, or substantially injurious to consumers and offending public policy or other well-established concepts of fairness.

847.    As a direct and proximate result of Defendant's deceptive trade practices and unconscionable acts, Plaintiff Bradley and all members of the Nebraska Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

848.    Plaintiff Bradley and the Nebraska Class seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, civil penalties, and attorneys' fees and costs.

## COUNT XXXII: VIOLATIONS OF NEBRASKA CONSUMER PROTECTION ACT

### NEB. REV. STAT. §§ 59-1601, *et seq.*
**(on behalf of Leonard Bradley and the Nebraska Class)**

849.    Plaintiff Bradley realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

850.    Plaintiff Bradley brings this cause of action individually and on behalf of members of the Nebraska Class.

851.    Defendant, Plaintiff Bradley, and all Nebraska Class members are "persons," as defined by NEB. REV. STAT. § 59-1601(1) and within the meaning of NEB. REV. STAT. § 59-1609.

852.    The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits unfair or deceptive acts or practices in the conduct of trade or commerce. NEB. REV. STAT. § 59-1602.

853.    For the reasons discussed herein, Defendant violated and continues to violate the Nebraska CPA, by engaging in the herein described unfair or deceptive acts or practices proscribed by the Nebraska CPA.

854.    Defendant has repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. At the same time, Defendant has failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products are unsafe and unfit for human use.

855.    Defendant also misrepresented that its products are safe, healthy, and effective, by advertising and making declarations that its products use "activated oxygen," use no "chemicals" or "harsh chemicals" to clean sleep equipment devices, use the same sanitizing process found in hospitals, that its products convert "activated oxygen" into "normal oxygen," and that its products are "safe" and "healthy" for use to clean and sanitize sleep equipment devices, while concealing, suppressing, or omitting the material fact that SoClean's products use ozone and at levels which exceed federal standards for medical devices intended for human use.

856.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

857.    Defendant's material misrepresentations, half-truths, concealment, and omissions are likely to deceive a reasonable consumer to their detriment.

858.   Defendant's material misrepresentations, half-truths, concealment, and omissions are material because a reasonable consumer would deem them in important in making relevant purchasing decisions.

859.   These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Bradley and the Nebraska Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

860.   Defendant's unfair acts or practices directly or indirectly caused injury to consumers, including to Plaintiff Bradley and the Nebraska Class, which was not reasonably avoidable by the consumers themselves and was not outweighed by countervailing benefits to consumers or to competition.

861.   Defendant's unfair or deceptive acts or practices in the form of its material misrepresentations, half-truths, concealment, and omissions about SoClean products have harmed and continue to harm the public interest.

862.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices in violation of the Nebraska CPA, Plaintiff Bradley and all members of the Nebraska Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users

of the products to suffer adverse health effects, (c) that were worth less than the price they paid,

and (c) which do not conform to the products' labels, packaging, advertising, and statements.

863.    Pursuant to NEB. REV. STAT. § 59-1609, Plaintiff Bradley and the Nebraska Class

are entitled to actual damages and, at the Court's discretion, an exemplary, statutory award up to

$1,000 per person.

864.    On behalf of the Nebraska Class, Plaintiff Bradley seeks all monetary and non-

monetary relief allowed by law, including actual and statutory damages; injunctive and equitable

relief; attorneys' fees and costs; and any other relief that the Court deems just and proper.

## COUNT XXXIII: VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT

### N.J. STAT. ANN. §§ 56:8-1, *et seq.*
### (on behalf of Saundra Thompson and the New Jersey Class)

865.    Plaintiff Thompson realleges and incorporates by reference the foregoing

allegations as if fully set forth herein.

866.    Plaintiff Thompson brings this cause of action individually and on behalf of

members of the New Jersey Class.

867.    Plaintiff Thompson, the New Jersey Class, and Defendant are "persons" within the

meaning of N.J. STAT. ANN. § 56:8-1(d).

868.    Defendant sold and sells "merchandise" directly or indirectly to the public, as

defined by N.J. STAT. ANN. § 56:8-1(c) and (e).

869.    Defendant used "advertisements" directly or indirectly to induce persons, including

Plaintiff Thompson and New Jersey Class members, to enter into an obligation, acquire an interest

in merchandise, or to increase the consumption of said merchandise, as defined by N.J. STAT. ANN.

§ 56:8-1(a).

870.    The New Jersey Consumer Fraud Act "prohibits any unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation," as well as the "knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise. . . ." N.J. STAT. ANN. §§ 56:8-2. The Act also specifically prohibits the "advertisement of merchandise as part of a plan or scheme not to sell the item as advertised. . . ." N.J. STAT. ANN. §§ 56:8-2.2.

871.    For the reasons described herein, Defendant engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of material facts with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of merchandise, in violation of N.J. STAT. ANN. §§ 56:8-2. Additionally, Defendant advertised merchandise as part of a plan or scheme not to sell it as advertised, in violation of N.J. STAT. ANN. §§ 56:8-2.2.

872.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant knowingly concealed the material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

873.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

874.    Defendant's unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of material facts about SoClean's products were material because they involved information that would be important to consumers in making relevant purchasing decisions.

875.    Defendant's unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of material facts had the capacity to deceive reasonable consumers.

876.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Thompson and the New Jersey Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

877.    Defendant's unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of material facts were unconscionable because they demonstrate a lack of good faith, honesty in fact, and observance of fair dealing.

878.    As a direct and proximate result of Defendant's unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing

concealment, suppression, or omission of material facts, Plaintiff Thompson and all members of the New Jersey Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

879.     Pursuant to N.J. STAT. ANN. §§ 56:8-19, Plaintiff Thompson and the New Jersey Class are entitled to compensatory damages in an amount to be determined at trial, mandatory treble damages, and other appropriate legal and equitable relief.

880.     Plaintiff Thompson and the New Jersey Class seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, costs, and any other relief this Court deems just and proper.

**COUNT XXXIV: VIOLATIONS OF FALSE ADVERTISING UNDER NEW YORK LAW**

**N.Y. GEN. BUS. LAW § 350,** *et seq.*
**(on behalf of Jacqueline Wazny and the New York Class)**

881.     Plaintiff Wazny realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

882.     Plaintiff Wazny brings this cause of action individually and on behalf of members of the New York Class.

883.     SoClean has made material, false, or misleading statements or representations of fact about its products. Specifically, SoClean has literally, impliedly, or by necessary implication

made the claim that its products were safe, healthy, and appropriate for at-home use in cleaning CPAP, BiPAP, or Mechanical Ventilation machines. Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

884.    These statements, representations, omissions, and half-truths would likely mislead a reasonable consumer acting reasonably under the circumstances.

885.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Wazny and the New York Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

886.    SoClean's acts constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in the state of New York in violation of New York's General Business Law § 350.

887.    The public is likely to be damaged because of SoClean's deceptive trade practices or acts.

888.    Plaintiff Wazny and all members of the New York Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health

effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

889.    On behalf of the New York Class, Plaintiff Wazny seeks to recover for herself and each member of the class three times actual damages or five hundred dollars, whichever is greater, together with reasonable attorneys' fees and costs.

### COUNT XXXV: VIOLATIONS OF UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER NEW YORK LAW

### N.Y. GEN. BUS. LAW § 349, *et seq.*
### (on behalf of Jacqueline Wazny and the New York Class)

890.    Plaintiff Wazny realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

891.    Plaintiff Wazny brings this cause of action individually and on behalf of members of the New York Class.

892.    By reason of the acts set forth above, SoClean has been and is engaged in deception acts or practices in the conduct of a business, trade or commerce in violation of New York's General Law § 349.

893.    Specifically, SoClean has made false, deceptive, or misleading representations of facts or omissions of fact about its products that are likely to mislead reasonable consumers. These deceptive acts or practices would be material to a reasonable consumer's decision to purchase.

894.    These deceptive acts or practices were likely to mislead a reasonable consumer acting reasonably in the circumstances.

895.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase.

Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Wazny and the New York Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

896.    The public is likely to be damaged because of SoClean's deceptive trade practices or acts.

897.    SoClean directs its conduct at consumers, as SoClean's false, deceptive, or misleading statements are contained in advertising targeted toward consumers, including digital advertisements and retail product packaging.

898.    SoClean's deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York have purchased SoClean's products in reliance of SoClean's false, deceptive, or misleading statements that its products were safe, healthy, and appropriate for at-home use in cleaning CPAP or BiPAP machines.

899.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

900.    Plaintiff Wazny and all members of the New York Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse

health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

901.    SoClean's conduct is causing irreparable injury to Plaintiff Wazny and the New York Class, and will continue to damage Plaintiff Wazny and the New York Class and deceive the public unless enjoined by this Court.

902.    On behalf of the New York Class, Plaintiff Wazny seeks to recover for herself and each member of the class three times actual damages or fifty dollars, whichever is greater, together with reasonable attorneys' fees and costs.

## COUNT XXXVI: VIOLATIONS OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

### N.C. GEN. STAT. §§ 75-1.1, *et seq.*
### (on behalf of Randolph Screen, Marguerite Smith, and the North Carolina Class)

903.    Plaintiffs Screen and Smith reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

904.    Plaintiffs Screen and Smith bring this cause of action individually and on behalf of members of the North Carolina Class.

905.    Plaintiffs Screen and Smith and North Carolina Class members are "persons" within the meaning of N.C. GEN. STAT. §75-16.

906.    Defendant is a firm or corporation within the meaning of N.C. GEN. STAT. §75-16.

907.    At all times relevant herein, Defendant was engaged in or affecting commerce in the State of North Carolina within the meaning of N.C. GEN. STAT. §75-1.1(b).

908.    The North Carolina Unfair and Deceptive Trade Practices Act (UDTPA) broadly prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. §75-1.1(a).

909.    Defendant's conduct as set forth herein is "unfair" and violates the UDTPA because it is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina and has the capacity and tendency to deceive the average consumer acting reasonably under the circumstances.

910.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. In addition to these representations and half-truths, Defendant failed to disclose the material information—namely, the risk of exposure to unsafe levels of ozone and/or developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

911.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

912.    Defendant's false, misleading, and deceptive statements and representations of fact were and are directed to consumers in North Carolina.

913.    Plaintiffs Screen and Smith and the North Carolina Class reasonably relied on Defendant's false, misleading, and deceptive statements and representations of fact in deciding to purchase SoClean's products.

914.    Defendant's deceptive acts and practices in the form of these misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they involved information that would be important to the average consumer in making relevant purchasing decisions.

915.    By affirmatively representing that SoClean's products were safe, healthy, and fit for human use, Defendant assumed a duty to speak truthfully as to the products' characteristics and attendant risks, which it materially failed to do by its omissions and half-truths. And by actively concealing that SoClean's products generated or used ozone, Defendant knowingly took affirmative steps to conceal material facts from consumers, including Plaintiffs Screen and Smith and the North Carolina Class who were ignorant and unable to discovery the truth through reasonable diligence.

916.    Defendant's unfair or deceptive acts or practices in the form of its material misrepresentations, concealment, omissions, and half-truths have resulted in consumer injury, including to Plaintiffs Screen and Smith and the North Carolina Class.

917.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Screen and Smith and the North Carolina Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

918.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs Screen and Smith and all members of the North Carolina Class suffered losses

in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

919.    On account of these injuries, Plaintiffs Screen and Smith and the North Carolina Class are entitled to actual damages in an amount not less than the price of the SoClean device, and treble damages, in accordance with N.C. GEN. STAT. § 75-16. Further, because Defendant willfully engaged in these unfair or deceptive acts or practices, Plaintiffs Screen and Smith and the North Carolina Class are entitled to reasonable attorneys' fees and costs, as provided by N.C. GEN. STAT. § 75-16.1.

920.    Finally, Defendant put its own pecuniary interest ahead of all else, and in the process sacrificed the safety, health, and well-being of Plaintiffs Screen and Smith and North Carolina Class members. The only way to prevent this egregious conduct from recurring is to assess punitive damages against Defendant.

921.    Plaintiffs Screen and Smith and the North Carolina Class therefore seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT XXXVII: VIOLATIONS OF OHIO CONSUMER SALES PRACTICES ACT

### OHIO REV. CODE ANN. §§ 1345.01, *et seq.*
### (on behalf of Sharen Schaefer and Dale Vernon Sr. and the Ohio Class)

922.    Plaintiffs Schaefer and Vernon reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

923.    Plaintiffs Schaefer and Vernon bring this cause of action individually and on behalf of members of the Ohio Class.

924.    Defendant is a "supplier" as that term is defined in OHIO REV. CODE ANN. § 1345.01(C).

925.    Plaintiffs Schaefer and Vernon and the Ohio Class are "consumers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(D).

926.    The sale of SoClean products to Plaintiffs Schaefer and Vernon and the Ohio Class is a "consumer transaction" as that term is defined in OHIO REV. CODE ANN. § 1345.01(A).

927.    The Ohio Consumer Sales Practices Act, OHIO REV. CODE ANN. § 1345.02 (the "Act"), prohibits unfair or deceptive acts or practices in connection with a consumer transaction, including  prohibiting suppliers from representing that: (1) goods have characteristics or uses or benefits which they do not have, OHIO REV. CODE ANN. § 1345.02 (B)(1); (2) their products or goods are of a particular standard, quality, or grade if they are not, OHIO REV. CODE ANN. § 1345.02(B)(2); (3) the products or goods have been supplied in accordance with a previous representation, if they have not, OHIO REV. CODE ANN. § 1345.02(B)(5); and (4) representing the transaction involves a warranty, rights, remedies, or obligations if that representation is false, OHIO REV. CODE ANN. § 1345.02(B)(10).  By its actions and practices described in the body of this Complaint, Defendant has violated each of these provisions.

928.    The Act also prohibits unconscionable acts or practices in connection with a consumer transaction which includes the circumstances at issue here where Defendant: (1) "has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance," OHIO REV. CODE ANN. § 1345.03(B)(1), (2) "knowingly made a misleading statement of opinion on which Plaintiffs and the Class members

224

were likely to rely to the consumer's detriment," OHIO REV. CODE ANN. § 1345.03(B)(6); (3) "knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction," OHIO REV. CODE ANN. § 1345.03(B)(3); and (4) "required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier," OHIO REV. CODE ANN. § 1345.03(5). Defendant's actions as described throughout this Complaint violate each of these provisions.

929.    Defendant advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio and the Class.

930.    Defendant knew or should have known of the underlying facts that it was misrepresenting, concealing, omitting, or only partially disclosing before, during, or after the consumer transactions with Plaintiffs Schaefer and Vernon and the Ohio Class.

931.    Defendant's misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they were likely to be considered by a reasonable consumer when making purchasing decisions. Defendant's material misrepresentations, concealment, omissions, and half-truths about SoClean's products were likely to deceive a reasonable consumer by inducing a belief not in accord with the facts.

932.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The

225

very purchase of the SoClean devices by Plaintiffs Schaefer and Vernon and the Ohio Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

933.    Defendant's conduct alleged above constitutes an act or practice previously declared to be unfair, deceptive, or unconscionable under the Ohio Consumer Sales Practices Act by a rule adopted under OHIO REV. CODE ANN. § 1345.05(B)(2), or by a prior decision of the Ohio courts finding the same and was committed after the decisions containing these determinations were made available for public inspection under division (A)(3) of OHIO REV. CODE ANN. § 1345.05. These cases include, but are not limited to, the following: Consent Judgment Entry and Order at 5, ¶ 10, *State ex rel Petro v. Greentree Health Systems, LLC*, Warren C.P. No. 05CV63630 (Sept. 14, 2006) (OPIF #10002500); Final Judgment Entry and Order at 5, ¶ 21–23, *State ex rel DeWine v. Senior Health Solutions of Ohio, Inc.*, Fairfield C.P. No. 2012 CV 01167 (July 31, 2013) (OPIF #10003066); Agreed Entry and Final Judgment Order at 6, ¶¶ A–C, *State ex rel DeWine v. GlaxoSmithKline, LLC*, Lucas C.P. No. CI-2011-3928 (June 23, 2011) (OPIF #10002956); Assurance of Voluntary Compliance at 7–10, ¶¶ 24–38, *In re Gateway Distributors, Ltd.*, (June 14, 2006) (OPIF # 10002461); Agreed Entry and Final Judgment Order at 7–10, ¶¶ A–G, *State ex rel DeWine v. GlaxoSmithKline, LLC*, Lucas C.P. No. CI0201206326 (Nov. 19, 2012) (OPIF #10003046); Agreed Entry and Final Judgment Order at 9–10, ¶¶ 3.2–3.12, *State ex rel Yost v. Boston Scientific Corp.*, Franklin C.P. No. 21CV001799 (Mar. 28, 2021) (OPIF # 3577); and Agreed Entry and Final Judgment Order at 9–12, ¶¶ 3.3–3.15, *State ex rel Yost v. C.R. Bard, Inc.*, Franklin C.P. No. 20CV006320 (Sep. 24, 2020) (OPIF # 3544). Therefore, Defendant was "on notice" that its alleged conduct was unfair, deceptive, and/or unconscionable and therefore unlawful.

934.    The unfair, deceptive, and unconscionable acts and practices occurred before, during, and after the transactions.

935.    As a direct and proximate result of Defendant's unfair, deceptive, and/or unconscionable acts and practices, Plaintiffs Schaefer and Vernon and all members of the Ohio Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

936.    Accordingly, Plaintiffs Schaefer and Vernon and the Ohio Class seek relief allowed by law, including actual economic damages, other appropriate relief, and attorneys' fees pursuant to OHIO REV. CODE ANN. § 1345.09.

## COUNT XXXVIII: VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT

### 15 OKLA. STAT. ANN. §§751, *et seq.*
### (on behalf of Sabrina Harrell and the Oklahoma Class)

937.    Plaintiff Harrell realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

938.    Plaintiff brings this cause of action individually and on behalf of members of the Oklahoma Class.

939.    At all times relevant herein, Plaintiff Harrell, the Oklahoma Class, and Defendant are "person[s]" within the meaning of 15 OKLA. STAT. ANN. § 15-752(1).

940.    The purchases by Plaintiff Harrell and the Oklahoma Class were "consumer transaction[s]" within the meaning of 15 OKLA. STAT. ANN. § 15-752(2).

941. Defendant is engaged in the selling of "merchandise" within the meaning of 15 OKLA. STAT. ANN. § 15- § 752(7).

942. Defendant violated "consumer laws" within the meaning of 15 OKLA. STAT. ANN. § 15-752(17).

943. Plaintiff Harrell will provide a file-stamped copy of this Complaint to the Consumer Protection Agency of Oklahoma, the office of the Attorney General of Oklahoma.

944. Defendant advertised, offered, and or sold goods or services in Oklahoma, and engaged in trade or commerce directly or indirectly affecting the people of Oklahoma.

945. Defendant engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of 15 OKLA. STAT. ANN. §15-753 (2) by making misrepresentations, concealment, omissions, half-truths, and false statements concerning the safety, healthiness, and effectivity of the products including: (1) making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction, 15 OKLA. STAT. ANN. § 753(2); (2) making a false representation, knowingly or with reason to know, as to the characteristics, uses, benefits, and/or alterations of the subject of a consumer transaction or a false representation as to the approval, status, affiliation or connection of a person therewith, 15 OKLA. STAT. ANN. § 753(5); (3) Representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another, 15 OKLA. STAT. ANN. § 753(7); (4) Advertising, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised, 15 OKLA. STAT. ANN. § 753(7).

946.    Defendant's acts and practices were unfair because they offend established public policy and the practices are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. 15 OKLA. STAT. ANN. § 752(14).

947.    Defendant's acts and practices are deceptive because its misrepresentation, omission or other practice have deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person.

948.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. Defendant failed to disclose material information—namely, the risk of exposure to unsafe levels of ozone and/of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

949.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

950.    Defendant's deceptive acts and unfair practices in the form of these misrepresentations, concealment, omissions, and half-truths about SoClean's products were material because they involved information that would be important to consumers in making relevant purchasing decisions.

951.    Defendant's deceptive acts and unfair practices in the conduct of trade or commerce were likely to deceive consumers acting reasonably under the circumstances.

952.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed,

all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Harrell and the Oklahoma Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

953.    As a direct and proximate result of those deceptive acts and unfair practices by Defendant, Plaintiff Harrell and all members of the Oklahoma Class have suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

954.    Defendant's deceptive acts and practices caused substantial, ascertainable injury to the Plaintiff Harrell and the Oklahoma Class, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

955.    Defendant's violations of Oklahoma law were done with reckless indifference to the Plaintiff Harrell and the Oklahoma Class or was with an intentional or wanton violation of those rights.

956.    Further Plaintiff Harrell and the Oklahoma Class shall be entitled to an award of punitive damages because SoClean's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and/or was in reckless disregard and complete indifference to the probable consequence of its actions. Because SoClean put its own pecuniary interest ahead

of all else, it sacrificed the safety, health, and well-being of consumers and their families. SoClean also unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to prevent this type of egregious indifference from occurring again is to assess punitive damages against Defendant.

957.    Plaintiff Harrell requests damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

## COUNT XXXIX: VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW

### 73 PA. CONS. STAT. §§ 201-2 and 201-3, *et seq.* (on behalf of Mark Meles and the Pennsylvania Class)

958.    Plaintiff Meles realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

959.    Plaintiff Meles brings this cause of action individually and on behalf of members of the Pennsylvania Class.

960.    Plaintiff Meles, the Pennsylvania Class, and Defendant are "persons," as meant by 73 PA. CONS. STAT. § 201-2(2).

961.    The Plaintiff Meles and Pennsylvania Class members purchased goods and services in "trade" and "commerce," as meant by 73 PA. CONS. STAT. §§ 201-2(3), 201-9.2, "primarily for personal, family, and/or household purposes."

962.    Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce in violation of 73 PA. CONS. STAT. § 201-3, including the following: representing that goods and services have characteristics, uses, benefits, and qualities that they do not have (73 PA. CONS. STAT. § 201-2(4)(v)); representing that goods and services are of a particular standard or quality if they are another (73 PA. CONS. STAT. § 201-

2(4)(vii)); advertising goods and services with intent not to sell them as advertised (73 PA. CONS. STAT. § 201-2(4)(ix)); and engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 PA. CONS. STAT.§ 201-2(4)(xxi)).

963.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

964.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Meles and the Pennsylvania Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

965.    As a direct and proximate result of Defendant's unfair or deceptive methods, acts, or practices, Plaintiff Meles and all members of the Pennsylvania Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

966.    Plaintiff Meles and the Pennsylvania Class seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is

greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

## COUNT XL: VIOLATIONS OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

### S.C. CODE ANN. §§ 39-5-10, *et seq.*
**(on behalf of Susan Clark and the South Carolina Class)**

967.    Plaintiff Clark realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

968.    Plaintiff Clark brings this cause of action individually and on behalf of members of the South Carolina Class.

969.    Plaintiff Clark, all South Carolina Class Members, and Defendant are "persons," as defined by S.C. CODE ANN. § 39-5-10(a) and within the meaning of § 39-5-140(a).

970.    Defendant advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. CODE ANN. § 39-5-10(b).

971.    South Carolina's Unfair Trade Practices Act ("SCUTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39-5-20.

972.    For the reasons discussed herein, Defendant violated and continues to violate the SCUTPA, by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by the SCUTPA.

973.    Defendant repeatedly advertised on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. At the same time, Defendant knowingly concealed the material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse

233

health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use. Without this information, SoClean made sales without adequate disclosures.

974.    Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

975.    Defendant's unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of material facts about SoClean's products were material because they involved information that would be important to consumers in making relevant purchasing decisions.

976.    Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

977.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers. Defendant's representations and omissions had the tendency or capacity to deceive.

978.    These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Clark and the South Carolina Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

979.    Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

980.    Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

981.    Defendant's violations present a continuing risk to the Plaintiff, the Class, and the general public.

982.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices in violation of the SCUTPA, Plaintiff Clark and the South Carolina Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

983.    Plaintiff Clark and the South Carolina Class seek all monetary and non-monetary relief allowed by law, including damages for their economic losses, treble damages, and reasonable attorneys' fees and costs.

## COUNT XLI: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977

### TENN. CODE ANN. § 47-18-101, *et seq.*
### (on behalf of Heather Lattimore and the Tennessee Class)

984.    Plaintiff Lattimore realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

985.    Plaintiff Lattimore brings this cause of action individually and on behalf of members of the Tennessee Class.

986.    Plaintiff Lattimore, the Tennessee Class, and Defendant are "persons" within the meaning of TENN. CODE ANN. § 47-18-103(14).

987.    Plaintiff Lattimore and the Tennessee Class are "consumers" within the meaning of TENN. CODE § 47-18-103(3).

988.    At all times relevant herein, Defendant was engaged in trade or commerce in the State of Tennessee within the meaning of TENN. CODE ANN. § 47-18-103(20).

989.    The Tennessee Consumer Protection Act (TCPA), TENN. CODE ANN. §§ 47-18-101, *et seq.*, prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." TENN. CODE ANN. § 47-18-104. The TCPA also prohibits the following specific types of unfair or deceptive acts or practices: (1) falsely passing off goods as those of another, TENN. CODE ANN. § 47-18-104(b)(1); (2) representing that goods have characteristics, uses, benefits, or qualities that they do not have, TENN. CODE ANN. § 47-18-104(b)(5); (3) representing that goods are of a particular standard or quality if they are of another, TENN. CODE ANN. § 47-18-104(b)(7); (4) advertising goods with intent not to sell them as advertised, TENN. CODE ANN. § 47-18-104(b)(9); (5) using statements or illustrations in any advertisement which creates a false impression of the quality or usability of goods offered or which may otherwise misrepresent the goods in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods to other goods, TENN. CODE ANN. § 47-18-104(b)(21); and making an offer to sell goods that is not bona fide by showing or demonstrating goods which are defective or unusable for the purpose represented or implied in the advertisement when such

defective or unusable nature is not fairly and adequately disclosed in the advertisement, TENN. CODE ANN. § 47-18-104(c)(5).

990. Defendant repeatedly represented on its website, advertisements, and marketing materials, and on its products' packaging and labels that its products were legally marketed, safe, healthy, and fit for human use. In addition to these material misrepresentations and half-truths, Defendant failed to disclose or willfully concealed, material information—namely, the risk of exposure to unsafe levels of ozone and/or of developing adverse health effects as a result of the dangerous ozone generated by, and used in, SoClean's products—and therefore Defendant's products were unsafe and unfit for human use.

991. Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

992. As described herein, Defendant's acts and practices affecting trade, commerce, or in the conduct of consumer transactions were "deceptive," within the meaning of the TCPA, because they were false, misleading, and/or likely to cause confusion in the mind of a reasonable consumer as to a matter of fact, to the consumer's detriment.

993. Defendant's deceptive acts or practices in the form of misrepresentations, concealment, omissions, and half-truths as to the quality, characteristics, and benefits of SoClean's products were material because they relate to information a reasonable consumer would consider in making relevant purchasing decisions.

994. These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its

website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Lattimore and the Tennessee Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

995.    Defendant's acts or practices affecting trade or commerce were "unfair," within the meaning of the TCPA, because they caused or were likely to cause substantial injury to consumers, including to Plaintiff Lattimore and the Tennessee Class, which was not reasonably avoidable by the consumers themselves and was not outweighed by countervailing benefits to consumers or to competition.

996.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices in the conduct of trade or commerce, Plaintiff Lattimore and all members of the Tennessee Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

997.    As a result, Plaintiff Lattimore and the Tennessee Class have been damaged in an amount to be proven at trial, but not less than either the purchase price of the SoClean products or the difference in value between SoClean products as advertised and SoClean products as actually sold.

998.    In addition to compensatory relief for their actual damages, Plaintiff Lattimore and the Tennessee Class are also entitled to treble or punitive damages because Defendant's unfair or

deceptive acts or practices were willful or intentional, as permitted by TENN. CODE ANN. § 47-18-109(a)(3), (4). Because SoClean put its own pecuniary interest ahead of all else, it sacrificed the safety, health, and well-being of consumers and their families. SoClean also unfairly profited off unsuspecting purchasers who believed they were buying a natural, safe, healthy, closed cleaning system. The only way to prevent this type of egregious indifference from occurring again is to assess punitive damages against Defendant.

999.    Plaintiff Lattimore and the Tennessee Class seek all monetary and non-monetary relief allowed by law, including actual damages, treble or punitive damages, restitution, injunctive relief, and reasonable attorneys' fees and costs, and any other just and proper relief this Court deems just and proper.

### COUNT XLII: VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT (TDTPA)

### TEX. BUS. & COM. CODE ANN. §§ 17.41, *et seq.*
### (on behalf of Amin Simms and William Wheeler and the Texas Class)

1000.    Plaintiffs Simms and Wheeler reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

1001.    Plaintiff Simms and Wheeler brings this cause of action individually and on behalf of members of the Texas Class.

1002.    Plaintiff Simms and Wheeler, the Texas Class, and Defendant are each a "person," as defined by TEX. BUS. & COM. CODE ANN. § 17.45(3).

1003.    Plaintiff Simms and Wheeler and the Texas Class are "consumers," as defined by TEX. BUS. & COM. CODE ANN. § 17.45(4).

1004.   At all times relevant to this Complaint, Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

1005.   **False, Misleading, or Deceptive Acts or Trade Practices under TDTPA.** Defendant engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b) by (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, § 17.46(b)(5); (2) representing that goods or services are of a particular standard, quality or grade, if they are of another, § 17.46(b)(7); (3) advertising goods or services with intent not to sell them as advertised, § 17.46(b)(9); and (4) failing to disclose information concerning goods or services which was known at the time of the transaction and which was intended to induce the consumer into a transaction which the consumer would not have entered into had the information been disclosed, § 17.46(b)(24).

1006.   Defendant's false, misleading, or deceptive acts or practices in the form of material misrepresentations, concealment, half-truths, and/or omissions about SoClean products were likely to deceive reasonable consumers.

1007.   Defendant's false, misleading, or deceptive representations and omissions related to material facts a reasonable consumer would consider relevant to their purchasing decisions and were well beyond mere puffing or statements of opinion.

1008.   These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud

consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiffs Simms and Wheeler and the Texas Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

1009.   On information and belief, Defendant had knowledge of the material facts it omitted or only partially disclosed.

1010.   Plaintiff Simms and Wheeler and the Texas Class relied on Defendant's false, misleading, or deceptive material misrepresentations, concealment, omissions, or half-truths to their detriment and suffered damages as a result.

1011.   **Breach of Express Warranty under TDTPA**. Defendant expressly warranted, advertised, and represented to Plaintiffs Simms and Wheeler and the Texas Class that its products were safe, healthy, and appropriate for human use. Defendant made these express warranties regarding its products' quality and fitness for use in writing through its website, advertisements, and marketing materials, and on its products' packaging and labels.

1012.   Defendant's express affirmations of fact and promises and its omissions were material, and Plaintiffs Simms and Wheeler and the Texas Class reasonably relied upon such representations and omissions in purchasing and using SoClean's products.

1013.   Defendant's products do not conform to SoClean's advertisements, warranties, representations, and omissions in that they are not legally marketed, safe, healthy, and appropriate for human use, and instead pose risks of serious injury and disease.

1014.   Additionally, SoClean has literally, impliedly, or by necessary implication made the claim that its charcoal filters had a meaningful impact converting activated oxygen to regular oxygen before release.

1015.   Defendant therefore breached its express warranties, in violation of TEX. BUS. & COM. CODE ANN. § 17.50(a)(2), by placing its products into the stream of commerce and selling them to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by SoClean. These associated health effects substantially impair the use, value, safety of the products, and render them worthless.

1016.   Plaintiffs Simms and Wheeler and the Texas Class have suffered damages as a result of Defendant's breach of its express warranties regarding SoClean products.

1017.   **Breach of Implied Warranty of Merchantability under TDTPA.** At all times mentioned herein, Defendant manufactured or supplied its products, and prior to being purchased by Plaintiffs Simms and Wheeler and the Texas Class, Defendant impliedly warranted that its products were of merchantable quality by being suitable for their ordinary purpose: to safely clean the user's CPAP machine.

1018.   Plaintiffs Simms and Wheeler and the Texas Class relied on Defendant's implied warranty that its products were suitable for the ordinary purpose for which they were sold and would perform in accordance the expectations of a reasonable consumer.

1019.   However, at the time of sale, Defendant's products were not suitable for their ordinary purpose because use of the products are accompanied by the risk of adverse health effects.

1020.   Defendant therefore breached its implied warranties to Plaintiffs Simms and Wheeler and the Texas Class members by selling products that did not conform to these warranties.

1021.   Plaintiffs Simms and Wheeler and the Texas Class have suffered damages as a result of Defendant's breach of its express warranties regarding SoClean products.

1022. **Unconscionable Actions or Courses of Action under the TDTPA.** Defendant engaged in unconscionable actions or courses of conduct, in violation of TEX. BUS. & COM. CODE ANN. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

1023. Consumers, including Plaintiffs Simms and Wheeler and the Texas Class, lacked knowledge about the above business practices, omissions, and material misrepresentations because this information was known exclusively by Defendant.

1024. Plaintiffs Simms and Wheeler and the Texas Class have suffered damages as a result of Defendant's unconscionable actions or courses of action.

1025. As a direct and proximate result of Defendant's violations of the Texas Deceptive Trade Practices—Consumer Protection Act, including false, misleading, or deceptive acts and practices, breaches of express and implied warranties, and unconscionable actions or courses of action, Plaintiffs Simms and Wheeler and all members of the Texas Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

1026. Additionally, as a direct and proximate result of Defendant's knowing or intentional violations of the Deceptive Trade Practices Act, Plaintiffs Simms and Wheeler and Texas Class members have suffered mental anguish.

243

1027.   On behalf of themselves and the Texas Class members, Plaintiffs Simms and Wheeler sent Defendant notice concerning its wrongful conduct as alleged herein pursuant to TEX. BUS. & COM. CODE ANN. § 17.505.

1028.   Texas Plaintiffs Simms and Wheeler and Class members seek all monetary and non-monetary relief allowed by law, TEX. BUS. & COM. CODE ANN. § 17.50, including economic and noneconomic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT XLIII: VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT

### VA. CODE ANN. §§ 59.1-196, *et seq.*
### (on behalf of Loreen Hughes and the Virginia Class)

1029.   Plaintiff Hughes realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

1030.   Plaintiff Hughes brings this cause of action individually and on behalf of members of the Virginia Class.

1031.   The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200(14).

1032.   Defendant is a "person" as defined by VA. CODE ANN. § 59.1-198.

1033.   Defendant is a "supplier," as defined by VA. CODE ANN. § 59.1-198.

1034.   Defendant engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by VA. CODE ANN. § 59.1-198.  Defendant advertised, offered, or sold goods or services used primarily for personal, family, or household purposes.

1035.   Defendant engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

1036.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

1037.   These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Hughes and the Virginia Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

1038.   The above-described deceptive acts and practices also violated the following provisions of VA. CODE ANN. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

1039.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Hughes and all members of the Virginia Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were

worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

1040. Defendant's violations present a continuing risk to Plaintiff Hughes and the Virginia Class as well as to the general public.

1041. Plaintiff Hughes and the Virginia Class seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT XLIV: VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT

### WASH. REV. CODE ANN. §§ 19.86.010, *et seq.*
### (on behalf of Robert E. Parker and the Washington Class)

1042. Plaintiff Parker realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

1043. Plaintiff Parker brings this cause of action individually and on behalf of members of the Washington Class.

1044. Plaintiff Parker, the Washington Class, and Defendant are "person[s]" within the meaning of § 19.86.010(1) of the Washington Consumer Protection Act (the "CPA"). WASH. REV. CODE ANN. § 19.86.010(1).

1045. Defendant advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of the state of Washington, as defined by WASH. REV. CODE ANN. § 19.86.010(2).

1046. Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of WASH. REV. CODE ANN. § 19.86.020, as described herein.

1047.   Defendant's conduct, including omissions, had the capacity to deceive because they were likely to deceive a large portion of the general public.

1048.   These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Parker and the Washington Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

1049.   Defendant's conduct is injurious to the public interest because it violates WASH. REV. CODE ANN. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, and/or injured persons and had and has the capacity to injure persons. WASH. REV. CODE ANN. § 19.86.093.

1050.   As a direct and proximate result of Defendant's unfair or deceptive acts and practices, Plaintiff Parker and all members of the Washington Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

1051.   Plaintiff Parker and the Washington Class members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## COUNT XLV: VIOLATIONS OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT

### WIS. STAT. §§ 100.18, *et seq.*
### (on behalf of Timothy Lakin and the Wisconsin Class)

1052.   Plaintiff Lakin realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

1053.   Plaintiff Lakin brings this cause of action individually and on behalf of members of the Wisconsin Class.

1054.   Defendant is a "person, firm, corporation or association," within the meaning of Wis. Stat. § 100.18(1).

1055.   Plaintiff Lakin and Wisconsin Class members are members of "the public," within the meaning of WIS. STAT. § 100.18(1).

1056.   Defendant made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained untrue, deceptive, and/or misleading assertions, representations, or statements of fact including material misrepresentations, omissions, concealments, and half-truths, with the intent to induce the public to enter into a contract or obligation related to the purchase, sale, distribution, or in order to increase consumption of merchandise offered by Defendant to members of the public for sale in violation of WIS. STAT. § 100.18(1).

1057.   Defendant also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of WIS. STAT. § 100.18(9).

1058.   Defendant had an ongoing duty to all Defendant's customers to refrain from deceptive acts, practices, plans, and schemes under WIS. STAT. § 100.18.

1059.   Defendant's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

1060.   Defendant's untrue, deceptive, and/or misleading assertions, representations, or statements of fact including misrepresentations, omissions, concealments, and half-truths, were material because they were likely to deceive reasonable consumers and a large portion of the general public.

1061.   Defendant's untrue, deceptive, and/or misleading assertions, representations, or statements of fact including material misrepresentations, omissions, concealments, and half-truths constituted material inducement because they were a significant factor in Plaintiff Lakin's and the Wisconsin Class's decision to purchase the merchandise Defendant offered, sold, or distributed.

1062.   These material misrepresentations, concealment, half-truths, and omissions were so fundamental that every customer would necessarily rely on them in making their purchase. Indeed, all of SoClean's material misrepresentations, concealment, half-truths, and omissions on its website, marketing, label, and packaging were part of a common core of a scheme to defraud consumers and users into believing that the SoClean devices were safe and legally marketed. The very purchase of the SoClean devices by Plaintiff Lakin and the Wisconsin Class demonstrates reliance on the representation that the SoClean devices were legally marketed.

1063.   As a direct and proximate result of Defendant's untrue, deceptive, and/or misleading assertions, representations, or statements of facts, Plaintiff Lakin and all members of the Wisconsin Class suffered losses in the form of monetary and non-monetary damages, including that they purchased SoClean's products (a) which they would not (indeed, could not) have purchased if SoClean had not concealed the illegal marketing of the SoClean devices, (b) which they would not have purchased at all had they known they generated, and used, ozone that could cause users of the products to suffer adverse health effects, (c) that were worth less than the price they paid, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

1064.   Plaintiff Lakin and the Wisconsin Class are entitled to an award of punitive damages because Defendant's fraudulent representations were made with intentional disregard for the rights of Plaintiff Lakin and Wisconsin Class members. Defendant put its own pecuniary interest ahead of all else, and in the process sacrificed the safety, health, and well-being of Plaintiff Lakin and Wisconsin Class members. The only way to prevent this conduct from occurring in the future is to assess punitive damages against Defendant in accordance with WIS. STAT. § 895.043.

1065.   Plaintiff Lakin and Wisconsin Class members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under WIS. STAT. § 100.18(11)(b)(2), and punitive damages under WIS. STAT. § 895.043.

## COUNT XLVI: VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT

### 15 U.S.C. §§ 2301, *et seq.*
**(on behalf the Nationwide Class and all State Classes)**

1066.   Plaintiffs incorporates the foregoing allegations as if fully set forth herein.

1067.   The SoClean devices constitute "consumer products" as defined by 15 U.S.C. § 2301(1).

1068.  Plaintiffs and the members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

1069.  SoClean is a "supplier" of the SoClean devices as defined by 15 U.S.C. § 2301(4).

1070.  SoClean is a "warrantor" as defined by 15 U.S.C. § 2301(5).

1071.  The warranties made by SoClean pertained to consumer products costing the consumer more than five dollars. *See* 15 U.S.C. § 2302(e).

1072.  Plaintiffs and the members of the Class invoke federal jurisdiction for the claims stated under this Count pursuant to the Class Action Fairness Act.

1073.  The SoClean devices were defective when they came off SoClean's assembly lines and at all subsequent times (including at the times of sale and/or delivery to Plaintiffs and the members of the Class) because the defective design made them dangerously unsafe.

1074.  As a result, the SoClean devices were worth less (nothing or less than nothing) at the time of their sales than the prices paid for them.

1075.  Plaintiffs and the members of the Class would not have purchased or accepted the SoClean devices had they known the machines were dangerously defective.

1076.  SoClean violated the Magnuson-Moss Federal Warranty Act by failing to comply with the express warranties they made to Plaintiffs and the members of the Class. SoClean violated the Magnuson-Moss Federal Warranty Act by failing to comply with the implied warranties they made to Plaintiffs and the members of the Class.

1077.  Plaintiffs and the other members of the Class need not have given notice of the defects to SoClean and an opportunity for SoClean to comply with their warranty obligations prior to the filing of this suit, because Plaintiffs may give such notice to SoClean on their own behalf and on behalf of the Class after class certification pursuant to 15 U.S.C. § 2310(e).

1078.   Based on the facts alleged here, any durational limit to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count are procedurally and substantively unconscionable and otherwise unenforceable under federal law and applicable state common law.

1079.   Based on the facts alleged here, any durational limit to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.

1080.   Plaintiffs and the members of the Class sustained injuries and damages as a proximate result of SoClean's violation of its express and implied warranties, and are entitled to legal and equitable relief against SoClean, including economic damages, rescission or other relief as appropriate, including compensatory damages consisting of: (a) the difference between the values of the SoClean devices as warranted (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to replace the SoClean devices, and (c) other miscellaneous incidental and consequential damages.

1081.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other members of the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by them in connection with the commencement and prosecution of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment as follows:

A.  An order certifying this action on all counts, and the Classes requested herein as Class Actions, designating Plaintiffs as the representative of the State and/or National Classes and appointing Plaintiffs' counsel as Class counsel for the State and/or National Classes;

B. An order declaring that SoClean's actions constitute:

    i.    A breach of express warranty;

    ii.   A breach of implied warranty of merchantability;

    iii.   Fraudulent misrepresentation;

    iv.   Fraud by omission;

    v.    Negligent Misrepresentation;

    vi.   Unjust Enrichment;

    vii.   Violations of Alabama Deceptive Trade Practices Act, Arizona Consumer Fraud Act, Arkansas Deceptive Trade Practices Act, California Consumer Legal Remedies Act, California Unfair Competition Law, California False Advertising Law, Colorado Consumer Protection Act, Connecticut Unfair Trade Practices Act, Florida Deceptive and Unfair Trade Practices Act, Florida Fraudulent Practices Statute, Georgia Uniform Deceptive Trade Practices Act, Georgia Fair Business Practices Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Deceptive Trade Practices Act, Indiana Deceptive Consumer Sales Act, Kansas Consumer Protection Act, Kentucky Consumer Protection Act, Louisiana Unfair Trade Practices and Consumer Protection Act, Warranty Against Redhibitory Defects, Maryland Consumer Protection Act, Massachusetts law, Michigan Consumer Protection Act, Missouri Merchandising Practices Act, Mississippi Consumer Protection Act, Nebraska Uniform Deceptive Trade Practices Act, Nebraska Consumer Protection Act, New Jersey Consumer Fraud Act, New York False Advertising Law, New York Unfair and Deceptive Trade Practices, North Carolina Unfair

and Deceptive Trade Practices Act, Ohio Consumer Sales Practices Act, Oklahoma Consumer Protection Act, Pennsylvania Unfair Trade Practices and Consumer Protection Law, South Carolina Unfair Trade Practices Act, Tennessee Consumer Protection Act of 1977, Texas Deceptive Trade Practices Act—Consumer Protection Act, Virginia Consumer Protection Act, Washington Consumer Protection Act, Wisconsin Deceptive Trade Practices Act.

C. Violations of the Magnuson-Moss Federal Warranty Act;

D. A judgment that SoClean is liable to Plaintiffs and the Classes as described herein for damages;

E. A judgment awarding Plaintiffs and members of the Classes all compensatory and punitive damages as is appropriate to be determined at trial;

F. A judgment awarding Plaintiffs and the Classes pre-judgment and post-judgment interest in an amount prescribed by law, as well as any statutory trebling or other damages;

G. A judgment awarding Plaintiffs and the Classes costs and fees, including attorneys' fees, as prescribed by law; and

H. Grant such other legal, equitable, or further relief as the Court may deem just and proper.

I. Plaintiffs request a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED, this the 22nd day of July 2022.

_/s/ Ruth Anne French-Hodson_
Ruth Anne French-Hodson
**SHARP LAW, LLP**
4820 W. 75th St.
Prairie Village, KS 66208
(913) 901-0505 (phone)
(91) 901-0419 (fax)
rafrenchhodson@midwest-law.com

_/s/ Gary E. Mason_
Gary E. Mason
**MASON LLP**
5101 Wisconsin Avenue NW Suite 305
Washington, DC 20016
(202) 429-2290 (phone)
gmason@masonllp.com

_Plaintiffs' Co-Lead Counsel_

Derek Chad Nuce
**Pasley, Nuce, Mallory & Davis, LLC**
300 West Gordon Street
P.O. Box 1168
Thomaston, GA 30286
(706) 646-3200 (phone)
(706) 646-2147 (fax)
cnuce@pnlawgroup.com

Jubal Hamil
**Deakle Sholtis & Hamil**
160 Congress Street
Mobile, AL 36603
(251) 432-6020 (phone)
jhamil@dshfirm.com

Jonathan Shub
**Shub Law Firm LLC**
134 Kings Hwy E. 2nd Floor
Haddonfield, NJ 08033
(856) 772-7200 (phone)
jshub@shublawyers.com

_Plaintiffs' Steering Committee_

255

Gretchen E. Moore
**Strassburger, McKenna, Gutnick &
Gefsky**
Four Gateway Center, Suite 2200
444 Liberty Avenue
Pittsburgh, PA 15222
(412) 281-5423 (phone)
(412) 281-8265 (fax)
gmoore@smgglaw.com

*Liaison Counsel*

Sarah Bradshaw
**Sharp Law, LLP**
4820 W. 75th Street
Prairie Village, KS 66208
(913) 602-8651 (phone)
sbradshaw@midwest-law.com

Ronald ("Rome") V. Johnson, IV
**Deakle-Johnson Law Firm, PLLC**
802 N. Main Street
P.O. Box 2072
Hattiesburg, MS 39403
(601) 544-0631(phone)
(601) 544-0699 (fax)
rvjohnson@djlawms.com

Richard J. Lajaunie
**Deakle-Johnson Law Firm, PLLC**
802 N. Main Street
P.O. Box 2072
Hattiesburg, MS 39403
(601) 544-0631 (phone)
(601) 544-0699 (fax)
rjlajaunie@djlawms.com

Sara Watkins
**Robert Peirce & Associates P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
(412) 214-7477 (phone)
swatkins@peircelaw.com

Danielle Perry
**Mason LLP**
5101 Wisconsin Ave. NW, Suite 305,
Washington, D.C. 20016
(202) 620-1168 (phone)
dperry@masonllp.com

*Leadership Development Committee*

256